**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| WILMINGTON TRUST, NATIONAL ASSOCIATION, as Trustee for the benefit of the Registered Holders of BBCMS Mortgage Trust 2022-C15 Commercial Mortgage Pass-Through Certificates, Series 2022-C15, acting by and through its special servicer, Rialto Capital Advisors, LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>AEVRI SALINA MEADOWS LLC; HAWTHORNE PROPERTY SERVICES, LLC; and MOSHE ROTHMAN,<br><br>    Defendants. | Case No.: 1:23-cv-08824-(JPC-JLC)<br><br>Hon. John P. Cronan<br><br>**SECOND AMENDED COMPLAINT** |

   Plaintiff, Wilmington Trust, National Association, as Trustee for the benefit of the Registered Holders of BBCMS Mortgage Trust 2022-C15 Commercial Mortgage Pass-Through Certificates, Series 2022-C15 ("Plaintiff" or "Lender"), acting by and through its special servicer, Rialto Capital Advisors LLC (the "Special Servicer"), for its Second Amended Complaint (the "Complaint") against defendants, alleges as follows:

**PARTIES**

   1.  Plaintiff Wilmington Trust, National Association, acting solely in its capacity as trustee, is a national banking association that serves as the trustee of a New York common law trust formed by a publicly available Pooling and Servicing Agreement dated as of April 1, 2022 (the "PSA").

   2.  The PSA vests Plaintiff with "all right title and interest" title to the "Trust Fund," which includes scheduled mortgage loans and all related income, proceeds, rights, and remedies.

3.      The transfer of the mortgage loans and related rights to the Plaintiff is "without recourse, for the benefit of the Certificateholders" and "absolute".

4.      The Plaintiff, in turn, "by the execution and delivery of the [PSA]… declares that it holds and will hold such other assets included in the Trust Fund, in trust, for the exclusive use and benefit of all present and future Certificateholders….".

5.      Pursuant to the PSA, the Plaintiff is charged with administering the loans through servicers "authorized and empowered by the Trustee".  If the Plaintiff terminates a servicer, it is obligated to assume its duties and administer the loans directly.

6.      In contrast, the beneficiary "certificateholders," do not have "any right to vote (except as expressly provided for herein) *or in any manner otherwise control the operation and management of the Trust*" nor shall anything in the PSA "*be construed so as to constitute the [beneficiaries] as partners or members of an association*…".

7.      More broadly, the Plaintiff has authority to file suit in its own name to enforce any aspect of the PSA and/or contractual rights of the trustee.

8.      Rialto Capital Advisors LLC is the special servicer for the Plaintiff and filed this action solely as a representative of the Trustee and does not have any direct stake in the litigation apart from its duties under the PSA.

9.      The Plaintiff trustee's main office as specified in its Articles of Association is located in Wilmington, Delaware.  Plaintiff is therefore a citizen of Delaware.

10.     Defendant Aevri Salina Meadows LLC ("Borrower") is a limited liability company organized under the laws of the State of Delaware.  Upon information and belief, Borrower maintains an address in New York at 2604 Elmwood Avenue, Suite 210, Rochester, New York 14618.  Borrower is named as a defendant to extinguish all estate, right, title, fee and interest it

- 2 -

holds in and to certain real property located Onondaga County and commonly known as 200, 220, and 231 Salina Meadows Parkway, and 301 Plainfield Road, Syracuse, New York 13212, and designated as Section 50, Block 1, Lots 1.3, 1.6, 1.7, and 2.0 on the Tax Map for Onondaga County (the "Real Property"), together with the premises, improvements, fixtures, machinery, equipment, personalty and other rights or interests of any kind or nature located thereon (the "Personal Property," and together with the Real Property, as more particularly described in the Mortgage (as defined herein), the "Property"), and to determine its liabilities and obligations under the Loan Documents (as defined herein).

11.     The sole member of the Borrower is Aevri Salina Meadows SPE LLC ("Aevri SPE").  The sole members of Aevri SPE are Aevri Salina Manager LLC ("Aevri Manager") and Aevri Salina Investors LLC ("Aevri Investors").

12.     The sole member of Aevri Manager is Moshe Rothman.  Defendant Moshe Rothman ("Rothman") is a natural person and citizen of the State of New York, having an address at 1600 Monroe Avenue, Rochester, New York 14618.  In addition to being the sole member of Aevri Manager, Rothman is named as a defendant to obtain a judgment for amounts owed to Plaintiff in his personal capacity as a guarantor under the Guaranty (as defined herein), and to preserve Plaintiff's right to seek a deficiency judgment or other amounts for which Rothman may be liable on account of his liability and obligations under the Guaranty (as defined herein).

13.     The sole members of Aevri Investors are Kalman Rubinstein, Allen Azoulay, Hannah Gottesman, David Helfgott, Gavriel Herzig and Shenuel Friedman (collectively, the "Members").

14.     Kalman Rubinstein is natural person and a citizen of the State of the New York having an address at 1162 57th Street, Brooklyn New York 11219.

15.     Allen Azoulay is natural person and a citizen of the State of the New Jersey having an address at 1628 Jacks Way, Toms River, New Jersey 08701.

16.     Hannah Gottesman is natural person and a citizen of the State of the New York having an address at 650 West End Avenue, New York, New York, 10025.

17.     David Helfgott is natural person and a citizen of the State of the New Jersey having an address at 139 Ocean Avenue, Lakewood, New Jersey 08701.

18.     Gavriel Herzig is natural person and a citizen of the State of the New York having an address at 133 Edison Court., Monsey, New York 10952.

19.     Shenuel Friedman is natural person and a citizen of the State of the New Jersey having an address at 1942 White Knoll Drive, Toms River, New Jersey 08755.

20.     Accordingly, Borrower is a citizen of New York and New Jersey.

21.     Hawthorne Property Services, LLC ("Hawthorne") is a limited liability company organized under the laws of the State of New York.  Upon information and belief, Borrower maintains an address at 645 State Route 31, Bridgeport, New York 14618.  Borrower is named as a defendant to extinguish a mechanic's lien filed against the Real Property.

22.     The sole members of Hawthorne are Raymond Carney and Arthur Diamond.  Upon information and belief Raymond Carey is a natural person and a citizen of New York having an address at 645 State Route 31, Bridgeport, New York 13030.  Upon information and belief Arthur Diamond is a natural person and a citizen of New York having an address at 6659 Colton Road, La Fayette, New York 13084.  Accordingly, Hawthorne is a citizen of New York.

## JURISDICTION AND VENUE

23.     Jurisdiction over this matter properly rests within this Court pursuant to Fed. R. Civ. Pro. §1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000.

24.     Venue is proper in this Court pursuant to the consent of the parties and because origination of the Loan and related misrepresentations took place in this district.   28 U.S.C. 1391(b)(2); N.Y. Gen. Ob. Law 1402.

## FACTS

A.      **The Loan**

25.     On or about February 16, 2022, Bank of Montreal ("Original Lender") made a loan to Borrower in the original principal amount of $25,000,000 (the "Loan").

26.     To evidence its indebtedness under the Loan, Borrower, as obligor, duly executed, acknowledged and delivered to Original Lender, as obligee, a Promissory Note dated as of February 16, 2022, in the original principal amount of $25,000,000 (the "Note").   The Note obligated Borrower to pay Original Lender, its successors or assigns, the principal sum of $25,000,000, plus interest and other amounts owing under the Loan.

27.     A true and correct copy of the Note is attached hereto as **Exhibit 1**.

28.     To secure its payment and performance obligations under the Loan, Borrower, as obligor and mortgagor, executed and delivered to Original Lender, as obligee and mortgagee, a Mortgage and Security Agreement, dated as of February 16, 2022 (the "Mortgage").   The Mortgage granted a security interest in the Property to Original Lender, its successors or assigns, to secure Borrower's obligations under the Loan.

29.     A true and correct copy of the Mortgage is attached hereto as **Exhibit 2**.

30.     The Mortgage was duly filed and recorded in the Recorder's Office of Onondaga County, New York on December 7, 2022, as Instrument No. 2022-00009536.

31.      Upon information and belief, the applicable recording taxes due, if any, were duly paid at the time of recording of the Mortgage.

32.     To further secure its payment and performance of obligations under the Loan, Borrower, as obligor and assignor, executed and delivered to Original Lender, as oblige and assignee, an Assignment of Leases and Rents dated as of February 16, 2023 (the "ALR").  The ALR granted a security interest in the Rents (as defined in the ALR) to secure Borrower's obligations under the Loan.

33.     The ALR was duly filed and recorded in the Recorder's Office for Onondaga County, New York on March 7, 2022, as Instrument No. 2022-00009537.

34.     A true and complete copy of the ALR is attached as **Exhibit 3**.

35.     As an inducement for Original Lender to make the Loan and to secure repayment of the Loan, Rothman executed and agreed to be bound by a Limited Recourse Guaranty dated as of February 16, 2022 (the "Guaranty") in favor of Original Lender, its successors or assigns.

36.     A true and correct copy of the Guaranty is attached hereto as **Exhibit 4**.

37.     Pursuant to the Guaranty, Rothman unconditionally and irrevocably guaranteed, in his personal capacity, the "punctual payment when due" of the "Guaranteed Recourse Obligations of Borrower," as defined by Article 13 of the Loan Agreement.

38.     Additional obligations concerning the collection and control of rental income from the Property are set forth in a Cash Management Agreement executed by the Borrower dated February 16, 2022 (the "CMA").

39.     A true and complete copy of the CMA is attached hereto as **Exhibit 5.**

- 6 -

40.     As additional protection for the Lender, the Borrower executed and delivered a Conditional Assignment of Management Agreement dated February 16, 2022 (the "<u>Management Assignment</u>").

41.     A true and complete copy of the Management Assignment is attached as **Exhibit 6**.

42.     Borrower also executed and delivered to Original Lender a certain Loan Agreement dated as of February 16, 2022 (as amended, restated, or otherwise modified, the "<u>Loan Agreement</u>," and together with all other documents and agreements referred to, created, or contemplated thereunder, including but not limited to the Note, Mortgage, CMA, and Guaranty, the "<u>Loan Documents</u>"), pursuant to which the Borrower agreed to comply with additional terms, provisions, and obligations with respect to the Loan for the benefit of the Original Lender, its successors and assigns.

43.     A true and correct copy of the Loan Agreement is attached hereto as **Exhibit 7**.

44.     The Loan Documents are all governed by New York law and contain a choice of venue of any state or federal court located in the county of New York.

**B.      <u>Transfer of the Loan to Plaintiff</u>**

45.     Plaintiff physically delivered the Note to Lender and executed an Allonge to the Note in Lender's favor on or about April 13, 2022 (the "<u>Allonge</u>").  A true and correct copy of the Allonge is affixed to the Note, which is attached hereto as **Exhibit 1**.

46.     Original Lender assigned its interest in the Mortgage to the Lender by Assignment of Mortgage effective as of April 13, 2022 (the "<u>Assignment of Mortgage</u>") and recorded in the Recorder's Office of Onondaga County, New York on August 18, 2022 as Instrument No. 2022-00033776.

47.     A true and correct copy of the Assignment of Mortgage is attached hereto as **Exhibit 8**.

48.     Original Lender assigned its interest in the ALR to Lender pursuant to an Assignment of ALR effective as of April 13, 2022 (the "<u>Assignment of ALR</u>") and recorded in the Recorder's Office for Onondaga County, New York on August 18, 2022 as Instrument No. 2022-00033777.

49.     A true and correct copy of the Assignment of ALR is attached hereto as **Exhibit 9**.

**C.      The Borrower's Defaults**

50.     Multiple Events of Default have occurred under the terms of the Loan Documents, all as more particularly described below.

**1.      The Payment Default.**

51.     Pursuant to Section 10.1(a) of the Loan Agreement, an Event of Default exists if:

> If (A) any monthly Debt Service payment or the payment due on the Maturity Date is not paid when due, (B) any deposit to any of the Accounts required hereunder or under the other Loan Documents is not paid when due and such non-payment continues for five (5) days following notice to Borrower (it being acknowledged that no notice shall be required from Lender if such deposit was included in the monthly invoice provided to Borrower)…

52.     Borrower failed to make the regular monthly payment of interest and escrows due under the Loan Documents on April 6, May 6, and June 6, 2023.

53.     Through at least June 2023 the Borrower received monthly invoices of amounts due.

54.     By letter dated June 29, 2023 (the "<u>Notice of Default</u>"), Plaintiff notified Borrower that an Event of Default had occurred due to its failure to make payments as and when due under the Loan Documents.  A true and complete copy of the Notice of Default is attached as **Exhibit 10**.

- 8 -

55.    Borrower made a lump sum payment of $320,000 on July 3, 2023, however, the payment was insufficient pay past due interest and did not make any contribution to the past due escrow payments required under the Loan Agreement.

56.    Borrower failed to make any payment on account of the installment due on July 6, 2023.

57.    By letter dated August 2, 2023 (the "Notice of Acceleration"), the Lender exercised its right to accelerate the Loan and declare the entire debt immediately due and payable.  A true and complete copy of the Notice of Acceleration is attached as **Exhibit 11**.

58.    As of the date of this pleading, the Borrower has not made any payment since July 3, 2023.

## 2.    **The Cash Management Defaults**

59.    Section 9.1 (a) of the Loan Agreement, titled "Establishment of Certain Accounts" states that "Borrower shall, simultaneously herewith, establish an Eligible Account (the "Restricted Account") pursuant to the Restricted Account Agreement in the name of Borrower for the sole and exclusive benefit of Lender ***into which Borrower shall cause tenants to deposit all revenue generated by the Property***." (Emphasis supplied).

60.    Section 9.2 (a) of the Loan Agreement, titled "Deposits into Restricted Account, Maintenance of Restricted Account" states:

> Borrower represents, warrants and covenants that, so long as the Debt remains outstanding, (i) Borrower shall, or shall cause Manager to, deposit all revenue derived from the Property and received by Borrower or Manager, as the case may be, into the Restricted Account within two (2) Business Days of Borrower's or Manager's, as applicable, receipt thereof….

> Until deposited into the Restricted Account, any Rents and other revenues from the Property held by Borrower shall be deemed to be collateral and shall be held in trust by it for the benefit, and as the

property, of Lender pursuant to the Security Instrument and shall not be commingled with any other funds or property of Borrower. Borrower warrants and covenants that it shall not rescind, withdraw or change any notices or instructions required to be sent by it pursuant to this Section 9.2 without Lender's prior written consent

61.     Pursuant to Section 10.1(q) of the Loan Agreement, an Event of Default exists:

With respect to any default or breach of any term, covenant or condition of this Agreement not specified in subsections (a) through (p) above or not otherwise specifically specified as an Event of Default in this Agreement, if the same is not cured (i) within ten (10) days after notice from Lender (in the case of any default which can be cured by the payment of a sum of money) or (ii) for thirty (30) days after notice from Lender (in the case of any other default or breach)…

62.     Contemporaneous with the closing of the Loan, Lender and Borrower opened the Restricted Account required under the Loan Agreement.

63.     The Borrower initially instructed the tenants of the Property to deposit and/or deposited upon receipt all or a substantial portion of the rents.

64.     However, the Borrower almost immediately began diverting rents from the Restricted Account and has not made a single deposit to the Restricted Account since October 24, 2022.  True and complete copies of the monthly statements for the Restricted Account are attached as **Exhibit 12**.

65.     Although funds in the Restricted Account would typically be transferred to the Borrower daily, upon the occurrence of a "Trigger Period", all excess cash would be held by the Lender in an Excess Cash Flow Account as additional collateral for the Loan.

66.     Multiple Trigger Period exist and have existed since at least June 2022 based on the existence of Events of Default, a Debt Yield Trigger and Specified Tenant Trigger Period, all as defined in the Loan Agreement.

67.     The most rent roll submitted by the Borrower shows annual rental income of approximately $3.3 million.

68.     The 2023 budget included in the Loan Agreement projects annual operating expenses of $1,650,584.

69.     Accordingly, there should be substantial net cash flow every month.

70.     By letters dated August 2 and August 8, 2023, the Plaintiff demanded that the Borrower immediately resume compliance with the cash management obligations of the Loan Documents and provide and account of all amounts diverted from the Restricted Account since the origination of the Loan.  True and complete copies of these letter as attached as **Exhibits 11** and **13**.

71.     To date, the Borrower continues to openly disregard the Cash Management Provisions (as defined in the Loan Agreement).

**3.      The Financial Disclosure Defaults.**

72.     Pursuant to Section 4.12(a), the Borrower is obligated to provided Lender with a certified rent roll and updated operating statement within thirty (30) days of the end of each quarter and an annual balance sheet, operating statement and statement of cash flow within eighty-five (85) days of the end of each fiscal year.

73.     Further, Borrower is obligated to provide copies of the Borrower's and Guarantor's state and federal tax returns to the Lender within ten (10) days of a written request.

74.     By letter dated August 8, 2023, the Plaintiff provided notice of the Borrower's failure to comply with its disclosure requirements and demanded production of the Borrower's and Guarantor's state and federal tax returns. A true and complete copy of the August 8, 2023 Financial Disclosure demand letter is attached as **Exhibit 14.**

- 11 -

75.   Section 4.12(e) provides in pertinent part:

In the event Borrower fails to deliver to Lender any of the Required Financial Items within five (5) Business Days of the giving of notice by Lender or Borrower of Borrower's failure to deliver the same within the time frame specified herein (each such event a "Reporting Failure"), the same shall, at Lender's option, constitute an immediate Event of Default hereunder…

76.   To date, the Borrower has failed to comply with the Plaintiff's August 8, 2023, demand.

**D.     Rothman is Liable for the Full Amount Due on the Loan**

77.   Paragraph 1 of the Guaranty states:

Guaranteed Recourse Obligations of Borrower. Guarantor hereby unconditionally and irrevocably guarantees to Lender the punctual payment when due, and not merely the collectability, whether by lapse of time, by acceleration of maturity, or otherwise, and at all times thereafter the payment of the Guaranteed Recourse Obligations of Borrower (hereinafter defined). As used herein, the term "Guaranteed Recourse Obligations of Borrower" shall mean all obligations and liabilities of Borrower for which Borrower shall be personally liable pursuant to Article 13 of the Loan Agreement.

78.   Pursuant to Article 13 of the Loan Agreement, the "Guaranteed Recourse Obligations of Borrower" include the entire amount owed on the Loan if "(ii) Borrower fails to comply with any Cash Management Provisions or fails to appoint a new property manager upon the request of Lender…".

79.   The Borrower has failed to comply with the Cash Management Provisions of the Loan agreement by, without limitation, (i) failing to instruct tenants to pay rent into the Restricted Account and/or rescinding such instructions without Plaintiff's consent; (ii) failing to deposit all rent received directly from tenants into the Restricted Account with two (2) business days; and (iii) failing to hold all rents collected in trust for the Lender.

80.     Further, paragraph 5 of the Management Assignment, titled "Lenders Right to Replace Manager" states:

> At Lender's option, Lender shall have the right to terminate the Management Agreement and replace [Manager] or require that Borrower terminate the Management Agreement and replace [Manager], without penalty or fee, if at any time during the Loan there exists:… a Trigger Period…

81.     By letter dated September 26, 2023 the Lender demanded that the Borrower replace the existing Manager, Smartcore Consulting, LLC d/b/a Mike Barney Management, with William C. Colucci of Cushman & Wakefield/Pyramid Brokerage.  A true and complete copy of the September 26, 2023 letter is attached as **Exhibit 15**.

82.     As of the date of this pleading the Borrower has not complied with Lender's demand.

**E.     The Hawthorne Mechanic's Lien**

83.     From on our about June 7, 2022, though August 15, 2022, Hawthorne provided certain materials and services to the Borrower and performed labor on the Real Property amounting to $27,748.08.

84.     The Borrower failed to pay Hawthorn.

85.     On September 15, 2022, Hawthorn filed a mechanic's lien encumbering the Real Property in the Onondaga County Clerk's Office as Instrument No. 2022-00012505 (the "Mechanic's Lien").  A true and complete copy of the Mechanic's Lien is attached as **Exhibit 16**.

**FIRST CAUSE OF ACTION**
**(Foreclosure of the Mortgage)**

86.     Plaintiff repeats and realleges the allegations contained in the preceding paragraphs as if fully set forth herein.

- 13 -

87.     Each of the Payment Default, Cash Management Default, Financial Disclosure Defaults, among other defaults, constitutes an Event of Default under the Loan Agreement, Mortgage and other Loan Documents, which entitles Plaintiff to exercise its rights under the Loan Documents to foreclose upon the Mortgage.

88.     Pursuant to Section 8.1 of the Mortgage, upon the occurrence of an Event of Default, Plaintiff may:

> (a) declare the entire unpaid Debt to be immediately due and payable;
>
> (b) institute proceedings, judicial or otherwise, for the complete foreclosure of this Security Instrument under any applicable provision of law, in which case the Property or any interest therein may be sold for cash or upon credit in one or more parcels or in several interests or portions and in any order or manner…
>
> (g) seek and obtain the appointment of a receiver, trustee, liquidator or conservator of the Property, without notice and without regard for the adequacy of the security for the Debt and without regard for the solvency of Borrower, any guarantor or indemnitor under the Loan or any other Person liable for the payment of the Debt…

89.     The full amount of the Debt is currently due and payable.

90.     Pursuant to Section 16.9 of the Loan Agreement, Borrower expressly waived the right to assert any counterclaims, other than compulsory counterclaims, in any action to enforce the Loan.

91.     Borrower has failed to pay the Debt.

92.     Pursuant to the Loan Documents and applicable law, the unpaid balance of Borrower's obligations under the Loan Documents, estimated as of October 1, 2023  totals at least $34,098,597.38, and includes (i) the unpaid principal amount of $25,000,000, (ii) interest at the non-default rate of 5.02% per annum ("Note Rate") in the amount of $320,722.22, (iii) separate and additional default interest at the rate of 5.00% per annum (the "Default Rate") in the amount

of $625,775.94, (iv) late fees in the amount of $75,727.98, (v) Property protection advances totaling $12,839.52, (vi) interest on advances in the amount of $7,172.17, (vii) payoff fee in the amount of $1,500, (viii) special servicer fees in the amount of $21,006.93, (ix) a liquidation fee in the amount of $356,591.29, and (x) estimated yield maintenance premium in the amount of $9,594,384.24, less $1,917,122.91 in funds held in suspense, reserve, or escrow accounts to be credited against any of the outstanding amounts due under the Loan.   Attorneys' fees and costs, due diligence report costs, title charges, and other amounts due and owing pursuant to the Loan Documents and applicable law continue to accrue. Interest accrues at the Note Rate of 5.02% per annum, and default interest accrues at the additional Default Rate of 5.00% per annum for a cumulative rate of 10.02% per annum.  The above amounts are estimates only and the full amount of the Debt shall be calculated at the appropriate stage of this case to reflect the total amount then due and owing under the Loan.

93.     In order to protect its security, Plaintiff may be compelled during the pendency of this action to pay charges affecting the Property.  Such sums paid by Plaintiff, together with interest thereon and any other amounts due under the Loan Documents as a result thereof, constitute part of the Debt due to Plaintiff under the Loan and Loan Documents, and, accordingly, Plaintiff requests that any such sums be added to the sums otherwise due under the Loan Documents.

94.     Each of the defendants herein have or claim to have some interest in, or lien upon the Property or some part thereof, which interest or lien, if any, is subject and subordinate to the lien of Plaintiff's Mortgage sought to be foreclosed in this action.

95.     The Mechanic's Lien is a junior encumbrance on the Real Property, subject and subordinate to the lien of the Mortgage.

96.     No other action or proceeding has been commenced or maintained or is now pending at law or otherwise for the foreclosure of the Mortgage, or for recovery of the sum evidenced by the Note and secured by Mortgage or any part thereof.

97.     Section 9-x of New York's Banking Law is not applicable to the parties or Loan at issue in this action.

98.     All conditions precedent necessary to bring forth the claims set forth herein have been satisfied.

99.     Plaintiff requests that in the event that this action proceeds to a judgment of foreclosure and sale, the Property be sold subject to the following:

(a)     Any state of facts that an inspection of the Property would disclose;

(b)     Any state of facts that an accurate survey of the Property would show;

(c)     Covenants, restrictions, easements, and public utility agreements of record, if any;

(d)     Building and zoning ordinances or codes of the municipality, or any of its agencies or instrumentalities, in which the mortgaged Property are located and possible violations of such ordinances or codes;

(e)     Any rights of lawful tenants or persons lawfully in possession of the Property;

(f)     Any equity of redemption of the United States of America to redeem the premises within 120 days from date of sale; and

(g)     Prior or superior lien(s) of record, if any.

100.    Plaintiff's election to accelerate and declare immediately due and payable all unpaid amounts owing under the Loan and Loan Documents shall not be, or deemed to have been, waived, altered, released or changed by reason of any payment after the commencement of this action, and such election shall continue and remain effective.

- 16 -

## <u>SECOND CAUSE OF ACTION</u>
### (Judgment on the Guaranty Against Rothman)

101.    Plaintiff repeats and realleges the allegations contained in the preceding paragraphs as if fully set forth herein.

102.    The Guaranty is a valid guaranty agreement executed by and enforceable against Rothman in his personal capacity.

103.    Rothman is a principal owner of the Borrower and materially benefitted from Lender's making of the Loan.

104.    Plaintiff is the owner and holder of the Guaranty and is entitled to all of the rights and remedies set forth therein.

105.    Pursuant to paragraph 1 of the Guaranty Rothman is personally obligated for "the punctual payment when due, and not merely the collectability, whether by lapse of time, by acceleration of maturity, or otherwise, and at all times thereafter the payment of the Guaranteed Recourse Obligations of Borrower" which includes the full amount owed on the Loan upon the occurrence of certain events specified in Section 13 of the Loan Agreement.

106.    Such events occurred in connection with the Loan as a result of Borrower's failure to comply with the Cash Management Provisions of the Loan Agreement and failure to replace the Manager upon demand by the Lender.

107.    Pursuant to, *inter alia*, Section 24 of the Guaranty, Rothman waived a broad array of defenses, counterclaims and/or offsets.

108.    Accordingly, Rothman is personally liable for the full amount of the Debt.

109.    The Guaranty also states that Rothman "shall pay on demand all attorneys' fees and all other costs and expenses incurred by Lender in the enforcement of or preservation of Lender's rights under this Guaranty…".

110.    Rothman, however, has failed to satisfy his obligations under the Guaranty and the amounts owing thereunder remain unpaid.

### THIRD CAUSE OF ACTION
**(Equitable Accounting and Restitution)**

111.    Plaintiff repeats and realleges the allegations contained in the preceding paragraphs as if fully set forth herein.

112.    Pursuant to section 9.2(a) the Loan Agreement:

Until deposited into the Restricted Account, any Rents and other revenues from the Property held by Borrower shall be deemed to be collateral and ***shall be held in trust*** by it for the benefit, and as the property, of Lender...

113.    Based on the Loan Documents, the Borrower owes a fiduciary duty to the Lender when collecting Rents.

114.    Since the inception of the Loan, the Borrower has failed to deposit Rents into the Restricted Account and/or account for the Rents.

115.    The Borrower has ignored repeated demands by the Plaintiff for it to provide an accounting of all Rents diverted from the Restricted Account and turnover of all such Rents.  *See* **Exhibit 11 and 13**.

116.    Documentary evidence exists showing that the Borrower and/or its agents knowingly and purposefully instructed tenants of the Real Property to pay Rents directly to a new account, controlled by the Borrower, rather than the Restricted Account.  Attached as **Exhibit 17** is an email filed in a pending action before the Supreme Court of Monroe County acknowledging that from at least October 2022 forward, tenants diverted Rent from the Restricted Account at the specific instruction of the Borrower's agent and that the Borrower was aware such instruction violated the Loan Documents.

**WHEREFORE**, Plaintiff respectfully requests:

- 18 -

(a)       that the defendants and all persons claiming under them, subsequent to the commencement of this action, be barred and foreclosed of and from all estate, right, title, interest, claim, lien, and equity of redemption of, in and to (A) the Property, as more particularly described in this Complaint, and each and every part and parcel thereof, including any personal property appurtenant thereto, (B) any and all leases, licenses, and/or occupancy agreements of any kind or nature in or to the Property or any portion thereof; that the Property may be decreed to be sold, according to law, in "as is" physical order and condition, subject to the items set forth in paragraph 99 of this Complaint; that the monies arising from the sale thereof may be brought into Court; that Plaintiff may be paid the amount due on the Note, Mortgage, and other Loan Documents, with interest, default interest, late charges, exit fees, and the expenses of such sale, including attorneys' fees, together with the costs, allowances, and disbursements of this action, and together with any sums incurred by Plaintiff pursuant to any term or provision of the Note, Mortgage, and other Loan Documents set forth in this Complaint or to protect the lien of the Mortgage, together with interest and default interest upon those sums accruing from the dates of the respective payments and advances, so far as the amount of such monies properly applicable thereto will pay the same; that the Borrower may be adjudged to pay the whole residue, or so much thereof as permitted under the Loan Documents or the Court determines to be just and equitable, of the debt remaining unsatisfied after the sale and the application of the proceeds pursuant to the directions contained in such judgment; that in the event Plaintiff possesses any other lien(s) against the Property either by way of judgment, junior mortgage or

60906122

otherwise, Plaintiff requests that such other lien(s) shall not be merged in Plaintiff's cause(s) of action set forth in this Complaint but that Plaintiff shall be permitted to enforce the other lien(s) and/or seek determination of priority thereof in any independent action(s) or proceeding(s), including, without limitation, any surplus money proceedings; and that Plaintiff may have such other and further relief as may be just and equitable;

(b)     that, upon application therefor, this Court forthwith appoint a receiver in accordance with the provisions of the Mortgage;

(c)     in accordance with Real Property Actions and Proceedings Law § 1371, Rothman be adjudged to pay the whole residue or so much thereof as permitted under the Guaranty and other Loan Documents, if any, or the Court determines to be just and equitable, of the debt remaining unsatisfied and deficient after a foreclosure sale of the Property and the application of the proceeds pursuant to the directions contained in such judgment;

(d)     judgment be entered in Plaintiff's favor and against Rothman, in an amount to be determined at trial, plus attorneys' fees, costs, and expenses incurred by Plaintiff in enforcing its rights under the Guaranty, and pre- and post-judgment interest at the applicable rate(s) until paid in full;

(e)     that judgment be entered directing the Borrower to provide a full accounting of all Rents collected since the inception of the Loan and to turn over all such Rents to the Plaintiff for application to the Debt; and

(f)     such other and further relief as the Court may deem just and proper.

Dated: New York, New York
        March 4, 2024                        Respectfully submitted,

60906122

**VENABLE LLP**

By: */s/ Brent W. Procida*
      Gregory A. Cross
      Brent W. Procida
      750 E. Pratt Street, Suite 900
      Baltimore, Maryland 21202
      Tel.: (410) 244-7400
      Fax: (410) 244-7742
      bwprocida@venable.com

      Adam G. Possidente
      151 W. 42nd Street
      New York, New York 10036
      Tel.: (212) 307-5500
      Fax: (212) 307-5598
      apossidente@venable.com

      *Counsel for Plaintiff*

60906122