```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
                                                                   :
                                                                   :
WILMINGTON TRUST, NATIONAL ASSOCIATION,                            :
as Trustee for the benefit of the Registered Holders of            :
BBCMS Mortgage Trust 2022-C15 Commercial                           :
Mortgage Pass-Through Certificates, Series 2022 C-15,              :
acting by and through its special servicer, Rialto Capital         :
Advisors, LLC,                                                     :
                                                                   :
                              Plaintiff,                           :
                                                                   :
              -v-                                                  :    23 Civ. 8824 (JPC)
                                                                   :
                                                                   :    OPINION AND ORDER
                                                                   :
AEVRI SALINA MEADOWS LLC, et al.,                                  :
                                                                   :
                              Defendants.                          :
                                                                   :
-------------------------------------------------------------------X
```

JOHN P. CRONAN, United States District Judge:

In one of its initial acts, the first Congress passed the Judiciary Act of 1789, empowering federal courts to entertain certain disputes between citizens of different States, which has become known as diversity jurisdiction. Pending is a motion that requires this Court to consider whose citizenship counts for jurisdictional purposes. Wilmington Trust, National Association, acting as trustee and through its special servicer, invokes diversity jurisdiction as it seeks to foreclose on a $25 million mortgage. As evidence of its citizenship, Plaintiff points to only Wilmington Trust's Delaware citizenship. Defendants, however, urge the Court to look deeper—at the trust's beneficiaries and its special servicer—in deciding whether jurisdiction exists. Because Wilmington Trust is the real party to this controversy, its citizenship is all that matters on the plaintiff's side; the Court need not look to the citizenship of the trust's beneficiaries or the special

servicer to determine whether diversity exists. Accordingly, Defendants' motion to dismiss for lack of subject matter jurisdiction is denied.

## I. Background

**A.   Facts**[1]

On February 16, 2022, Defendant Aevri Salina Meadows LLC ("Aevri") borrowed $25,000,000 from the Bank of Montreal, memorialized in a Note and Loan Agreement (the "Loan"). SAC ¶¶ 25-26. On that same day, Aevri entered into a number of additional agreements with the Bank of Montreal to secure its payment and performance obligations under the Loan, including granting to the bank a mortgage on the real property known as the Salina Meadows Office Park in Syracuse, New York, as well as a security interest in the leases and rents derived from that property. *Id.* ¶¶ 28-34, 38-41; *see id.*, Exh. 2 (mortgage and security agreement). As inducement for the Bank of Montreal to make the Loan and to secure repayment, Moshe Rothman[2] personally guaranteed its timely payment. SAC ¶¶ 35-37; *see id.*, Exh. 4. Around a year later, the Bank of Montreal assigned "all right, title and interest" in the Loan and supporting agreements to Wilmington Trust, National Association (the "Trustee"), for the benefit of the Registered Holders of BBCMS Mortgage Trust 2022-C15 Commercial Mortgage Pass-Through Certificates, Series 2022-C15 (the "Trust"). SAC ¶¶ 45-49.

---

[1] The following facts are taken from Plaintiff's Second Amended Complaint, Dkt. 43 ("SAC"); *see Tongue v. Sanofi*, 816 F.3d 199, 209 (2d Cir. 2016), as well as other relevant documents which the parties have brought to the Court's attention, *see APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003) ("Where jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings . . . ." (internal quotation marks and alterations omitted)).

[2] As alleged, the sole member of Aevri is Aevri Salina Meadows SPE LLC, whose sole members are Aevri Salina Manager LLC and Aevri Salina Investors LLC. SAC ¶ 11. Rothman allegedly is the sole member of Aevri Salina Manager LLC. *Id.* ¶ 12.

The Trust is a "New York common law trust" created and governed by a publicly available Pooling and Servicing Agreement ("PSA"). *Id.* ¶ 1; *see also* Dkt. 46 ("Kritzer Decl."), Exh. A ("PSA").[3] It is funded by commercial and multifamily loans—including the Loan at issue here—and the PSA provides for payment of Trust proceeds to various classes of "Certificateholders" as beneficiaries. PSA at 121, 312-23.[4] The PSA vests the Trustee with "all the right, title and interest" in the Trust's funds, which it holds "for the benefit of all present and future Certificateholders." *Id.* at 129, 137. The transfer of mortgage loans and related rights to the Trustee "is absolute and . . . is intended by the parties to constitute a sale." *Id.* at 129.

Under the PSA, the Trustee is empowered to "execute any of the trusts or powers hereunder or perform any duties hereunder either directly or by or through agents, affiliates or attorneys." *Id.* at 402. Consistent with this grant of authority, the PSA delegates some of the Trustee's administration and servicing responsibilities to a Master Servicer, Special Servicer, and Certificate Administrator. *Id.* at 159-66. "The relationship of each of the Master Servicer and the Special Servicer to the Trustee under [the PSA] is . . . that of an independent contractor and not that of a joint venturer, partner or agent." *Id.* at 163. The Special Servicer is generally responsible for the administration of defaulted loans. *See id.* at 166 ("[T]he Special Servicer shall make reasonable efforts to collect all payments called for under the terms and provisions of the Mortgage Loans."). It is, for example, "authorized and empowered by the Trustee to execute and deliver . . . any or all complaints or other pleadings to initiate and/or to terminate any action, suit or proceeding on behalf of the Trust in [its] representative capacit[y]." *Id.* at 161-62. Absent "the Trustee's written consent," however, the Special Servicer may not "initiate any action, suit or proceeding solely

---

[3] Citations to the PSA herein are to the page numbers of that document.

[4] This form of trust agreement is generally referred to as a securitized mortgage trust, or a real estate mortgage investment conduit ("REMIC") trust.

3

under the Trustee's name without indicating the . . . Special Servicer's . . . representative capacity." *Id.* at 162.  The Special Servicer may also "obtain title to a Mortgaged Property," but only "on behalf of the Trustee." *Id.* at 210.  When the Special Servicer resigns or is terminated for whatever reason, the Trustee assumes all of its duties until a replacement is appointed. *Id.* at 390, 396-98.

Certificateholders are generally excluded from the management and operation of the Trust.  The PSA states that "[n]o Certificateholder . . . shall have any right to vote (except as expressly provided for herein) or in any manner otherwise control the operation and management of the Trust." *Id.* at 469.  One such expressly provided right is that a supermajority of Certificateholders may vote to terminate the Special Servicer if it breaches its obligations in certain predefined manners. *Id.* at 391-92.  Further, nothing in the PSA or the terms of the Certificates shall "be construed so as to constitute the Certificateholders . . . from time to time as partners or members of an association." *Id.* at 469.

Rialto Capital Advisors, LLC ("Rialto") is the Special Servicer for the Trust. *Id.* at 1.  On June 29, 2023, Rialto notified Aevri that it was in default of its obligations under the Loan.  SAC ¶¶ 54, 50-76 (describing the various defaults).  After Aevri failed to satisfactorily cure the defaults, the Trustee opted to accelerate the Loan and demand full payment of the debt. *Id.* ¶ 57.

**B.   Procedural History**

The Trustee, acting as Trustee for the Trust and by and through Rialto as the Trust's Special Servicer, initiated this lawsuit on October 6, 2023, seeking to foreclose the mortgage and obtain a judgment on Rothman's guaranty.  Dkt. 1.  The Court appointed a receiver to manage the Salina Meadows Office Park on November 22, 2023, Dkt. 24, and ordered limited jurisdictional discovery on December 6, 2023, Dkt. 30.  The Trustee filed its First Amended Complaint on January 29, 2024, seeking the same relief plus equitable accounting and restitution for the loss of rents.  Dkt.

35. After Defendants filed a letter indicating their intent to file a motion to dismiss, Dkt. 38, the Trustee filed the Second Amended Complaint on March 4, 2024, Dkt. 43. On March 5, 2024, Defendants moved to dismiss the Second Amended Complaint, arguing that it fails to adequately plead diversity jurisdiction because it does not plead the citizenships of the Trust's beneficiaries and of Rialto, which Defendants claim is a real and substantial party to this dispute. Dkts. 44, 45 ("Motion"). The Trustee opposed the motion on April 15, 2024, Dkt. 48, and Defendants replied on April 26, 2024, Dkt. 51 ("Reply").

## II. Legal Standard

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). Challenges to the Court's subject matter jurisdiction under Rule 12(b)(1) come in two forms: facial or factual. *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016). Facial motions are "based solely on the complaint and the attached exhibits," and the opposing party "bears no evidentiary burden." *SM Kids, LLC v. Google LLC*, 963 F.3d 206, 210 (2d Cir. 2020). Rather, "a district court must determine whether the complaint and its exhibits allege facts that establish subject matter jurisdiction." *Nicholas v. Trump*, 433 F. Supp. 3d 581, 586 (S.D.N.Y. 2020) (alterations adopted and internal quotation marks omitted). Fact-based motions permit the movant to "proffer[] evidence beyond the [complaint and its exhibits]." *Carter*, 822 F.3d at 57; *see also Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (explaining that "[w]here jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits" (citation omitted)). "In opposition to such a motion, the plaintiff will need to come forward with evidence controverting that presented by the

5

defendant if the defendant's evidence reveals the existence of factual problems regarding standing." *Lugo v. City of Troy, New York*, 114 F.4th 80, 87 (2d Cir. 2024) (alteration adopted and internal quotation marks omitted).[5]

### III. Discussion

Title 28, United States Code, Section 1332(a) provides for federal subject matter jurisdiction over lawsuits between completely diverse parties in which the amount-in-controversy exceeds $75,000. If citizens of the same state are on different sides of the suit, complete diversity does not exist. *See Strawbridge v. Curtiss*, 7 U.S. 267, 267-28 (1806). The burden to demonstrate diverse citizenship lies with the party seeking to invoke jurisdiction under Section 1332(a), which here is the Trustee. *See Advani Enters. v. Underwriters at Lloyds*, 140 F.3d 157, 160 (2d Cir. 1998).

The Second Amended Complaint alleges that Defendants are citizens of New York and New Jersey, and that the amount-in-controversy exceeds $75,000. SAC ¶¶ 12, 20, 22-23. Defendants do not challenge those allegations. Nor do Defendants dispute that the Trustee is a citizen of Delaware. *See id.* ¶ 9. This Court's power to adjudicate this action therefore turns on whether it is only the Trustee's citizenship that controls the plaintiff's side for diversity purposes, despite it suing "as Trustee" for the benefit of the Trust and "acting by and through its special servicer, Rialto." *Id.* at 1.

---

[5] The parties' briefs do not indicate their views as to whether Defendants have mounted a facial or fact-based Rule 12(b)(1) motion. Because the parties have conducted jurisdictional discovery, Defendants provide the Court with the PSA, and the briefing relies heavily on that PSA, the Court assumes that Defendants bring a fact-based motion to dismiss.

A.     **Citizenship of the Trustee**

The Court begins with whether it should consider only the citizenship of the Trustee, or also the citizenships of the beneficiaries of the Trust, on whose behalf the Trustee is suing. This analysis entails the Court considering whether the Trustee is the real party to this controversy, which the Court concludes it is.

It is well established that "the 'citizens' upon whose diversity a plaintiff grounds jurisdiction must be real and substantial parties to the controversy." *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 460 (1980). In assessing their diversity jurisdiction, federal courts "must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy." *Id.* at 461. A trustee who sues in his own name "is a real party to the controversy for purposes of diversity jurisdiction when he possesses certain customary powers to hold, manage, and dispose of assets for the benefit of others." *Id.* at 464; *see also Wells Fargo Bank, N.A. v. Konover Dev. Corp.*, 630 F. App'x 46, 49 (2d Cir. 2015) ("When a trustee 'possesses certain customary powers to hold, manage, and dispose of assets for the benefit of others,' the trustee qualifies as a 'real party to the controversy' and may sue based on its own citizenship." (quoting *Navarro*, 446 U.S. at 464)). This is true even when a trust "shares some attributes of an association"—such as holding and investing property for the benefit of a large number of shareholders who in turn elect the trustee at annual meetings. *Navarro*, 446 U.S. at 462. Notably, in *Navarro*, the Supreme Court concluded that the plaintiff trustees qualified as "active trustees whose control over the assets held in their names [was] real and substantial"—and thus were the real parties in interest to the controversy—because the "declaration of trust . . . authorized the trustees to take legal title to trust assts, to invest those assets for the benefit of the shareholders, and to sue and be sued in their capacity as trustees," the trustees "filed th[e] lawsuit in that

capacity," and the trust's beneficial shareholders could "neither control the disposition of th[e] action nor intervene in the affairs of the trust except in the most extraordinary situations." *Id.* at 464-65.

Like the trustees in *Navarro*, the Trustee here has the power to "hold, manage, and dispose of" the Trust's assets for the benefit of the Certificateholders. *Id.* at 464. The PSA provides that the "Depositor . . . [does] assign, sell, transfer and convey to the Trustee, in trust, without recourse, for the benefit of the Certificateholders . . . all the right, title and interest of the Depositor" in the Trust's assets, including the Loan and rents at issue here. PSA at 128-29. This transfer of property "is absolute and . . . is intended by the parties to constitute a sale." *Id.* at 129. The Trustee further has the power and authority to sue in its own name as Trustee, for the benefit of the Trust. Under the PSA, the Trustee "may execute any of the trusts or powers hereunder or perform any duties hereunder . . . directly," which includes the power "to execute and deliver . . . any or all complaints or pleadings to initiate and/or to terminate any action, suit or proceeding on behalf of the Trust." *Id.* at 162, 402. And while Rialto, as the Special Servicer, is likewise empowered to initiate suit on behalf of the Trust, it is "authorized and empowered *by the Trustee*" to do so, further indicating that the power to sue resides in the Trustee. *Id.* at 161-62 (emphasis added); *see also id.* at 390, 396-98 (providing that the Trustee assumes all duties of the Special Servicer when the latter is terminated). Because the Trustee holds "legal title" to the Trust property, "manage[s] the assets," and "controls the litigation," it is a real party to the controversy and not a "naked trustee[] who acts as [a] mere conduit[] for a remedy flowing to others." *Navarro*, 446 U.S. at 465 (internal quotation marks omitted); *see also WBCMT 2007-C33 NY Living, LLC v. 1145 Clay Ave. Owner, LLC*, 964 F. Supp. 2d 265, 270 (S.D.N.Y. 2013) (concluding that the plaintiff was "a real and substantial party to the controversy and not merely a shell designed to circumvent the requirements

8

of diversity jurisdiction" because it "ha[d] all right, title, and interest in the loan documents"). It is of no moment that the Trustee is "acting solely in its capacity as trustee," SAC ¶ 1; it is an "active trustee," and so its own citizenship, not that of the Trust, controls for purposes of assessing diversity jurisdiction. *See Americold Realty Tr. v. Conagra Foods, Inc.*, 577 U.S. 378, 383 (2016) ("[W]hen a trustee files a lawsuit or is sued in her own name, her citizenship is all that matters for diversity purposes." (citing *Navarro*, 446 U.S. at 462-66)).

Defendants' resistance to this natural conclusion is unpersuasive. Defendants' primary argument relies on *Americold Realty Trust v. Conagra Foods, Inc.*, where the Supreme Court explained that "the citizenship of a 'real estate investment trust,' an inanimate creature of Maryland law," was that of its shareholder "members." *Id.* at 379, 382. Specifically, Defendants urge the Court to "look[] to substance, not state-law form," to conclude that the Trust is "business trust," and argue that because "business trusts have the citizenship of all their members"—which citizenship is not pleaded here—the Second Amended Complaint fails to plead diversity jurisdiction. Motion at 8-15; *see* Reply at 2-8. This argument fails for a number of reasons.

Most significantly, Defendants confuse the relationship between the holdings of *Americold* and *Navarro*. In arguing that the Court must first resolve "the threshold question of whether the [T]rust is a non-traditional trust under *Americold*" before turning to "whether the trustee was 'active' and a 'real and substantial' party" to this dispute, Reply at 5-6, Defendants flip the correct order of operations. The holding in *Americold*—that "when an artificial entity is sued in *its* name, it takes the citizenship of each of its members"—"coexists" with *Navarro*'s "separate rule that when a trustee files a lawsuit in *her* name, her jurisdictional citizenship is the State to which she belongs." *Americold Realty Tr.*, 577 U.S. at 383. Thus, when a trustee files suit in its own name, as the Trustee did here, a court first must determine whether it is a "real and substantial part[y] to

9

the controversy." *Navarro*, 446 U.S. at 460; *see Wilmington Sav. Fund Soc'y, FSB v. Okunola*, No. 18 Civ 2084 (AMD), 2023 WL 9507759, at *3 (E.D.N.Y. Mar. 15, 2023) ("[T]he proper jurisdictional analysis begins by examining the scope of the trustee's authority as delineated by the Trust Agreement." (alteration adopted and internal quotation marks omitted)). If it is such an "active trustee," its citizenship, not that of the trust, controls the diversity analysis—even if the trust in question has some characteristics of a business trust. Indeed, the Supreme Court in *Navarro* explained that "the trustees of a *business trust* may invoke the diversity jurisdiction of the federal courts on the bases of their own citizenship, rather than that of the trust's beneficial shareholders." 446 U.S. at 458 (emphasis added). It is therefore only when determining the citizenship of a trust that *Americold*'s rule becomes relevant. A court need not undertake *Americold*'s inquiry if its trustee sues or is sued in its own name and is "active" enough to qualify as a real party to the dispute.[6] *See Americold Realty Tr.*, 577 U.S. at 383. As the Trustee here is active, it is unnecessary to determine the citizenship of the non-party Trust.

Regardless, Defendants' contention that under *Americold* the Trust takes the citizenship of its Certificateholders is without merit. In *Americold*, the Supreme Court distinguished between traditional trusts and so-called business trusts for the purposes of determining the trust's citizenship. For "a traditional trust," the trustee's "citizenship is all that matters for diversity purposes," whereas for the "variety of unincorporated entities" to which states "have applied the 'trust' label" but are able to sue and be sued in their own name, they "possess[] the citizenship of

---

[6] Defendants argue that "the trustee's citizenship does not control the diversity analysis merely because it is suing in its capacity as a trustee to an unincorporated trust when that trust is a business trust." Motion at 9. That is correct. The mere fact that a trustee sues qua trustee is not sufficient for a court to conclude that its citizenship is all that is relevant to the diversity analysis. Instead, as discussed above, a court must first determine that the trustee is a "real and substantial part[y] to the controversy." *Navarro*, 446 U.S. at 460.

10

all [their] members." *Id.* at 383.  The Trust here is not an unincorporated entity like the one in *Americold*.  Crucially, in *Americold*, the Supreme Court looked to Maryland state law governing entities like the trust at issue and observed that the trust was considered "a 'separate legal entity' that itself can sue or be sued." *Id.*  Here, however, the Trust is a common law trust organized under the laws of New York.  SAC ¶ 1; PSA at 470 (providing that the PSA and any dispute "related to . . . the interpretation and enforcement of the rights and duties of the parties to [the PSA] shall be governed by and construed in accordance with the . . . decisions of the State of New York").  Under New York law, trusts are not juridical persons and cannot sue or be sued in their own names.  *See Anh Nguyet Tran v. Bank of N.Y.*, No. 13 Civ. 580 (RPP), 2014 WL 1225575, at *1 n.4 (S.D.N.Y. Mar. 24, 2014) ("[U]nder New York law, a trust is not a person that can sue or be sued, and litigation involving a trust must be brought by or against the trustee in its capacity as such"), *aff'd*, 610 F. App'x 82 (2d Cir. 2015).  Because the Trust is not "'a separate legal entity that itself can sue or be sued,'" it is not "subject to the 'rule that it possesses the citizenship of all of its members.'" *Raymond Loubier Irrevocable Tr. v. Loubier*, 858 F.3d 719, 728-29 (2d Cir. 2017) (quoting *Americold Realty Tr.*, 577 U.S at 383); *id.* at 731-32 (holding that, because the party trusts "ha[d] no distinct juridical identity allowing them to sue or to be sued in their own names," the "pleadings in the names of the trusts themselves d[id] not require that th[ose] parties' citizenship, for purposes of diversity, be determined by reference to all their members," but instead by the citizenship "of their respective trustees").[7]

---

[7] In arguing that the Trust is not a traditional trust, Defendants emphasize that the Trust's purpose is to turn a profit for its investors who have purchased tradeable certificates, and that the Certificateholders have some voting rights.  Motion at 9-14.  Defendants exaggerate the level of control that Certificateholders exercise over the Trust, *see* PSA at 469 ("No Certificateholder . . . shall have any right to vote (except as expressly provided for herein) or in any manner otherwise control the operation and management of the Trust."); *id.* (providing that nothing in the PSA shall

Finally, the weight of authority in this District supports the conclusion that the Trustee's citizenship—and its citizenship alone—is relevant to the Court's analysis of the plaintiff-side citizenship for diversity jurisdiction purposes. *See, e.g.*, *U.S. Bank Nat'l Ass'n as Tr. to Bank of Am., N.A. v. KeyBank, Nat'l Ass'n*, No. 20 Civ. 3577 (PKC), 2023 WL 2745210, at *7 (S.D.N.Y. Mar. 31, 2023) (concluding that the trustee was a real and substantial party to the litigation and thus considering only its citizenship, and not that of the trust or its members, for the purposes of diversity jurisdiction); *Wells Fargo Bank, Nat'l Ass'n v. 5615 N. LLC*, No. 20 Civ. 2048 (VSB), 2022 WL 15523689, at *5-6 (S.D.N.Y. Oct. 27, 2022) (same); *Wilmington Tr., Nat'l Ass'n v. 115 Owner LLC*, No. 20 Civ. 2157 (JMF), 2021 WL 5086368, at *1-2 (S.D.N.Y. Nov. 2, 2021) (same); *Wells Fargo Bank, N.A. v. 390 Park Ave. Assocs., LLC*, No. 16 Civ. 9112 (LGS), 2017 WL 2684069, at *2-4 (S.D.N.Y. June 21, 2017) (same); *U.S. Bank, Nat'l Ass'n v. UBS Real Est. Sec. Inc.*, 205 F. Supp. 3d 386, 409-11 (S.D.N.Y. 2016) (same). The cases cited by Defendants are all readily distinguishable. *See* Motion at 9-12; Reply at 5 n.6. In some instances, the trust at issue was a juridical person, able to sue or be sued in its own name. *See SPV-LS, LLC v. Bergman*, No. 15 Civ. 6231 (KAM) (CLP), 2019 WL 2257244, at *16-17 (E.D.N.Y. Jan. 14, 2019) (the trust was a "Delaware statutory trust" that "may sue or be sued" under Delaware law), *report and recommendation adopted*, 2019 WL 1552914 (E.D.N.Y. Apr. 10, 2019); *Wilmington Sav. Fund*

---

"be construed so as to constitute the Certificateholders . . . from time to time as partners or members of an association"), and fail to confront the inability of the Trust to sue or be sued in its own name, *see Loubier*, 858 F.3d at 729-30 (explaining that *Americold*'s rule "does not apply to a traditional trust that establishes only a fiduciary relationship and that *cannot sue or be sued in its own right*" (emphasis added)); *Wang by & through Wong v. New Mighty U.S. Tr.*, 843 F.3d 487, 495 (D.C. Cir. 2016) (explaining "that a traditional trust is a trust that lacks juridical person status" and that "[w]hether a particular trust has or lacks juridical person status can be determined by reference to the law of the state where the trust is formed"); *France v. Thermo Funding Co., LLC*, 989 F. Supp. 2d 287, 299 (S.D.N.Y. 2013) (explaining that "a business trust . . . typically has a legal personality, conducts business in its own right, can sue or be sued, and generally operates like an unincorporated business entity").

*Soc'y, FSB v. Fernandez*, No. 22 Civ. 6474 (KAM) (ST), 2024 WL 219092, at *3 (E.D.N.Y. Jan. 22, 2024) (the trust was a "Delaware statutory trust" defined as an "unincorporated association" under Delaware law, and the trustee failed to plead its own citizenship); *FMAC Loan Receivable Tr. 1997-C v. Strauss*, No. 03 Civ. 2190 (LAK), 2003 WL 1888673, at *1 (S.D.N.Y. Apr. 14, 2003) (pre-*Americold* case holding that a party business trust organized under the laws of Delaware took the citizenship of its members). In another instance, the court was unable to determine the relevant trust's citizenship without additional evidence. *See New York Packaging II, LLC v. Maierhoffer*, No. 23 Civ. 825 (JMA), 2023 WL 5002760, at *3-4 (E.D.N.Y. Aug. 4, 2023) (concluding that jurisdictional discovery was necessary to determine a trust's citizenship because of a "dearth of reliable evidence"). And one decision relied upon by Defendants is no longer good law. *See Nomura Asset Acceptance Corp. Alternative Loan Tr., Series 2007-1 v. Nomura Credit & Cap., Inc.*, 27 F. Supp. 3d 487, 489-93 (S.D.N.Y. 2014) (pre-*Americold* case concluding that a trust that sues in its own name *always* takes the citizenship of its beneficiaries), *abrogated by Loubier*, 858 F.3d at 732 (explaining that the citizenship of "traditional trusts" that "can only sue or be sued in the names of their trustees" is "that of their respective trustees").

Accordingly, the Court concludes that the citizenship of the Trustee, not that of the Trust's beneficiaries, is relevant for purposes of determining the plaintiff-side citizenship in this case. As alleged in the Second Amended Complaint, and not disputed by Defendants, the Trustee is a citizen of Delaware. SAC ¶ 9.

**B.     Citizenship of the Special Servicer**

Turning to their second argument, Defendants claim that Rialto is a real party to the dispute and that the Second Amended Complaint does not plead diversity jurisdiction by virtue of its failure to plead that entity's citizenship. Motion at 17-19. That the Trustee here is suing "by and

13

through its special servicer, Rialto," SAC at 1, does not change the conclusion that the Trustee is a real party to the controversy and that its citizenship alone controls the diversity inquiry. "To establish whether a plaintiff is a 'real and substantial party to the controversy,' a crucial distinction must be made between a plaintiff who sues solely in his capacity as an agent, on the one hand, and, on the other, a plaintiff who sues not only as an agent, but also as an individual who has his own stake in the litigation." *Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 194 (2d Cir. 2003). "[W]here a plaintiff brings a suit solely in his representative capacity, the citizenship of the represented party, and not that of the representative, controls." *Id.* Because Rialto does not have its "own stake in the litigation," it is not an additional "real and substantial party to the controversy." *Id.*

Here, like in many cases involving special servicers, Rialto's "'stake in the litigation [is] entirely due to its role as the representative of the Trustee under the' relevant pooling and servicing agreement—[Rialto] [does] not have '"its own stake in the litigation" apart from its duties under the PSA to represent Trustee, the real party in interest, in certain actions affecting the Trustee's interests.'" *U.S. Bank Nat'l Ass'n as Tr. to Bank of Am.*, 2023 WL 2745210, at *8 (quoting *U.S. Bank Nat. Ass'n v. Nesbitt Bellevue Prop. LLC*, 859 F. Supp. 2d 602, 609 (S.D.N.Y. 2012)). Rialto "filed this action solely as a representative of the Trustee and does not have any direct stake in the litigation apart from its duties under the PSA." SAC ¶ 8. It does not hold legal title to the assets of the Trust, PSA at 128-29, and absent "the Trustee's written consent," it may not "initiate any action, suit or proceeding solely under the Trustee's name without indicating [its] . . . representative capacity," *id.* at 162; *see also id.* at 161-62 (providing that Rialto is "authorized and

empowered *by the Trustee*" to initiate suit (emphasis added)).[8] Although about 0.06% of Aevri's "unpaid balance" under the Loan includes "special servicer fees," SAC ¶ 92, the Second Amended Complaint seeks damages payable only to the Trustee, not Rialto, *id.* at 18-20. *See U.S. Bank Nat'l Ass'n as Tr. to Bank of Am.*, 2023 WL 2745210, at *8 (holding that the special servicer was not a real party to the dispute because "[t]he Complaint seeks damages payable to the plaintiff, i.e., U.S. Bank as trustee, and not to [the special servicer]"). That the PSA provides payment of fees to the Special Servicer is of no moment. *See U.S. Bank Nat. Ass'n*, 859 F. Supp. 2d at 611 (concluding that the fact that the special servicer "is paid fees for acting as an agent in servicing the loans . . . does not make it a necessary party for the purposes of determining diversity"). Indeed, the Second Circuit has observed that courts "regularly exercise diversity jurisdiction in cases where nondiverse individuals or groups who are not direct parties to the litigation nevertheless have a crucial interest in its outcome." *E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co.*, 160 F.3d 925, 936 (2d Cir. 1998); *see also Oscar Gruss & Son*, 337 F.3d at 195 ("[W]here multiple parties all have a financial interest in a lawsuit, a strategic choice of parties in order to maintain diversity is not considered to be collusive so long as the party chosen to bring the suit is in fact the master of the litigation.").

All told, Rialto's stake in this litigation is sufficiently *de minimis* such that it is not a real and substantial party whose citizenship must be considered in assessing the Court's diversity

---

[8] Defendants briefly suggest that "Rialto's power to bring this foreclosure action against Defendants is not subject to the [T]rustee's rights, but rather 'the Directing Certificateholder's, the Operating Advisor's and the Risk Retention Consultation Parties' respective rights.'" Reply at 10 (quoting PSA at 209). But any power wielded by the Special Servicer under the PSA is delegated to it from the Trustee, PSA at 161-62, who assumes all duties of the Special Servicer upon its termination, *id.* at 390, 396-98. That Rialto (or the Trustee) must "exercise reasonable efforts" to foreclose on a mortgage, subject to other parties' rights, does not change the font of Rialto's authority. *Id.* at 209-10.

jurisdiction. Once again, this conclusion finds substantial support from numerous decisions of judges of this District. *See U.S. Bank Nat'l Ass'n as Tr. to Bank of Am.*, 2023 WL 2745210, at *8 (holding that the special servicer's citizenship was "not relevant to the diversity jurisdiction analysis" because the special servicer was "acting solely in its capacity as agent of the Trustee pursuant to the PSA and d[id] not hold legal title to the trust assets" (internal quotation marks omitted)); *Wells Fargo Bank, Nat'l Ass'n*, 2022 WL 15523689, at *5 (holding that the master servicer was not a real party to the controversy because "the PSA establishe[d] that the Master Servicer [was] exercising the Trustee's rights"); *Wilmington Tr., Nat'l Ass'n*, 2021 WL 5086368, at *1 (holding that the citizenship of a special servicer was not relevant because its "power to initiate proceedings under the PSA is a delegation of authority from [the Trustee]" and that it "is not itself a real and substantial party because it does not hold any assets for the Trust and has no stake in the underlying controversy"); *Wells Fargo Bank*, 2017 WL 2684069, at *3 (holding that a special servicer was not "an additional real and substantial party" because its role was only to "represent the Trustee" and it "ha[d] no other stake in the litigation, notwithstanding its option under the PSA to acquire defaulted loans if certain conditions are met").

\* \* \*

In sum, the Trustee's citizenship alone determines the plaintiff-side citizenship for the purposes of assessing whether this Court has diversity jurisdiction. The Trustee is a citizen of Delaware, and all Defendants are citizens of either New York, New Jersey, or both. SAC ¶¶ 9-22. Because this means complete diversity exists between the parties, and because the amount-in-controversy exceeds $75,000, the Court has diversity jurisdiction over this action.

16

## IV.  Conclusion

For the reasons stated above, Defendants' motion to dismiss is denied.  The Clerk of Court is respectfully directed to terminate the motion pending at Docket Number 44.

SO ORDERED.

Dated: February 5, 2025
       New York, New York

                                                JOHN P. CRONAN
                                     United States District Judge