**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| WILMINGTON TRUST, NATIONAL ASSOCIATION, as Trustee for the benefit of the Registered Holders of BBCMS Mortgage Trust 2022-C15 Commercial Mortgage Pass-Through Certificates, Series 2022-C15, acting by and through its special servicer, Rialto Capital Advisors, LLC,<br><br>  Plaintiff,<br><br>  v.<br><br>AEVRI SALINA MEADOWS LLC; HAWTHORNE PROPERTY SERVICES, LLC; and MOSHE ROTHMAN,<br><br>  Defendants. | Case No.: 1:23-cv-08824<br><br>Hon. John P. Cronan |

**PLAINTIFF'S LOCAL RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

Pursuant to Local Civil Rule 56.1(a) of this Court, Plaintiff Wilmington Trust, National Association, as Trustee for the benefit of the Registered Holders of BBCMS Mortgage Trust 2022-C15 Commercial Mortgage Pass-Through Certificates, Series 2022-C15 and the holder(s) of the related Companion Notes ("Plaintiff" or "Lender"), acting by and through its special servicer, Rialto Capital Advisors, LLC, respectfully submits this statement of material facts as to which there is no genuine issue to be tried:

**I.    The Loan and Loan Documents**

1.    On or about February 16, 2022, the Bank of Montreal (the "Original Lender") made a loan to Aevri Salina Meadows LLC (the "Borrower") in the principal amount of $25,000,000 (the "Loan"). Compl. ¶ 25[1]; Declaration of Michael Strickland ("Strickland Decl.") ¶ 3.

---

[1] "Compl." refers to the Second Amended Complaint (ECF No. 43), a true and complete copy of which (excluding exhibits) is attached to the Declaration of Michael Strickland filed contemporaneously herewith (the "Strickland Decl.") as **Exhibit 1**. Unless otherwise noted, the exhibits cited herein are attached to the Strickland Declaration.

2.	To evidence its indebtedness under the Loan, Borrower, as obligor, duly executed, acknowledged and delivered to Original Lender, as obligee, a Promissory Note dated as of February 16, 2022, in the original principal amount of $25,000,000 (the "Note").  Compl. ¶ 26; Stickland Decl. ¶ 4.

3.	The Note obligated Borrower to pay Original Lender, its successors or assigns, the principal sum of $25,000,000, plus interest and other amounts owing under the Loan.[2]  Compl. ¶ 26; Strickland Decl. ¶ 5.

4.	Borrower, as obligor and mortgagor, executed and delivered to Original Lender, as obligee and mortgagee, a Mortgage and Security Agreement, dated as of February 16, 2022 (the "Mortgage").  The Mortgage granted the Original Lender, its successors or assigns, a first priority lien on certain real property known as the Salina Meadows Office Park and all related rents and revenue (as more fully described in the Mortgage, the "Property"), to secure Borrower's obligations under the Loan.[3]  Compl. ¶ 28; Strickland Decl. ¶ 6.

5.	The Mortgage was duly filed and recorded in the Recorder's Office of Onondaga County, New York on December 7, 2022, as Instrument No. 2022-00009536.  See Ex. 3, p. 1 (Recording Cover Sheet).

6.	To further secure its payment and performance of obligations under the Loan, Borrower, as obligor and assignor, executed and delivered to Original Lender, as obligee and assignee, an Assignment of Leases and Rents dated as of February 16, 2022 (the "ALR").[4]  Compl. ¶ 32; Strickland Decl. ¶ 7.

7.	The ALR granted a security interest in the Rents (as defined in the ALR) to secure

---

[2]  A true and correct copy of the Original Note is attached as **Exhibit 2**.
[3]  A true and correct copy of the publicly recorded Mortgage is attached as **Exhibit 3**.
[4]  A true and correct copy of the publicly recorded ALR is attached as **Exhibit 4.**

65067873

Borrower's obligations under the Loan.  See Ex. 4.

8. 33. The ALR was duly filed and recorded in the Recorder's Office for Onondaga County, New York on March 7, 2022, as Instrument No. 2022-00009537. See Ex. 4, p. 1 (Recording Cover Sheet).

9. Borrower also executed and delivered to Original Lender a Loan Agreement dated as of February 16, 2022 (the "Loan Agreement"), pursuant to which the Borrower agreed to comply with additional terms, provisions, and obligations with respect to the Loan for the benefit of the Original Lender, its successors and assigns.  Compl. ¶ 42; Strickland Decl. ¶ 8.[5]

10. As an inducement for Original Lender to make the Loan and to secure repayment of the Loan, Rothman executed and agreed to be bound by a Limited Recourse Guaranty dated as of February 16, 2022 (the "Guaranty" and together with the Note, Mortgage, ALR, Loan Agreement and all other documents executed in connection with the Loan, the "Loan Documents"). Compl. ¶ 35; Strickland Decl. ¶ 9.[6]

11. Pursuant to the Guaranty, Rothman unconditionally and irrevocably guaranteed, in his personal capacity, the "punctual payment when due" of the "Guaranteed Recourse Obligations of Borrower," as defined by Article 13 of the Loan Agreement.  Ex. 6.

12. The "Guaranteed Obligations" include the entire unpaid balance of the Loan if the Borrower "fails to comply with any Cash Management Provisions or fails to appoint a new property manager upon the request of the Lender…" and includes a comprehensive waiver of all Borrower defenses.  Ex. 6, Art. 13, 24.

13. The Loan Agreement defines "Cash Management Provisions" as:

> [T]he representations, covenants and other terms and conditions of this Agreement and the other Loan Documents (including, without

---

[5] A true and correct copy of the Loan Agreement is attached as **Exhibit 5**.
[6] A true and correct copy of the Guaranty is attached as **Exhibit 6.**

3

65067873

limitation, the Restricted Account Agreement) related to, in each case, cash management and/or other related matters (including, without limitation, Article 9 hereof). Ex 5, pg. 3.

14. At closing and as a condition of issuing the Loan the attorney for the Defendants, Mordechai Book, Esq. provided the Original Lender with an Opinion Letter dated February 16, 2022 confirming that all of the Loan Documents were duly executed and enforceable obligations of the Borrower and Guarantor (the "Book Opinion Letter"). Ex. 14, pgs. 1, 5-6.[7]

## II.     The Transfer of the Loan to the Plaintiff

15. Borrower physically delivered the Note to Lender and executed an Allonge to the Note in Lender's favor on or about April 13, 2022 (the "Allonge"). A true and correct copy of the Allonge is firmly affixed to the Note and both the Note and Allonge have been in the Plaintiff's possession since prior to the commencement of this action. Compl. ¶ 45; Strickland Decl. ¶ 11; Ex 2.

16. Original Lender assigned its interest in the Mortgage to the Lender by Assignment of Mortgage effective as of April 13, 2022 (the "Assignment of Mortgage") and recorded in the Recorder's Office of Onondaga County, New York on August 18, 2022 as Instrument No. 2022-00033776. Compl. ¶ 46; Strickland Decl. ¶ 12.[8]

17. Original Lender assigned its interest in the ALR to Lender pursuant to an Assignment of ALR effective as of April 13, 2022 (the "Assignment of ALR") and recorded in the Recorder's Office for Onondaga County, New York on August 18, 2022 as Instrument No. 2022-00033777. Compl. ¶ 48; Strickland Decl. ¶ 13.[9]

18. The Lender took assignment of the Loan for value, in good faith, without notice

---

[7] A true and complete copy of the Book Opinion Letter is attached as **Exhibit 14**.
[8] A true and correct copy of the Assignment of Mortgage is attached as **Exhibit 7**.
[9] A true and correct copy of the Assignment of ALR is attached as **Exhibit 8**.

65067873

that it was overdue or had been dishonored or of any defense against or claim to it on the part of any person. Strickland Decl. ¶ 14.

### III. The Payment Defaults.

19. Pursuant to Section 10.1(a) of the Loan Agreement, an Event of Default exists if:

> If (A) any monthly Debt Service payment or the payment due on the Maturity Date is not paid when due, (B) any deposit to any of the Accounts required hereunder or under the other Loan Documents is not paid when due and such non-payment continues for five (5) days following notice to Borrower (it being acknowledged that no notice shall be required from Lender if such deposit was included in the monthly invoice provided to Borrower)… Ex. 5.

20. The Borrower initially paid the Loan without comment for over a year and never alleged that that its terms had been altered through the use of detached signature pages. Strickland Decl. ¶ 15.

21. Borrower failed to make the regular monthly payment of interest and escrows due under the Loan Documents on April 6, May 6, and June 6, 2023. Compl. ¶ 52; Strickland Decl. ¶ 15.

22. By letter dated June 29, 2023 (the "Notice of Default"), Plaintiff notified Borrower that an Event of Default had occurred due to its failure to make payments as and when due under the Loan Documents. Compl. ¶ 54; Strickland Decl. ¶ 16.[10]

23. Borrower made a lump sum payment of $320,000 on July 3, 2023, however, the payment was insufficient pay past due interest and did not make any contribution to the past due escrow payments required under the Loan Agreement. Compl. ¶ 55; Strickland Decl. ¶ 17.

24. Borrower failed to make any payment on account of the installment due on July 6, 2023. Compl. ¶ 56; Strickland Decl. ¶ 18.

---

[10] A true and complete copy of the Notice of Default is attached as **Exhibit 9**.

65067873

25. By letter dated August 2, 2023 (the "Notice of Acceleration"), the Lender exercised its right to accelerate the Loan and declare the entire debt immediately due and payable. Compl. ¶ 57; Strickland Decl. ¶ 19.[11]

26. The Borrower has not made any payment since July 3, 2023. Answer, ¶ 58; Strickland Decl. ¶ 20.

### IV. Failure to Comply with the Cash Management Provisions

27. Section 9.1 (a) of the Loan Agreement, titled "Establishment of Certain Accounts" states that "Borrower shall, simultaneously herewith, establish an Eligible Account (the "Restricted Account") pursuant to the Restricted Account Agreement in the name of Borrower for the sole and exclusive benefit of Lender ***into which Borrower shall cause tenants to deposit all revenue generated by the Property***." Ex. 5, § 9.1(a) (emphasis supplied).

28. Section 9.2 (a) of the Loan Agreement, titled "Deposits into Restricted Account, Maintenance of Restricted Account" states:

> Borrower represents, warrants and covenants that, so long as the Debt remains outstanding, (i) ***Borrower shall, or shall cause Manager to, deposit all revenue derived from the Property and received by Borrower or Manager, as the case may be, into the Restricted Account*** within two (2) Business Days of Borrower's or Manager's, as applicable, receipt thereof….
>
> Until deposited into the Restricted Account, any Rents and other revenues from the Property held by Borrower shall be deemed to be collateral and ***shall be held in trust*** by it for the benefit, and as the property, of Lender pursuant to the Security Instrument and shall not be commingled with any other funds or property of Borrower. ***Borrower warrants and covenants that it shall not rescind, withdraw or change any notices or instructions required to be sent by it pursuant to this Section 9.2 without Lender's prior written consent***… Ex. 5, §9.2(a) (emphasis supplied).

---

[11] A true and complete copy of the Notice of Acceleration is attached as **Exhibit 10**.

29. Contemporaneous with the closing of the Loan, Lender and Borrower opened the Restricted Account required under the Loan Agreement. Compl. ¶ 62; Strickland Decl. ¶ 21.

30. The Borrower initially deposited or instructed the tenants of the Property to deposit all or a substantial portion of the rents into the Restricted Account. Answer ¶ 62; Strickland Decl. ¶¶ 22, 23.[12]

31. However, on August 22, 2022, the Borrower sent a letter to its on-site property manager directing that tenant rents be deposited into a Borrower-controlled account at TD Bank *rather than into the Restricted Account*. Consequently, there has not been a single deposit to the Restricted Account since October 24, 2022. Compl. ¶ 64; Strickland Decl. ¶ 22; Declaration of William Colucci ("Colucci Decl.") ¶ 4, Ex 1.[13]

32. By letter dated August 8, 2023, the Plaintiff demanded that the Borrower immediately resume compliance with the Cash Management Provisions of the Loan Documents and provide an accounting of all amounts diverted from the Restricted Account since the origination of the Loan. Compl. ¶ 70; Strickland Decl. ¶ 25.[14]

33. The Borrower used its control over the rents to improperly transfer at least $700,000 to itself following default:[15]

---

[12] True and complete copies of the monthly Restricted Account statements are attached as **Exhibit 11**.
[13] A true and complete copy of the August 22, 2022, letter is attached the Colucci Decl. as **Exhibit 1**.
[14] A true and complete copy of the August 8, 2023, letter is attached as **Exhibit 12**.
[15] This data was obtained from the Borrower's accounting records following appointment of the Receiver. Colucci Decl. ¶ 3. A true and complete copy of the 2023 Profit & Loss detail for January – December 2023 is attached to the Colucci Decl. as **Exhibit 2**.

| 05/01/2023 | Check | Aevri Salina Meadows | CHECK 20201 | 100,000.00 |
| --- | --- | --- | --- | --- |
| 06/01/2023 | Check | Aevri Salina Meadows | CHECK 20235 | 50,000.00 |
| 06/05/2023 | Check | Aevri Salina Meadows | CHECK 20237 | 50,000.00 |
| 07/13/2023 | Check | Aevri Salina Meadows | CHECK 20252 | 100,000.00 |
| 08/03/2023 | Check | Aevri Salina Meadows | CHECK 20269 | 100,000.00 |
| 08/14/2023 | Check | Aevri Salina Meadows | CHECK 20285 | 50,000.00 |
| 08/25/2023 | Check | Aevri Salina Meadows | CHECK 20287 | 50,000.00 |
| 09/05/2023 | Check | Aevri Salina Meadows | CHECK 20288 | 50,000.00 |
| 09/14/2023 | Check | Aevri Salina Meadows | CHECK 20302 | 50,000.00 |
| 10/10/2023 | Check | Aevri Salina Meadows | CHECK 20304 | 50,000.00 |
| 10/16/2023 | Check | Aevri Salina Meadows | CHECK 20306 | 50,000.00 |

Colucci Decl. ¶¶ 5-7, Ex. 2.

34. The Borrower has failed to return these funds or provide an accounting as required under the Cash Management Provisions. Strickland Decl. ¶ 26, Procida Decl. ¶¶ 25, 26.

**V.      Failure to Change Managers**

35. By letter dated September 26, 2023, the Plaintiff demanded that the Borrower replace the existing Manager, Smartcore Consulting, LLC d/b/a Mike Barney Management, with William C. Colucci of Cushman & Wakefield/Pyramid Brokerage. Compl. ¶ 81; Strickland Decl. ¶ 27.[16]

36. The Borrower refused to comply with this demand and continued diverting rents from the Restricted Account until the appointment of Mr. Colucci as receiver on November 22, 2023. Compl. ¶ 81; Strickland Decl. ¶ 28.

37. The Plaintiff originally filed this action on October 6, 2023, and filed its Second Amended Complaint on March 4, 2024. ECF 1, 43.

38. The Borrower and Guarantor filed a joint answer and affirmative defenses on February 19, 2025 (the "Answer"). Declaration of Brent W. Procida ("Procida Decl.") Ex. 10.

---

[16] A true and complete copy of the September 16, 2023, letter is attached as **Exhibit 13**.

8

39. The Borrower and Guarantor admit that "[a]s of the date of the [Second Amended Complaint], the Borrower has not made any payments since July 3, 2023." Id., ¶ 58.

## VI. The Ownership and Citizenship of the Borrower

40. Borrower is a limited liability company organized under the laws of the State of Delaware with an address at 2604 Elmwood Avenue, Suite 210, Rochester, New York 14618. Ex. 5, pg. 1.

41. The sole member of the Borrower is Aevri Salina Meadows SPE LLC ("Aevri SPE"). Ex. 5, Schedule III (Organizational Chart).

42. The sole members of Aevri SPE are Aevri Salina Manager LLC ("Aevri Manager") and Aevri Salina Investors LLC ("Aevri Investors"). Id.

43. The sole member of Aevri Manager is Rothman. Id.

44. Rothman is the ultimate manager of the Borrower and all of its parent LLC's. Procida Decl., Ex. 1, ¶ 5.

45. Rothman is a natural person and citizen of the State of New York, having an address at 1600 Monroe Avenue, Rochester, New York 14618. Ex. 6, pg. 1.

46. The sole members of Aevri Investors are Moshe Rothman, Kalman Rubinstein, Allen Azoulay, Hannah Gottesman, David Helfgott, Gavriel Herzig and Shenuel Friedman (collectively, the "Members"). Ex. 5, Schedule III.

47. The Operating Agreement for Aevri Investors prohibits any transfer of membership interests without Mr. Rothman's prior written consent and renders any such transfer *void ab initio*. Procida Decl., ¶¶ 20-21, Ex. 10, §8.01(a).

48. Kalman Rubinstein is natural person and a citizen of the State of the New York and at the time of the Complaint resided at 1162 57th Street, Brooklyn New York 11219. Procida Decl., Ex. 3.[17]

49. Allen Azoulay is natural person and a citizen of the State of the New Jersey. Azoulay. At the time of the Complaint Mr. Azoulay resided at 17 Fountain Dr Apt 3, Lakewood, New Jersey 08701. He currently resides at 1609 Thames Way, Toms River, New Jersey 08755. Procida Decl., Ex. 4.

50. Hannah Gottesman is natural person and a citizen of the State of New Jersey and at the time of the Complaint resided at 27 Wilson Boulevard, Jackson, New Jersey 08527. She is also the wife of Rothman's business partner, Chaim (Eli) Puretz. Procida Decl., Ex. 5.

51. David Helfgott is natural person and a citizen of the State of the New York and at the time of the Complaint resided at 1538 E. 7th Street, Brooklyn New York. Procida Decl., Ex. 6.

52. Gabriel Herzig is natural person and a citizen of the State of Texas residing a 7702 Moondance Lane, Houston, Texas 77071. Mr. Herzig previously resided in California and New York. Procida Decl., Ex. 7.

53. Shmuel Friedman is natural person and a citizen of the State of the New Jersey having an address at 1942 White Knoll Drive, Toms River, New Jersey 08755. Procida Decl., Ex. 8.

---

[17] **Exhibits 3-8** of the Procida Declaration are copies of real estate records showing the residential addresses of each member of Aevri Investors. These documents are authenticated pursuant to Federal Rule of Evidence ("FRE") 901(b)(7) and exempt from the prohibition on hearsay pursuant to FRE 803(14).

65067873

54. The Salina property was one of at least three investments organized by Rothman and his business partner, Chaim Puretz, **with same the seven individual investors**. Procida Decl., Exs. 1, 2.[18]

55. According to a complaint verified by Mr. Rothman, he "is a successful real estate investor and the ultimate managing member" of all of these entities. Procida Decl., Exs. 1, 2 ¶¶ 1, 5.

56. Delaware law provides that "[a] limited liability company shall maintain a current record that identifies the name and last known business, residence or mailing address of each member and manager." Del. Code Ann. tit. 6, § 18-305 (West).

57. Despite their statutory obligation to maintain such records, during jurisdictional discovery the Defendants refused to provide "the name and last known business, residence or mailing address of each member." Procida Decl., Ex. 9.[19]

58. By Order entered on December 6, 2023 (ECF no. 32), the Court allowed the parties to conduct jurisdictional discovery though January 31, 2025

59. The Defendants did not serve any discovery. Procida Decl. ¶ 23.

VII. **The Outstanding Loan Debt**

40. As of November 1, 2024, the total unpaid balance of Borrower's obligations under the Loan Documents was calculated to be at least $37,746,144.77, and includes (i) the unpaid total principal amount of $25,000,000, (ii) accrued and unpaid interest at the non-default rate of 5.02% per annum ("Note Rate") in the amount of $1,488,569.44, (iii) late charges in the amount of

---

[18] **Exhibit 2** to the Procida Decl. is the combined organizational charts for Aevri Salina Meadows LLC and Aevri Long Lake, LLC, and Aevri Arlington Green, LLC filed by Mr. Rothman as exhibits in *Rothman v. Puretz*, a matter pending in Monroe County Supreme Court under index number E2023001856.

[19] **Exhibit 9** to the Procida Decl. is a true and complete copy of the discovery responses served by the Borrower and Guarantor. Although the Defendants disclaim any obligation to respond to the discovery requests because they are allegedly unsigned, counsel's printed name is an effective signature under both New York and federal law. 15 U.S.C.A. §§ 7001, 7006(6) (West); N.Y. State Tech. Law § 302(3), 304(2) (McKinney).

$62,734.92, (iv) a payoff quote/verification fee in the amount of $4,500.00, (v) a prepayment premium in the amount of $9,397,587.16; (vi) separate and additional default interest at the rate of 5% per annum (the "Default Rate") in the amount of $1,996,527.78, (vii) interest on advances in the amount of $99,874.69, and (viii) protective advances for taxes, special servicer fees, liquidation fee and legal fees totaling $1,390,234.81, less certain funds held in suspense, reserve, or escrow accounts totaling $1,693,884.03.  Strickland Decl. ¶ 29.

41.   Interest on the unpaid principal balance continues to accrue at the Note Rate and Default Rate in the amount of $ 6,958.33 per day.  Strickland Decl. ¶ 30.

Dated: New York, New York
       March 19, 2025                          Respectfully submitted,

                                               **VENABLE LLP**

                                               By: */s/ Brent W. Procida*
                                                   Gregory A. Cross
                                                   Brent W. Procida
                                                   750 E. Pratt Street
                                                   Suite 900
                                                   Baltimore, Maryland 21202
                                                   Tel.: (410) 244-7400
                                                   Fax: (410) 244-7742
                                                   bwprocida@venable.com

                                                   Adam G. Possidente
                                                   151 W. 42nd Street
                                                   New York, New York 10036
                                                   Tel.: (212) 307-5500
                                                   Fax: (212) 307-5598
                                                   apossidente@venable.com

                                                   *Counsel for Plaintiff*