# EXHIBIT 3

Loan No. 99020222091

**AEVRI SALINA MEADOWS LLC**, as mortgagor

to

**BANK OF MONTREAL**, as mortgagee

## MORTGAGE AND SECURITY AGREEMENT

Dated:  As of February 16, 2022

Location:   301 Plainfield Road, Syracuse, NY
200 Salina Meadows Parkway, Syracuse, NY
220 Salina Meadows Parkway, Syracuse, NY
231 Salina Meadows Parkway, Syracuse, NY

County:   Onondaga

PREPARED BY AND UPON
RECORDATION RETURN TO:

Katten Muchin Rosenman LLP
575 Madison Avenue
New York, New York 10022
Attention:  Peter Doyle, Esq.

**THIS MORTGAGE AND SECURITY AGREEMENT** (this "**Security Instrument**") is made as of this 16th day of February, 2022, by **AEVRI SALINA MEADOWS LLC**, a Delaware limited liability company, having its principal place of business at 2604 Elmwood Avenue, Suite 210 Rochester, New York 14618, as mortgagor (together with its permitted successors and assigns, "**Borrower**") for the benefit of **BANK OF MONTREAL**, a Canadian chartered bank operating out of its Chicago branch, having an address at c/o BMO Capital Markets Corp., 3 Times Square, New York New York 10036 (together with its successors and assigns, "**Lender**"), as mortgagee. All capitalized terms not defined herein shall have the respective meanings set forth in the Loan Agreement (defined below).

## RECITALS:

This Security Instrument is given to Lender to secure a certain loan in the original principal amount of $25,000,000 (the "**Loan**") advanced pursuant to a certain loan agreement between Borrower and Lender (as the same may have been or may be amended, restated, replaced, supplemented or otherwise modified from time to time, the "**Loan Agreement**"), which such Loan is evidenced by, among other things, a certain Promissory Note executed in connection with the Loan Agreement (together with all extensions, renewals, replacements, restatements or other modifications thereof, whether one or more being hereinafter collectively referred to as the "**Note**"). The stated maturity date of the Note (exclusive of any acceleration thereof as provided in the Loan Documents) is March 6, 2022;

Borrower desires to secure the payment of the outstanding principal amount set forth in, and evidenced by, the Loan Agreement and the Note together with all interest accrued and unpaid thereon and all other sums due to Lender in respect of the Loan under the Note, the Loan Agreement, this Security Instrument or any of the other Loan Documents (defined below) (collectively, the "**Debt**") and the performance of all of the obligations due under the Note, the Loan Agreement and all other documents, agreements and certificates executed and/or delivered in connection with the Loan (as the same may be amended, restated, replaced, supplemented or otherwise modified from time to time, collectively, the "**Loan Documents**"); and

This Security Instrument is given pursuant to the Loan Agreement, and payment, fulfillment, and performance of the obligations due thereunder and under the other Loan Documents are secured hereby in accordance with the terms hereof.

## Article 1 - GRANTS OF SECURITY

**Section 1.1** <u>PROPERTY MORTGAGED</u>. Borrower does hereby irrevocably mortgage, grant, bargain, sell, pledge, assign, warrant, transfer, convey and grant a security interest to Lender and its successors and assigns in and to the following property, rights, interests and estates now owned, or hereafter acquired by Borrower (collectively, the "**Property**"):

(a) <u>Land</u>. The real property described in <u>Exhibit A</u> attached hereto and made a part hereof (collectively, the "**Land**");

(b) <u>Additional Land</u>. All additional lands, estates and development rights hereafter acquired by Borrower for use in connection with the Land and the development of the Land and all additional lands and estates therein which may, from time to time, by

151404691v4

supplemental mortgage or otherwise be expressly made subject to the lien of this Security Instrument;

(c)   <u>Improvements</u>.   The buildings, fixtures, additions, enlargements, extensions, modifications, repairs, replacements and improvements now or hereafter erected or located on the Land (collectively, the "**Improvements**");

(d)   <u>Easements and Other Rights</u>.   All easements, rights-of-way or use, rights, strips and gores of land, streets, ways, alleys, passages, sewer rights, water, water courses, water rights and powers, air rights and development rights, excess or unused zoning floor area development rights, abatements, zoning floor area bonuses, zoning incentives or awards (including, without limitation, designation or availability of additional zoning floor area pursuant to the NYC Zoning Resolution), and all estates, rights, titles, interests, privileges, liberties, servitudes, tenements, hereditaments and appurtenances of any nature whatsoever, in any way now or hereafter belonging, appurtenant to, relating or pertaining to the Land and the Improvements and/or otherwise owned by or available to Borrower and the reversions and remainders, and all land lying in the bed of any street, road or avenue, opened or proposed, in front of or adjoining the Land, to the center line thereof and all the estates, rights, titles, interests, rights of dower, rights of curtesy, property, possession, claim and demand whatsoever, both at law and in equity, of Borrower of, in and to the Land and the Improvements, and every part and parcel thereof, with the appurtenances thereto;

(e)   <u>Fixtures and Personal Property</u>.   All machinery, equipment, fixtures (including, but not limited to, all heating, air conditioning, plumbing, lighting, communications and elevator fixtures), furniture, software used in or to operate any of the foregoing and other property of every kind and nature whatsoever owned by Borrower, or in which Borrower has or shall have an interest, now or hereafter located upon the Land and the Improvements, or appurtenant thereto, and usable in connection with the present or future operation and occupancy of the Land and the Improvements and all building equipment, materials and supplies of any nature whatsoever owned by Borrower, or in which Borrower has or shall have an interest, now or hereafter located upon the Land and the Improvements, or appurtenant thereto, or usable in connection with the present or future operation and occupancy of the Land and the Improvements (collectively, the "**Personal Property**"), and the right, title and interest of Borrower in and to any of the Personal Property which may be subject to any security interests, as defined in the Uniform Commercial Code, as adopted and enacted by the state or states where any of the Property is located (the "**Uniform Commercial Code**"), and all proceeds and products of the above;

(f)   <u>Leases and Rents</u>.   All leases, subleases, subsubleases, lettings, licenses, concessions or other agreements (whether written or oral) pursuant to which any Person is granted a possessory interest in, or right to use or occupy all or any portion of the Land and the Improvements, and every modification, amendment or other agreement relating to such leases, subleases, subsubleases, or other agreements entered into in connection with such leases, subleases, subsubleases, or other agreements and every guarantee of the performance and observance of the covenants, conditions and agreements to be

2

performed and observed by the other party thereto, heretofore or hereafter entered into, whether before or after the filing by or against Borrower of any petition for relief under any Creditors Rights Laws (collectively, the "**Leases**") and all right, title and interest of Borrower, its successors and assigns therein and thereunder, including, without limitation, cash or securities deposited thereunder to secure the performance by the lessees of their obligations thereunder and all rents, additional rents, rent equivalents, moneys payable as damages or in lieu of rent or rent equivalents, royalties (including, without limitation, all oil and gas or other mineral royalties and bonuses), income, receivables, receipts, revenues, deposits (including, without limitation, security, utility and other deposits), accounts, cash, issues, profits, charges for services rendered, and other consideration of whatever form or nature received by or paid to or for the account of or benefit of Borrower or its agents or employees from any and all sources arising from or attributable to the Property, including, all receivables, customer obligations, installment payment obligations and other obligations now existing or hereafter arising or created out of the sale, lease, sublease, license, concession or other grant of the right of the use and occupancy of property or rendering of services by Borrower or Manager and proceeds, if any, from business interruption or other loss of income insurance whether paid or accruing before or after the filing by or against Borrower of any petition for relief under any Creditors Rights Laws (collectively, the "**Rents**") and all proceeds from the sale or other disposition of the Leases and the right to receive and apply the Rents to the payment of the Debt;

(g)    Insurance Proceeds.    All insurance proceeds in respect of the Property under any insurance policies covering the Property, including, without limitation, the right to receive and apply the proceeds of any insurance, judgments, or settlements made in lieu thereof, for damage to the Property (collectively, the "**Insurance Proceeds**");

(h)    Condemnation Awards.    All condemnation awards, including interest thereon, which may heretofore and hereafter be made with respect to the Property by reason of any taking or condemnation, whether from the exercise of the right of eminent domain (including, but not limited to, any transfer made in lieu of or in anticipation of the exercise of the right), or for a change of grade, or for any other injury to or decrease in the value of the Property (collectively, the "**Awards**");

(i)    Tax Certiorari.    All refunds, rebates or credits in connection with reduction in real estate taxes and assessments charged against the Property as a result of tax certiorari or any applications or proceedings for reduction;

(j)    Rights.    The right, in the name and on behalf of Borrower, to appear in and defend any action or proceeding brought with respect to the Property and to commence any action or proceeding to protect the interest of Lender in the Property;

(k)    Agreements.    All agreements, contracts, certificates, instruments, franchises, permits, licenses, plans, specifications and other documents, now or hereafter entered into, and all rights therein and thereto, respecting or pertaining to the use, occupation, construction, management or operation of the Land and any part thereof and any Improvements or any business or activity conducted on the Land and any part thereof

3

and all right, title and interest of Borrower therein and thereunder, including, without limitation, the right, upon the happening of any default hereunder, to receive and collect any sums payable to Borrower thereunder;

(l)    <u>Intangibles</u>.  All tradenames, trademarks, servicemarks, logos, copyrights, goodwill, books and records and all other general intangibles relating to or used in connection with the operation of the Property;

(m)    <u>Accounts</u>.  All reserves, escrows and deposit accounts maintained by Borrower with respect to the Property, including without limitation, the Accounts and all cash, checks, drafts, certificates, securities, investment property, financial assets, instruments and other property held therein from time to time and all proceeds, products, distributions or dividends or substitutions thereon and thereof (collectively, the "**Secured Accounts**");

(n)    <u>Proceeds</u>.  All proceeds of any of the foregoing items set forth in subsections (a) through (m) including, without limitation, Insurance Proceeds and Awards, whether cash, liquidation claims (or other claims) or otherwise; and

(o)    <u>Other Rights</u>.  Any and all other rights of Borrower in and to the items set forth in subsections (a) through (n) above.

This Section 1.1 is intended to grant in favor of Lender a first priority continuing lien and security interest in all of the Property.  Borrower authorizes Lender and its counsel to file UCC financing statements in form and substance satisfactory to Lender, describing the collateral as all assets of Borrower, all Property of Borrower or using words with similar effect.

**Section 1.2**    <u>ASSIGNMENT OF RENTS</u>.  Borrower hereby absolutely and unconditionally assigns to Lender all of Borrower's right, title and interest in and to all current and future Leases and Rents; it being intended by Borrower that this assignment constitutes a present, absolute assignment and not an assignment for additional security only.  Nevertheless, subject to the terms of the Loan Agreement and Section 8.1(h) of this Security Instrument, Lender grants to Borrower a revocable license to (i) collect, receive, use and enjoy the Rents and Borrower shall hold the Rents, or a portion thereof sufficient to discharge all current sums due on the Debt, for use in the payment of such sums, and (ii) enforce the terms of the Leases.

**Section 1.3**    <u>SECURITY AGREEMENT</u>.  This Security Instrument is both a real property mortgage and a "security agreement" within the meaning of the Uniform Commercial Code.  The Property includes both real and personal property and all other rights and interests, whether tangible or intangible in nature, of Borrower in the Property.  By executing and delivering this Security Instrument, Borrower hereby grants to Lender, as security for the Obligations (hereinafter defined), a security interest in the Personal Property to the full extent that the Personal Property may be subject to the Uniform Commercial Code.

**Section 1.4**    <u>FIXTURE FILING</u>.  Certain of the Property is or will become "fixtures" (as that term is defined in the Uniform Commercial Code) on the Land, and this Security Instrument, upon being filed for record in the real estate records of the city or county wherein such fixtures are situated, shall operate also as a financing statement filed as a fixture filing in accordance with

4

151404691v4

the applicable provisions of said Uniform Commercial Code upon such of the Property that is or may become fixtures.

Section 1.5    CONDITIONS TO GRANT.  TO HAVE AND TO HOLD the above granted and described Property unto and to the use and benefit of Lender and its successors and assigns, forever; PROVIDED, HOWEVER, these presents are upon the express condition that, if Lender shall be well and truly paid the Debt at the time and in the manner provided in the Note, the Loan Agreement and this Security Instrument, if Borrower shall well and truly perform the Other Obligations as set forth in this Security Instrument and shall well and truly abide by and comply with each and every covenant and condition set forth herein and in the Note, the Loan Agreement and the other Loan Documents, these presents and the estate hereby granted shall cease, terminate and be void.

## Article 2 - DEBT AND OBLIGATIONS SECURED

Section 2.1    DEBT.  This Security Instrument and the grants, assignments and transfers made in Article 1 are given for the purpose of securing the Debt.

Section 2.2    OTHER OBLIGATIONS.    This Security Instrument and the grants, assignments and transfers made in Article 1 are also given for the purpose of securing the performance of the following (the "**Other Obligations**"):  (a) all other obligations of Borrower contained herein; (b) each obligation of Borrower contained in the Loan Agreement and any other Loan Document; and (c) each obligation of Borrower contained in any renewal, extension, amendment, modification, consolidation, change of, or substitution or replacement for, all or any part of the Note, the Loan Agreement or any other Loan Document.

Section 2.3    DEBT AND OTHER OBLIGATIONS.  Borrower's obligations for the payment of the Debt and the performance of the Other Obligations shall be referred to collectively herein as the "**Obligations**."

Section 2.4    PAYMENT OF DEBT.  Borrower will pay the Debt at the time and in the manner provided in the Loan Agreement, the Note and this Security Instrument.

Section 2.5    INCORPORATION BY REFERENCE.    All the covenants, conditions and agreements contained in (a) the Loan Agreement, (b) the Note and (c) all and any of the other Loan Documents, are hereby made a part of this Security Instrument to the same extent and with the same force as if fully set forth herein.

## Article 3 - PROPERTY COVENANTS

Borrower covenants and agrees that:

Section 3.1    INSURANCE.  Borrower shall obtain and maintain, or cause to be obtained and maintained, in full force and effect at all times insurance with respect to Borrower and the Property as required pursuant to the Loan Agreement.

Section 3.2    TAXES AND OTHER CHARGES.  Borrower shall pay all real estate and personal property taxes, assessments, water rates or sewer rents (collectively "**Taxes**"), ground

151404691v4

rents, maintenance charges, impositions (other than Taxes), and any other charges, including, without limitation, vault charges and license fees for the use of vaults, chutes and similar areas adjoining the Property (collectively, "**Other Charges**"), now or hereafter levied or assessed or imposed against the Property or any part thereof in accordance with the Loan Agreement.

      **Section 3.3**   LEASES.  Borrower shall not (and shall not permit any other applicable Person to) enter in any Leases for all or any portion of the Property unless in accordance with the provisions of the Loan Agreement.

      **Section 3.4**   WARRANTY OF TITLE.  Borrower has good, indefeasible, marketable and insurable title to the Property and has the right to mortgage, grant, bargain, sell, pledge, assign, warrant, transfer and convey the same.  Borrower possesses an unencumbered fee simple absolute estate in the Land and the Improvements except for the Permitted Encumbrances, such other liens as are permitted pursuant to the Loan Documents and the liens created by the Loan Documents.  This Security Instrument, when properly recorded in the appropriate records, together with any Uniform Commercial Code financing statements required to be filed in connection therewith, will create (a) a valid, perfected first priority lien on the Property, subject only to Permitted Encumbrances and the liens created by the Loan Documents and (b) perfected security interests in and to, and perfected collateral assignments of, all personalty (including the Leases), all in accordance with the terms thereof, in each case subject only to any applicable Permitted Encumbrances, such other liens as are permitted pursuant to the Loan Documents and the liens created by the Loan Documents.  Borrower shall forever warrant, defend and preserve the title and the validity and priority of the lien of this Security Instrument and shall forever warrant and defend the same to Lender against the claims of all Persons whomsoever.

## Article 4 - FURTHER ASSURANCES

      **Section 4.1**   COMPLIANCE WITH LOAN AGREEMENT.  Borrower shall comply with all covenants set forth in the Loan Agreement relating to acts or other further assurances to be made on the part of Borrower in order to protect and perfect the lien or security interest hereof upon, and in the interest of Lender in, the Property.

      **Section 4.2**   AUTHORIZATION TO FILE FINANCING STATEMENTS; POWER OF ATTORNEY.  Borrower hereby authorizes Lender at any time and from time to time to file any initial financing statements, amendments thereto and continuation statements as authorized by applicable law, as applicable to all or part of the Personal Property and as necessary or required in connection herewith.  For purposes of such filings, Borrower agrees to furnish any information requested by Lender promptly upon request by Lender.  Borrower also ratifies its authorization for Lender to have filed any like initial financing statements, amendments thereto or continuation statements, if filed prior to the date of this Security Instrument.  Borrower hereby irrevocably constitutes and appoints Lender and any officer or agent of Lender, with full power of substitution, as its true and lawful attorneys-in-fact with full irrevocable power and authority in the place and stead of Borrower or in Borrower's own name to execute in Borrower's name any such documents and otherwise to carry out the purposes of this Section 4.2, to the extent that Borrower's authorization above is not sufficient and Borrower fails or refuses to promptly execute such documents.  To the extent permitted by law, Borrower hereby ratifies all acts said attorneys-in-fact have lawfully done in the past or shall lawfully do or cause to be done in the

151404691v4

future by virtue hereof. This power of attorney is a power coupled with an interest and shall be irrevocable.

## Article 5 - DUE ON SALE/ENCUMBRANCE

**Section 5.1** <u>NO SALE/ENCUMBRANCE</u>. Except in accordance with the express terms and conditions contained in the Loan Agreement, Borrower shall not cause or permit a sale, conveyance, mortgage, grant, bargain, encumbrance, pledge, assignment, or grant of any options with respect to, or any other transfer or disposition (directly or indirectly, voluntarily or involuntarily, by operation of law or otherwise, and whether or not for consideration or of record) of a direct or indirect legal or beneficial interest in the Property or any part thereof, Borrower, any constituent owner or other holder of a direct or indirect equity interest in Borrower, any indemnitor or other guarantor of the Loan, any constituent owner or other holder of a direct or indirect equity interest in such indemnitor or guarantor, any manager or operating lessee of the Property that is affiliated with Borrower or any constituent owner or other holder of a direct or indirect equity interest in such manager or such operating lessee.

## Article 6 - PREPAYMENT; RELEASE OF PROPERTY

**Section 6.1** <u>PREPAYMENT</u>. The Debt may not be prepaid in whole or in part except in strict accordance with the express terms and conditions of the Note and the Loan Agreement.

**Section 6.2** <u>RELEASE OF PROPERTY</u>. Borrower shall not be entitled to a release of any portion of the Property from the lien of this Security Instrument except in accordance with terms and conditions of the Loan Agreement.

## Article 7 - DEFAULT

**Section 7.1** <u>EVENT OF DEFAULT</u>. The term "**Event of Default**" as used in this Security Instrument shall have the meaning assigned to such term in the Loan Agreement.

## Article 8 - RIGHTS AND REMEDIES UPON DEFAULT

**Section 8.1** <u>REMEDIES</u>. Upon the occurrence and during the continuance of any Event of Default, Borrower agrees that Lender may take such action, without notice or demand, as it deems advisable to protect and enforce its rights against Borrower and in and to the Property, including, but not limited to, the following actions, each of which may be pursued concurrently or otherwise, at such time and in such order as Lender may determine, in its sole discretion, without impairing or otherwise affecting the other rights and remedies of Lender:

      (a)      declare the entire unpaid Debt to be immediately due and payable;

      (b)      institute proceedings, judicial or otherwise, for the complete foreclosure of this Security Instrument under any applicable provision of law, in which case the Property or any interest therein may be sold for cash or upon credit in one or more parcels or in several interests or portions and in any order or manner;

151404691v4

(c)    with or without entry, to the extent permitted and pursuant to the procedures provided by applicable law, institute proceedings for the partial foreclosure of this Security Instrument for the portion of the Debt then due and payable, subject to the continuing lien and security interest of this Security Instrument for the balance of the Debt not then due, unimpaired and without loss of priority;

(d)    sell for cash or upon credit the Property or any part thereof and all estate, claim, demand, right, title and interest of Borrower therein and rights of redemption thereof, pursuant to power of sale or otherwise, at one or more sales, as an entirety or in parcels, at such time and place, upon such terms and after such notice thereof as may be required or permitted by law;

(e)    institute an action, suit or proceeding in equity for the specific performance of any covenant, condition or agreement contained herein, in the Note, the Loan Agreement or in the other Loan Documents;

(f)    recover judgment on the Note either before, during or after any proceedings for the enforcement of this Security Instrument or the other Loan Documents;

(g)    seek and obtain the appointment of a receiver, trustee, liquidator or conservator of the Property, without notice and without regard for the adequacy of the security for the Debt and without regard for the solvency of Borrower, any guarantor or indemnitor under the Loan or any other Person liable for the payment of the Debt;

(h)    the license granted to Borrower under Section 1.2 hereof shall automatically be revoked and Lender may enter into or upon the Property, either personally or by its agents, nominees or attorneys and dispossess Borrower and its agents and servants therefrom, without liability for trespass, damages or otherwise and exclude Borrower and its agents or servants wholly therefrom, and take possession of all books, records and accounts relating thereto and Borrower agrees to surrender possession of the Property and of such books, records and accounts to Lender upon demand, and thereupon Lender may (i) use, operate, manage, control, insure, maintain, repair, restore and otherwise deal with all and every part of the Property and conduct the business thereat; (ii) complete any construction on the Property in such manner and form as Lender deems advisable; (iii) make alterations, additions, renewals, replacements and improvements to or on the Property; (iv) exercise all rights and powers of Borrower with respect to the Property, whether in the name of Borrower or otherwise, including, without limitation, the right to make, cancel, enforce or modify Leases, obtain and evict tenants, and demand, sue for, collect and receive all Rents of the Property and every part thereof; (v) require Borrower to pay monthly in advance to Lender, or any receiver appointed to collect the Rents, the fair and reasonable rental value for the use and occupation of such part of the Property as may be occupied by Borrower; (vi) require Borrower to vacate and surrender possession of the Property to Lender or to such receiver and, in default thereof, Borrower may be evicted by summary proceedings or otherwise; and (vii) apply the receipts from the Property to the payment of the Debt, in such order, priority and proportions as Lender shall deem appropriate in its sole discretion after deducting

8

therefrom all expenses (including reasonable attorneys' fees) incurred in connection with the aforesaid operations and all amounts necessary to pay the Taxes, Other Charges, insurance and other expenses in connection with the Property, as well as just and reasonable compensation for the services of Lender, its counsel, agents and employees;

(i)    apply any sums then deposited or held in escrow or otherwise by or on behalf of Lender in accordance with the terms of the Loan Agreement, this Security Instrument or any other Loan Document and/or the Secured Accounts to the payment of the following items in any order in its sole discretion:  (i) Taxes and Other Charges; (ii) insurance premiums; (iii) interest on the unpaid principal balance of the Debt; (iv) amortization of the unpaid principal balance of the Debt; (v) all other sums payable pursuant to the Note, the Loan Agreement, this Security Instrument and the other Loan Documents, including without limitation advances made by Lender pursuant to the terms of this Security Instrument;

(j)    surrender the insurance policies maintained pursuant to the Loan Agreement, collect the unearned insurance premiums for such insurance policies and apply such sums as a credit on the Debt in such priority and proportion as Lender in its discretion shall deem proper, and in connection therewith, Borrower hereby appoints Lender as agent and attorney-in-fact (which is coupled with an interest and is therefore irrevocable) for Borrower to collect such insurance premiums;

(k)    apply the undisbursed balance of any deposit made by Borrower with Lender in connection with the restoration of the Property after a casualty thereto or condemnation thereof, together with interest thereon, to the payment of the Debt in such order, priority and proportions as Lender shall deem to be appropriate in its discretion; and/or

(l)    pursue such other remedies as Lender may have under applicable law.

In the event of a sale, by foreclosure, power of sale or otherwise, of less than all of the Property, this Security Instrument shall continue as a lien and security interest on the remaining portion of the Property unimpaired and without loss of priority.  Notwithstanding the provisions of this Section to the contrary, if any Event of Default as described in Section 10.1(f) of the Loan Agreement shall occur with respect to Borrower or any SPE Component Entity, the entire unpaid Debt shall be automatically due and payable, without any further notice, demand or other action by Lender.

**Section 8.2**    APPLICATION OF PROCEEDS.    Upon the occurrence and during the continuance of any Event of Default, the purchase money, proceeds and avails of any disposition of the Property (or any part thereof) and any other sums collected by Lender pursuant to the Note, this Security Instrument or the other Loan Documents may, in each case, be applied by Lender to the payment of the Debt in such order, priority and proportions as Lender in its sole discretion shall determine.

**Section 8.3**    RIGHT TO CURE DEFAULTS.    Upon the occurrence and during the continuance of any Event of Default, Lender may, but without any obligation to do so and

9

without notice to or demand on Borrower and without releasing Borrower from any obligation hereunder, make any payment or do any act required of Borrower hereunder in such manner and to such extent as Lender may deem necessary to protect the security hereof.  Lender is authorized to enter upon the Property for such purposes, or appear in, defend, or bring any action or proceeding to protect its interest in the Property or to foreclose this Security Instrument or collect the Debt, and the cost and expense thereof (including reasonable attorneys' fees to the extent permitted by law), with interest as provided in this Section 8.3, shall constitute a portion of the Debt and shall be due and payable to Lender upon demand.  All such costs and expenses incurred by Lender in remedying such Event of Default or such failed payment or act or in appearing in, defending, or bringing any such action or proceeding shall bear interest at any default rate specified in the Loan Agreement, if any (the "**Default Rate**"), for the period after notice from Lender that such cost or expense was incurred to the date of payment to Lender.  All such costs and expenses incurred by Lender together with interest thereon calculated at the Default Rate shall be deemed to constitute a portion of the Debt and be secured by this Security Instrument and the other Loan Documents and shall be immediately due and payable upon demand by Lender therefor.

Section 8.4     ACTIONS AND PROCEEDINGS.  Lender has the right to appear in and defend any action or proceeding brought with respect to the Property and to bring any action or proceeding, in the name and on behalf of Borrower, which Lender, in its discretion, decides should be brought to protect its interest in the Property.

Section 8.5     RECOVERY OF SUMS REQUIRED TO BE PAID.  Lender shall have the right from time to time to take action to recover any sum or sums which constitute a part of the Debt as the same become due, without regard to whether or not the balance of the Debt shall be due, and without prejudice to the right of Lender thereafter to bring an action of foreclosure, or any other action, for a default or defaults by Borrower existing at the time such earlier action was commenced.

Section 8.6     OTHER RIGHTS, ETC.

(a)     The failure of Lender to insist upon strict performance of any term hereof shall not be deemed to be a waiver of any term of this Security Instrument.  Borrower shall not be relieved of Borrower's obligations hereunder by reason of (i) the failure of Lender to comply with any request of Borrower or any guarantor or indemnitor with respect to the Loan to take any action to foreclose this Security Instrument or otherwise enforce any of the provisions hereof or of the Note or the other Loan Documents, (ii) the release, regardless of consideration, of the whole or any part of the Property, or of any Person liable for the Debt or any portion thereof, or (iii) any agreement or stipulation by Lender extending the time of payment or otherwise modifying or supplementing the terms of the Note, this Security Instrument or the other Loan Documents.

(b)     It is agreed that the risk of loss or damage to the Property is on Borrower, and Lender shall have no liability whatsoever for decline in the value of the Property, for failure to maintain the insurance policies required to be maintained pursuant to the Loan Agreement, or for failure to determine whether insurance in force is adequate as to the amount of risks insured.  Possession by Lender shall not be deemed an election of judicial

10

relief if any such possession is requested or obtained with respect to any Property or collateral not in Lender's possession.

(c)     Lender may resort for the payment of the Debt to any other security held by Lender in such order and manner as Lender, in its discretion, may elect. Lender may take action to recover the Debt, or any portion thereof, or to enforce any covenant hereof without prejudice to the right of Lender thereafter to foreclose this Security Instrument. The rights of Lender under this Security Instrument shall be separate, distinct and cumulative and none shall be given effect to the exclusion of the others. No act of Lender shall be construed as an election to proceed under any one provision herein to the exclusion of any other provision. Lender shall not be limited exclusively to the rights and remedies herein stated but shall be entitled to every right and remedy now or hereafter afforded at law or in equity.

**Section 8.7**    RIGHT TO RELEASE ANY PORTION OF THE PROPERTY. Lender may release any portion of the Property for such consideration as Lender may require without, as to the remainder of the Property, in any way impairing or affecting the lien or priority of this Security Instrument, or improving the position of any subordinate lienholder with respect thereto, except to the extent that the obligations hereunder shall have been reduced by the actual monetary consideration, if any, received by Lender for such release, and may accept by assignment, pledge or otherwise any other property in place thereof as Lender may require without being accountable for so doing to any other lienholder. This Security Instrument shall continue as a lien and security interest in the remaining portion of the Property.

**Section 8.8**    RIGHT OF ENTRY. Upon reasonable notice to Borrower, Lender and its agents shall have the right to enter and inspect the Property at all reasonable times.

**Section 8.9**    BANKRUPTCY. (a) Upon the occurrence and during the continuance of an Event of Default, Lender shall have the right to proceed in its own name or in the name of Borrower in respect of any claim, suit, action or proceeding relating to the rejection of any Lease, including, without limitation, the right to file and prosecute, to the exclusion of Borrower, any proofs of claim, complaints, motions, applications, notices and other documents, in any case in respect of the lessee under such Lease under the Bankruptcy Code.

(b)     If there shall be filed by or against Borrower a petition under the Bankruptcy Code and Borrower, as lessor under any Lease, shall determine to reject such Lease pursuant to Section 365(a) of the Bankruptcy Code, then Borrower shall give Lender not less than ten (10) days' prior notice of the date on which Borrower shall apply to the bankruptcy court for authority to reject the Lease. Lender shall have the right, but not the obligation, to serve upon Borrower within such ten-day period a notice stating that (i) Lender demands that Borrower assume and assign the Lease to Lender pursuant to Section 365 of the Bankruptcy Code and (ii) Lender covenants to cure or provide adequate assurance of future performance under the Lease. If Lender serves upon Borrower the notice described in the preceding sentence, Borrower shall not seek to reject the Lease and shall comply with the demand provided for in clause (i) of the preceding sentence within thirty (30) days after the notice shall have been given, subject to the

11

performance by Lender of the covenant provided for in clause (ii) of the preceding sentence.

Section 8.10    SUBROGATION.  If any or all of the proceeds of the Note have been used to extinguish, extend or renew any indebtedness heretofore existing against the Property, then, to the extent of the funds so used, Lender shall be subrogated to all of the rights, claims, liens, titles, and interests existing against the Property heretofore held by, or in favor of, the holder of such indebtedness and such former rights, claims, liens, titles, and interests, if any, are not waived but rather are continued in full force and effect in favor of Lender and are merged with the lien and security interest created herein as cumulative security for the repayment of the Debt, the performance and discharge of the Other Obligations.

## Article 9 - ENVIRONMENTAL HAZARDS

Section 9.1    ENVIRONMENTAL COVENANTS.  Borrower has provided representations, warranties and covenants regarding environmental matters set forth in the Environmental Indemnity and Borrower shall comply with the aforesaid covenants regarding environmental matters.

## Article 10 - WAIVERS

Section 10.1    MARSHALLING AND OTHER MATTERS.  Borrower hereby waives, to the extent permitted by law, the benefit of all Legal Requirements now or hereafter in force regarding appraisement, valuation, stay, extension, reinstatement and redemption and all rights of marshalling in the event of any sale hereunder of the Property or any part thereof or any interest therein.  Further, Borrower hereby expressly waives any and all rights of redemption from sale under any order or decree of foreclosure of this Security Instrument on behalf of Borrower, and on behalf of each and every Person acquiring any interest in or title to the Property subsequent to the date of this Security Instrument and on behalf of all Persons to the extent permitted by Legal Requirements.

Section 10.2    WAIVER OF NOTICE.  Borrower shall not be entitled to any notices of any nature whatsoever from Lender except with respect to matters for which this Security Instrument or the Loan Agreement specifically and expressly provides for the giving of notice by Lender to Borrower and except with respect to matters for which Borrower is not permitted by Legal Requirements to waive its right to receive notice, and Borrower hereby expressly waives the right to receive any notice from Lender with respect to any matter for which this Security Instrument does not specifically and expressly provide for the giving of notice by Lender to Borrower.

Section 10.3    INTENTIONALLY OMITTED.

Section 10.4    SOLE DISCRETION OF LENDER.  Whenever pursuant to this Security Instrument, Lender exercises any right given to it to approve or disapprove, or any arrangement or term is to be satisfactory to Lender, the decision of Lender to approve or disapprove or to decide whether arrangements or terms are satisfactory or not satisfactory shall (except as is otherwise specifically herein provided) be in the sole (but reasonable) discretion of Lender and shall be final and conclusive.

151404691v4

**Section 10.5** WAIVER OF TRIAL BY JURY. **BORROWER AND LENDER EACH HEREBY AGREES NOT TO ELECT A TRIAL BY JURY OF ANY ISSUE TRIABLE OF RIGHT BY JURY, AND WAIVES ANY RIGHT TO TRIAL BY JURY FULLY TO THE EXTENT THAT ANY SUCH RIGHT SHALL NOW OR HEREAFTER EXIST WITH REGARD TO THE LOAN DOCUMENTS, OR ANY CLAIM, COUNTERCLAIM OR OTHER ACTION ARISING IN CONNECTION THEREWITH. THIS WAIVER OF RIGHT TO TRIAL BY JURY IS GIVEN KNOWINGLY AND VOLUNTARILY BY BORROWER AND LENDER, AND IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE. EACH OF LENDER AND BORROWER IS HEREBY AUTHORIZED TO FILE A COPY OF THIS PARAGRAPH IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER BY BORROWER AND LENDER.**

**Section 10.6** WAIVER OF FORECLOSURE DEFENSE. Borrower hereby waives any defense Borrower might assert or have by reason of Lender's failure to make any tenant or lessee of the Property a party defendant in any foreclosure proceeding or action instituted by Lender.

### Article 11 - INTENTIONALLY OMITTED

### Article 12 - NOTICES

**Section 12.1** NOTICES. All notices or other written communications hereunder shall be delivered in accordance with the applicable terms and conditions of the Loan Agreement.

### Article 13 - APPLICABLE LAW

**Section 13.1** GOVERNING LAW. The governing law and related provisions contained in Section 17.2 of the Loan Agreement are hereby incorporated by reference as if fully set forth herein.

**Section 13.2** PROVISIONS SUBJECT TO APPLICABLE LAW. All rights, powers and remedies provided in this Security Instrument may be exercised only to the extent that the exercise thereof does not violate any applicable provisions of law and are intended to be limited to the extent necessary so that they will not render this Security Instrument invalid, unenforceable or not entitled to be recorded, registered or filed under the provisions of any applicable law. If any term of this Security Instrument or any application thereof shall be invalid or unenforceable, the remainder of this Security Instrument and any other application of the term shall not be affected thereby.

### Article 14 - DEFINITIONS

**Section 14.1** GENERAL DEFINITIONS. Unless the context clearly indicates a contrary intent or unless otherwise specifically provided herein, words used in this Security Instrument may be used interchangeably in singular or plural form and the word "Borrower" shall mean "each Borrower and any subsequent owner or owners of the Property or any part thereof or any interest therein," the word "Lender" shall mean "Lender and any of Lender's successors and assigns," the word "Note" shall mean "the Note and any other evidence of indebtedness secured

13

by this Security Instrument," the word "Property" shall include any portion of the Property and any interest therein, and the phrases "attorneys' fees", "legal fees" and "counsel fees" shall include any and all attorneys', paralegal and law clerk fees and disbursements, including, but not limited to, fees and disbursements at the pre-trial, trial and appellate levels incurred or paid by Lender in protecting its interest in the Property, the Leases and the Rents and enforcing its rights hereunder.

### Article 15 - MISCELLANEOUS PROVISIONS

**Section 15.1** NO ORAL CHANGE. This Security Instrument, and any provisions hereof, may not be modified, amended, waived, extended, changed, discharged or terminated orally or by any act or failure to act on the part of Borrower or Lender, but only by an agreement in writing signed by the party against whom enforcement of any modification, amendment, waiver, extension, change, discharge or termination is sought.

**Section 15.2** SUCCESSORS AND ASSIGNS. This Security Instrument shall be binding upon and inure to the benefit of Borrower and Lender and their respective successors and assigns forever.

**Section 15.3** INAPPLICABLE PROVISIONS. If any term, covenant or condition of the Loan Agreement, the Note or this Security Instrument is held to be invalid, illegal or unenforceable in any respect, the Loan Agreement, the Note and this Security Instrument shall be construed without such provision.

**Section 15.4** HEADINGS, ETC. The headings and captions of various Sections of this Security Instrument are for convenience of reference only and are not to be construed as defining or limiting, in any way, the scope or intent of the provisions hereof.

**Section 15.5** NUMBER AND GENDER. Whenever the context may require, any pronouns used herein shall include the corresponding masculine, feminine or neuter forms, and the singular form of nouns and pronouns shall include the plural and vice versa.

**Section 15.6** ENTIRE AGREEMENT. This Security Instrument and the other Loan Documents contain the entire agreement of the parties hereto and thereto in respect of the transactions contemplated hereby and thereby, and all prior agreements among or between such parties, whether oral or written, are superseded by the terms of this Security Instrument and the other Loan Documents.

**Section 15.7** LIMITATION ON LENDER'S RESPONSIBILITY. No provision of this Security Instrument shall operate to place any obligation or liability for the control, care, management or repair of the Property upon Lender, nor shall it operate to make Lender responsible or liable for any waste committed on the Property by the tenants or any other Person, or for any dangerous or defective condition of the Property, or for any negligence in the management, upkeep, repair or control of the Property resulting in loss or injury or death to any tenant, licensee, employee or stranger. Nothing herein contained shall be construed as constituting Lender a "mortgagee in possession."

151404691v4

**Section 15.8**  JOINT AND SEVERAL LIABILITY.  If Borrower consists of more than one Person, the obligations and liabilities of each such Person hereunder shall be joint and several.

**Article 16 - STATE-SPECIFIC PROVISIONS**

**Section 16.1**  PRINCIPLES OF CONSTRUCTION.  In the event of any inconsistencies between the terms and conditions of this Article 16 and the terms and conditions of this Security Instrument, the terms and conditions of this Article 16 shall control and be binding.

**Section 16.2**  SECTION 254 OF THE RPL.  In the event of any conflict, inconsistency or ambiguity between the provisions of the Loan Documents and the provisions of subsection 4 of Section 254 of the Real Property Law of New York, the provisions of the Loan Documents shall control.

**Section 16.3**  MODIFICATION OF LEASES AND SECTION 291-F OF THE RPL.  Borrower shall not enter into, modify or amend in any material respect, consent to the cancellation of or terminate any Lease, or guaranty of any Lease, whether now existing or hereafter entered into, without the prior written consent of Lender which consent may be granted or withheld in Lender's sole discretion (except as otherwise expressly set forth in the Loan Documents).  In addition to any other right or remedy contained herein or in any other Loan Document, Lender shall have all of the rights against lessees of the Property or any part thereof as are set forth in Section 291f of the Real Property Law of New York.

**Section 16.4**  TRUST FUND.  Pursuant to Section 13 of the Lien Law of New York, Borrower shall receive the advances secured hereby and shall hold the right to receive such advances as a trust fund to be applied first for the purpose of paying the cost of any improvement and shall apply such advances first to the payment of the cost of any improvement before using any part thereof for any other purpose.  Borrower shall comply strictly with Section 13 of the Lien Law of New York.

**Section 16.5**  COMMERCIAL PROPERTY.  Borrower represents and warrants that this Security Instrument does not encumber real property principally improved or to be improved by one or more structures containing in the aggregate not more than six (6) residential dwelling units having their own separate cooking facilities.

**Section 16.6**  TRANSFER TAX PROVISIONS.

(a)      Borrower covenants and agree that, in the event of a sale of the Property or other transfer of the Property ("**Transfer**"), it will duly complete, execute and deliver to Lender contemporaneously with the submission to the applicable taxing authority or recording officer, all forms and supporting documentation required by such taxing authority or recording officer to estimate and fix any and all applicable state and local real estate transfer taxes (collectively, "**Transfer Taxes**") by reason of such sale or other Transfer or recording of the deed evidencing such sale or other Transfer.

(b)      Borrower shall pay all Transfer Taxes that may hereafter become due and payable with respect to any Transfer (other than those due by reason of a Transfer after any Transfer by Borrower to Lender or its nominee by way of a deed-in-lieu of foreclosure or after a Transfer of

15

the Property in a foreclosure action or pursuant to a non-judicial foreclosure), and in default thereof Lender may pay the same and the amount of such payment shall be added to the Debt and, unless incurred in connection with a foreclosure of this Security Instrument, be secured by this Security Instrument.  The provisions of this Section shall survive any Transfer and the delivery of the deed in connection with any Transfer.

Section 16.7  MAXIMUM PRINCIPAL AMOUNT.    NOTWITHSTANDING ANY PROVISION SET FORTH HEREIN TO THE CONTRARY, THE MAXIMUM AMOUNT OF PRINCIPAL INDEBTEDNESS SECURED BY THIS SECURITY INSTRUMENT AT EXECUTION, OR WHICH UNDER ANY CONTINGENCY MAY BECOME SECURED HEREBY AT ANY TIME HEREAFTER, IS U.S. $25,000,000.00 PLUS ALL INTEREST PAYABLE UNDER THE NOTE AND ALL AMOUNTS EXPENDED BY LENDER AFTER DEFAULT BY BORROWER: (A) FOR THE PAYMENT OF TAXES, CHARGES OR ASSESSMENTS WHICH MAY BE IMPOSED BY LEGAL REQUIREMENTS UPON THE PROPERTY; (B) TO MAINTAIN THE INSURANCE REQUIRED UNDER THIS SECURITY INSTRUMENT; (C) FOR ANY EXPENSES INCURRED IN MAINTAINING THE PROPERTY AND UPHOLDING THE LIEN OF THIS SECURITY INSTRUMENT, INCLUDING, BUT NOT LIMITED TO, THE EXPENSE OF ANY LITIGATION TO PROSECUTE OR DEFEND THE RIGHTS AND LIEN CREATED BY THIS MORTGAGED, AND (D) FOR ANY AMOUNT, COST OR CHARGE TO WHICH LENDER BECOMES SUBROGATED, UPON PAYMENT, WHETHER UNDER RECOGNIZED PRINCIPLES OF LAW OR EQUITY, OR UNDER EXPRESS STATUTORY AUTHORITY, TOGETHER WITH INTEREST ON ALL OF THE FOREGOING AMOUNTS AT THE DEFAULT RATE (AS DEFINED IN THE NOTE).

Section 16.8  COVENANTS IN ADDITION TO RPL.  All covenants hereof shall be construed as affording to Lender rights in addition to and not exclusive of the rights conferred under the provisions of Sections 254, 271, 272 and 291-f of the Real Property Law of the State of New York or any other applicable laws.

Section 16.9  ASSIGNMENT OF MORTGAGE.  Notwithstanding anything herein to the contrary, upon any permitted prepayment or payment to Lender of the Obligations as provided for in the Note and the Loan Agreement and the performance by Borrower of all of the obligations imposed on Borrower in the Loan Documents, then Borrower shall be entitled to receive, at the option and request of Borrower, an assignment of this Security Instrument by Lender to a lender, in recordable form without recourse to, or any representation or warranty by, Lender, express or implied, without payment of any further sums to Lender (other than Lender's reasonable attorneys' fees relating thereto), but only if, in the case of any such assignment, such assignment can be accomplished without violating the provisions of any applicable law or administrative regulation including, without limitation, the Uniform Commercial Code.

Section 16.10 BORROWER HEREBY DECLARES AND ACKNOWLEDGES THAT IT HAS RECEIVED, WITHOUT CHARGE A TRUE COPY OF THIS SECURITY INSTRUMENT.

**[NO FURTHER TEXT ON THIS PAGE]**



**IN WITNESS WHEREOF**, this Security Instrument has been executed by the undersigned as of the day and year first above written.

**BORROWER:**

**AEVRI SALINA MEADOWS LLC**
a Delaware limited liability company

By:
Name:  Moshe Rothman
Title:   President

**ACKNOWLEDGEMENT**

STATE OF ~~NEW YORK~~ NJ                          )
                                                 )     ss:
COUNTY OF ~~ONONDAGA~~ Monmouth                  )

On this 10th day of February in the year 2022 before me, Patricia J. Digiovan a Notary Public in and for said state, personally appeared Moshe Rothman as President of AEVRI SALINA MEADOWS LLC, a Delaware limited liability company, known to me to be the person who executed the within instrument on behalf of said limited liability company and acknowledged to me that he executed the same for the purposes therein stated.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my official seal in the County and State aforesaid, the day and year first above written.

(SEAL)

Notary Public

My Commission Expires: _____

PATRICIA J. DIGIOVANNI
Notary Public, State of New Jersey
My Commission Expires
August 11, 2026

## EXHIBIT A

## LEGAL DESCRIPTION

ALL that certain lot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Town of Salina, in the County of Onondaga, State of NY:

TRACT 1:

LOT 6

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND, BELONGING, LYING AND BEING IN THE TOWN OF SALINA, COUNTY OF ONONDAGA AND STATE OF NEW YORK, AND BEING DESIGNATED AS LOT 6 AS SHOWN ON THAT CERTAIN PLAT ENTITLED "FINAL PLAN SALINA MEADOWS OFFICE PARK, AMENDMENT NO. 3, PART OF MILITARY LOTS 2, 3, 17 AND 18, TOWN OF SALINA, ONONDAGA COUNTY, NEW YORK" PREPARED BY ALFRED N. IANUZI, JR. DATED SEPTEMBER 22, 1989, A COPY OF WHICH PLAT IS FILED ON THE CLERK'S OFFICE AS MAP 7196.

BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT A CAPPED IRON ROD SET ON THE SOUTHERLY RIGHT-OF-WAY OF SALINA MEADOWS PARKWAY, THE NORTHEAST CORNER OF LOT 6 AND THE NORTHWEST CORNER OF LOT 10, SAID POINT BEING THE POINT OF BEGINNING.

RUNNING THENCE LEAVING SAID SOUTHERLY RIGHT-OF-WAY SOUTH 06° 54' 25" WEST ALONG THE EASTERLY BOUNDARY LINE OF LOT 6 AND THE WESTERLY BOUNDARY LINE OF LOT 10 A DISTANCE 481.53 FEET TO A CAPPED IRON ROD SET;

THENCE NORTH 83° 05' 35" WEST ALONG THE SOUTHERLY BOUNDARY LINE OF LOT 6 AND THE NORTHERLY BOUNDARY LINE OF LOT 10 A DISTANCE OF 282.00 FEET TO A MAG NAIL;

THENCE NORTH 38° 05' 35" WEST ALONG THE WESTERLY BOUNDARY LINE OF LOT 6 AND THE EASTERLY BOUNDARY LINE OF LOT 7 A DISTANCE 281.48 FEET TO A CAPPED IRON ROD SET ON THE SOUTHERLY RIGHT-OF-WAY OF SALINA MEADOWS PARKWAY;

THENCE NORTH 45° 24' 54" EAST ALONG SAID SOUTHERLY RIGHT-OF-WAY A DISTANCE 202.21 FEET TO A MAG NAIL AT A POINT OF CURVATURE.

THENCE ALONG A CURVE TO THE RIGHT SAID CURVE HAVING A RADIUS OF 352.96 FEET AND AN ARC LENGTH OF 396.82 FEET TO THE POINT OF BEGINNING.

LOT 10

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND, BELONGING, LYING AND BEING IN THE TOWN OF SALINA, COUNTY OF ONONDAGA AND STATE OF NEW YORK AND BEING DESIGNATED AS LOT 10 AS SHOWN ON THAT CERTAIN PLAT ENTITLED "FINAL PLAN SALINA MEADOWS OFFICE PARK, AMENDMENT NO. 3, PART OF MILITARY LOT 2, 3, 17 AND 18, TOWN OF SALINA, ONONDAGA COUNTY, NEW YORK" PREPARED BY ALFRED N. IANUZI, JR. DATED SEPTEMBER 22, 1989, A COPY OF WHICH PLAT IS FILED IN THE CLERK'S OFFICE AS MAP 7196.

BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT A CAPPED IRON ROD SET ON THE SOUTHERLY RIGHT-OF-WAY OF SALINA MEADOWS PARKWAY, THE NORTHEAST CORNER OF LOT 6 AND THE NORTHWEST CORNER OF LOT 10, SAID POINT BEING THE POINT OF BEGINNING.

RUNNING THENCE ALONG A CURVE TO THE RIGHT TO A POINT OF TANGENCY, SAID CURVE HAVING A RADIUS OF 352.96 FEET AND AN ARC LENGTH OF 36.63 FEET TO A CAPPED IRON ROD SET;

THENCE SOUTH 64° 13' 24" EAST CONTINUING ALONG THE SOUTHERLY RIGHT-OF-WAY OF SALINA MEADOWS A DISTANCE OF 170.00 FEET TO A CAPPED IRON ROD SET AT A POINT OF CURVATURE;

THENCE ALONG A CURVE TO THE LEFT TO A CAPPED IRON ROD SET AT A POINT OF REVERSE CURVE, SAID CURVE HAVING A RADIUS OF 600.00 FEET AND AN ARC LENGTH OF 151.63 FEET;

THENCE ALONG A CURVE TO THE RIGHT TO A CAPPED IRON ROD SET AT A POINT OF TANGENCY ON THE WESTERLY RIGHT-OF-WAY LINE OF PLAINFIELD ROAD, SAID CURVE HAVING A RADIUS OF 25.00 FEET AND AN ARC LENGTH OF 37.07 FEET TO A CAPPED IRON ROD SET;

THENCE SOUTH 06° 14' 53" WEST ALONG SAID WESTERLY RIGHT-OF-WAY LINE A DISTANCE OF 211.20 FEET TO A CAPPED IRON ROD SET AT A POINT OF CURVATURE;

THENCE ALONG A CURVE TO THE RIGHT TO A CAPPED IRON ROD SET AT A POINT OF TANGENCY, SAID CURVE HAVING A RADIUS OF 540.37 FEET AND AN ARC LENGTH OF 415.87 FEET;

THENCE SOUTH 50° 20' 35" WEST A DISTANCE OF 173.84 FEET TO A CAPPED IRON ROD SET AT A POINT OF CURVATURE;

THENCE ALONG A CURVE TO THE RIGHT TO A CAPPED IRON ROD SET AT A POINT OF TANGENCY, SAID CURVE HAVING A RADIUS OF 320.00 FEET AND AN ARC LENGTH OF 260.06 FEET;

THENCE NORTH NORTH 83° 05' 35" WEST A DISTANCE OF 164.88 FEET TO A CAPPED IRON ROD SET;

THENCE NORTH 06° 54' 25" EAST ALONG THE EASTERLY BOUNDARY LINE OF LOT 7 AND THE WESTERLY BOUNDARY LINE OF LOT 10 A DISTANCE OF 453.76 FEET TO A DRILL HOLE SET;

THENCE SOUTH 83° 05' 35" EAST ALONG THE NORTHERLY BOUNDARY LINE OF LOT 10 A DISTANCE OF 295.00 FEET TO A CAPPED IRON ROD SET;

THENCE NORTH 06° 54' 25" EAST ALONG THE EASTERLY BOUNDARY LINE OF LOT 6 AND THE WESTERLY BOUNDARY LINE OF LOT 10 A DISTANCE OF 481.53 FEET TO A CAPPED IRON ROD SET AT THE POINT OF BEGINNING.

Being the same premises conveyed to Salina Park, LLC by deed made by SCCP SALINA I, LIMITED PARTNERSHIP, a Delaware limited partnership dated 06/06/2016, recorded 06/14/2016 in the Office of the County Clerk, Onondaga County in Book 5376 page 591.

TRACT 2:

LOT 3:

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND, LYING AND BEING IN THE TOWN OF SALINA, COUNTY OF ONONDAGA AND STATE OF NEW YORK CONTAINING 4.620 ACRES AND BEING DESIGNATED AS LOT 3 AS SHOWN ON THAT CERTAIN PLAT ENTITLED" FINAL PLAN SALINA MEADOWS OFFICE PARK AMENDMENT NO. 3 PART OF MILITARY LOTS 2,3, 17 AND 18 TOWN OF SALINA, ONONDAGA COUNTY, NEW YORK" PREPARED BY ALFRED N. IANUZI, JR. DATED SEPTEMBER 22, 1989, A COPY OF WHICH PLAT IS FILED IN THE CLERK'S OFFICE AS MAP 7196 BOUNDED AND DESCRIBED AS FOLLOWS;

BEGINNING AT A POINT ON THE NORTHERLY SIDE OF SALINA MEADOWS PARKWAY, WHICH POINT IS THE DIVIDING LINE BETWEEN LOTS 3 AND 13 AS SHOWN ON SAID MAP;

RUNNING THENCE ALONG SAID DIVIDING LINE, NORTH 42° 02' 10" WEST, 338.15 FEET TO LOT 8 AS SHOWN ON SAID MAP;

THENCE ALONG SAID LAST MENTIONED LOT, NORTH 45° 24' 54" EAST, 407.00 FEET TO LAND NOW OR FORMERLY OF DONALD W. KNIGHT;

THENCE ALONG SAID LAST MENTIONED LAND, SOUTH 82° 25' 16" EAST, 285.00 FEET TO LOT 1 ON SAID MAP;

THENCE ALONG SAID LAST MENTIONED LOT, SOUTH 7° 34' 44" WEST, 439.29 FEET TO THE NORTHERLY SIDE OF SALINA MEADOWS PARKWAY;

THENCE WESTERLY ALONG THE NORTHERLY SIDE OF SALINA MEADOWS PARKWAY, ALONG THE ARC OF A CURVE, BEARING TO THE LEFT, HAVING A RADIUS OF 412.96 FEET, A DISTANCE OF 301.66 FEET TO THE POINT OR PLACE OF BEGINNING.

BEING THE SAME PREMISES CONVEYED TO ROWE PROPERTIES-SALINA MEADOWS IV LIMITED PARTNERSHIP BY DEED FROM ROWE DEVELOPMENT COMPANY, A VIRGINIA CORPORATION, TO ROWE PROPERTIES-SALINA MEADOWS IV LIMITED PARTNERSHIP, A VIRGINIA LIMITED PARTNERSHIP, DATED JULY 2, 1987 AND RECORDED IN ONONDAGA COUNTY CLERK'S OFFICE JULY 27, 1987 ON BOOK 3371 OF DEEDS AT PAGE 165.

LOT 7:

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND, LYING AND BEING IN THE TOWN OF SALINA, COUNTY OF ONONDAGA AND STATE OF NEW YORK CONTAINING 4.161 ACRES AND BEING DESIGNATED AS LOT 7 AS SHOWN ON THAT CERTAIN PLAT ENTITLED "FINAL PLAN SALINA MEADOWS OFFICE PARK AMENDMENT NO. 3 PART OF MILITARY LOTS 2, 3, 17 AND 18 TOWN OF SALINA, ONONDAGA COUNTY, NEW YORK" PREPARED BY ALFRED N. IANUZI, JR. DATED SEPTEMBER 22, 1989, A COPY OF WHICH PLAT IS FILED IN THE CLERK'S OFFICE AS MAP 7196, BOUNDED AND DESCRIBED AS FOLLOWS;

BEGINNING AT A POINT ON THE SOUTHEASTERLY SIDE OF SALINA MEADOWS PARKWAY, WHICH POINT IS THE DIVIDING LINE BETWEEN LOTS 7 AND 6 AS SHOWN ON SAID MAP;

RUNNING THENCE ALONG SAID DIVIDING LINE SOUTH 38° 05' 35" EAST, 281.48 FEET TO LOT 10 AS SHOWN ON SAID FILED MAP;

THENCE ALONG THE DIVIDING LINE BETWEEN LOTS 7 AND 10, NORTH 83° 05' 35" WEST, 13.00 FEET TO A POINT;

THENCE STILL ALONG THE DIVIDING LINE BETWEEN LOTS 7 AND 10, SOUTH 6° 54' 25" WEST, 453.76 FEET TO THE NORTHERLY SIDE OF PLAINFIELD ROAD;

THENCE ALONG THE NORTHERLY AND NORTHEASTERLY SIDES OF PLAINFIELD ROAD THE FOLLOWING 4 COURSES AND DISTANCES:

1. NORTHWESTERLY, ALONG THE ARC OF A CURVE, BEARING TO THE RIGHT, HAVING A RADIUS OF 203.77 FEET, A DISTANCE OF 153.83 FEET;

2. NORTHWESTERLY, ALONG THE ARC OF A CURVE, BEARING TO THE LEFT, HAVING A RADIUS OF 801.50 FEET, A DISTANCE OF 208.36 FEET;

3. NORTHWESTERLY, ALONG THE ARC OF A CURVE, BEARING TO THE RIGHT, HAVING A RADIUS OF 271.60 FEET, A DISTANCE OF 221.81 FEET;

4. NORTH 5° 58' 33" WEST, 79.40 FEET TO THE EXTREME SOUTHERLY END OF THE ARC OF A CURVE CONNECTING THE EASTERLY SIDE OF PLAINFIELD ROAD WITH THE SOUTHERLY SIDE OF SALINA MEADOWS PARKWAY;

THENCE NORTHEASTERLY, ALONG THE ARC OF SAID CURVE, BEARING TO THE RIGHT, HAVING A RADIUS OF 25.00 FEET, A DISTANCE OF 36.60 FEET TO THE SOUTHERLY SIDE OF SALINA MEADOWS PARKWAY;

THENCE NORTHEASTERLY ALONG THE SOUTHEASTERLY SIDE OF SALINA MEADOWS PARKWAY, ALONG THE ARC OF A CURVE, BEARING TO THE LEFT, HAVING A RADIUS OF 489.54 FEET, A DISTANCE OF 277.45 feet.

THENCE NORTHEASTERLY ALONG THE SOUTHEASTERLY SIDE OF SALINA MEADOWS PARKWAY, NORTH 45 DEGREES 24 MINUTES 54 SECONDS EAST, 34.36 FEET TO THE POINT OR PLACE OF BEGINNING.

Address Reference: 220 Salina Meadows Parkway and 301 Plainfield Road (as to Tract 1) and 231 Salina Meadows Parkway and 200 Salina (as to Tract 2), Syracuse, NY 13212 (For Information Only)

Being the same premises conveyed to Salina Park, LLC by deed made by SCCP SALINA II, LIMITED PARTNERSHIP, a Delaware limited partnership dated 06/06/2016 recorded 06/14/2016 in the Office of the County Clerk, Onondaga County in Book 5376 page 604.

For Information Only:

Said Premises being known as 200 Salina Meadows Pkwy, Syracuse, NY.

Section: 50 Block: 1 Lot: 1.7