# EXHIBIT 14

# BOOK LAW GROUP LLC
## 2 PERLMAN DRIVE, SUITE 201
## SPRING VALLEY, NY 10977
## MBOOK@BOOKLAWGROUP.COM

February 16, 2022

**BANK OF MONTREAL**
c/o BMO Capital Markets Corp.
151 West 42nd Street
New York, NY 10036
Attention: Michael S. Birajiclian

Re:     Loan (the "**Loan**") from Bank of Montreal, a Canadian chartered bank operating out of its
Chicago branch ("**Lender**") to Aevri Salina Meadows LLC, a Delaware limited liability
company ("**Borrower**") secured by first mortgage and security agreement encumbering
properties located at (I) 200 Salina Meadows Parkway (II), 220 Salina Meadows Parkway,
(III) 231 Salina Meadows Parkway, and (IV) 301 Plainfield Road, all in Syracuse, New
York (collectively, the "**Property**").

Ladies and Gentlemen:

We have acted as counsel to Borrower, Aevri Salina Meadows SPE LLC, a Delaware
limited liability company (the "**Sole Member**") and Moshe Rothman ("**Guarantor**") in
connection with that certain $25,000,000.00 mortgage loan (the "**Loan**") from Citi Real Estate
Funding Inc., a New York corporation ("**Lender**") evidenced by the documents described below.

For purposes of this opinion we have, among other things, reviewed the following documents each
dated February 16, 2022 (the "**Execution Date**"):

(i)     Loan Agreement (the "**Agreement**") made by Borrower and Lender;

(ii)    Promissory Note (the "**Note**") made by Borrower to the order of Lender in the
amount of $25,000,000.00;

(iii)   Mortgage and Security Agreement (the "**Mortgage**");

(iv)    Assignment of Leases and Rents (the "**Assignment of Leases**") from the Borrower
for the benefit of the Lender as security for the Note and covering the real property
described therein (the "**Real Property**");

(v)     Environmental Indemnity Agreement (the "**Environmental Indemnity**") executed
by Borrower and Guarantor in favor of Lender;

(vi)    UCC Financing Statement (the "**Financing Statement**") from Borrower, as debtor,
to Lender, as secured party;

(vii)    Limited Recourse Guaranty (the "**Guaranty**") executed by Guarantor in favor of Lender;

(viii)    Conditional Assignment of Management Agreement (the "**Assignment of Management Agreement**") executed by Borrower in favor of Lender and consented and agreed to by Smartcore Consulting, LLC, a New York limited liability company doing business as: Mike Barney Management ("**Manager**");

(ix)    Cash Management Agreement (the "**Cash Management Agreement**") by and among Borrower, Lender, and Cash Management Bank (as defined therein);

(x)    Deposit Account Control Agreement (the "**Clearing Account Agreement**") by and among the Borrower, Lender, and Bank (as defined therein);

(xi)    Borrower's Certification (the "**Borrower's Certification**") by and between Borrower and Lender; and

(xii)    Disbursement and Receipt Certification (the "**Disbursement Certification**") by and between Borrower and Lender.

For purposes of this opinion, the Agreement, Note, Mortgage, Assignment of Leases, Environmental Indemnity, Guaranty, Financing Statement, Assignment of Management Agreement, Cash Management Agreement, Clearing Account Agreement, Borrower's Certification, and Disbursement Certification are collectively referred to as the "**Loan Documents**."

Further, in connection with rendering the opinions set forth in this opinion letter, we have reviewed originals or copies of the following authorization documents:

(i)  the Borrower's organizational documents as follows:

    a.    Limited Liability Company Agreement of Borrower dated February 16, 2022.

    b.    Certificate of Formation of Borrower filed with the State of Delaware Secretary of State on November 29, 2021 and Good Standing Certificate of Borrower from the State of Delaware Secretary of State dated December 21, 2021 ("**Borrower's Delaware State Certificates**").

    c.    Authorization to Transact Business in the State of New York, dated December 1, 2021 and Good Standing Certificate of Borrower from the State of New York Secretary of State dated December 21, 2021 ("**Borrower's NY State Certificates**").

(ii)  the Borrower's authorizing documents with respect to the Loan as follows:

Action by Unanimous Written Consent dated February 16, 2022, by the Members of the Sole Member authorizing Borrower to purchase the Property, enter into the Loan with Lender and appointing authorized signatories.

(iii) the Sole Member's organizational documents as follows:

    a.  Limited Liability Company Agreement of Sole Member dated February 16, 2022.

    b.  Certificate of Formation of Sole Member filed with the State of Delaware Secretary of State on December 14, 2021 and Good Standing Certificate of Sole Member from the State of Delaware Secretary of State dated December 27, 2021 ("**Sole Member's Delaware State Certificates**").

(iv) a certificate to counsel from the Borrower, dated of even date herewith (collectively, the "**Certificate to Counsel**").

(v) a certificate to counsel from Moshe Rothman dated of even date herewith (the "**Guarantor Certificate to Counsel**").

We have also reviewed such other documents, instruments and certificates as we have deemed relevant or necessary to form the basis for the opinions set forth in this opinion letter.

We have relied upon, and assumed the accuracy of, the representations and warranties contained in the Loan Documents, in the Certificate to Counsel and in the Guarantor Certificate to Counsel supplied to us by the Borrower, the Sole Member and the Guarantor (collectively, the "**Borrower Entities**") with respect to the factual matters set forth therein. However, no opinion is rendered hereunder as to the accuracy of the representations and warranties contained in the Loan Documents, in the Certificate to Counsel and in the Guarantor Certificate to Counsel. We do not know of anything to the contrary to that contained in the Certificate to Counsel or Guarantor Certificate to Counsel.

We have, with your consent, assumed that certificates of public officials dated earlier than the date of this opinion letter remain accurate from such earlier dates through and including the date of this opinion letter.

In rendering the opinions set forth herein, we have relied, without investigation, on each of the following assumptions: (a) the legal capacity of each natural person to take all actions required of each such person in connection with the Loan; (b) the legal existence of each party to the Loan other than the Borrower Entities; (c) the power of each party to the Loan, other than the Borrower Entities and the Guarantor, to execute, deliver and perform all Loan Documents executed and delivered by such party and to do each other act done or to be done by such party; (d) the authorization, execution and delivery by each party, other than the Borrower Entities and the Guarantor, of each Loan Document executed and delivered or to be executed and delivered by such party; (e) the validity, binding effect and enforceability as to each party, other than the Borrower Entities and the Guarantor, of each Loan Document executed and delivered by such party or to be executed and delivered and of each other act done or to be done by such party; (f) there have been no undisclosed modifications of any provision of any document reviewed by us in connection with the rendering of this opinion letter and no undisclosed prior waiver of any right or remedy contained in any of the Loan Documents; (g) the genuineness of each signature, the

completeness of each document submitted to us, the authenticity of each document reviewed by us as an original, the conformity to the original of each document reviewed by us as a copy and the authenticity of the original of each document received by us as a copy and we have no reason to believe that such signatures and documents are not genuine, authentic and in conformity with the originals of such documents; (h) the truthfulness of each statement as to all factual matters otherwise not known to us to be untruthful or unreliable contained in any document encompassed within the diligence review undertaken by us; (i) each certificate or other document issued by a public authority is accurate, complete and authentic as of the date of the opinion letter, and all official public records (including their proper indexing and filing) are accurate and complete; (j) each recipient of the opinion letter has acted in good faith, without notice of any defense against enforcement of rights created by, or adverse claim to any property or security interest transferred or created as part of, the Loan, and has complied with all laws applicable to it that affect the Loan; (k) the Loan and the conduct of the parties to the Loan comply with any requirement of good faith, fair dealing and conscionability; (l) routine procedural matters such as service of process or qualification to do business in the relevant jurisdiction(s) will be satisfied by the parties seeking to enforce the Loan Documents; (m) agreements (other than the Loan Documents as to which opinions are being given) and judgments, decrees and orders reviewed in connection with rendering the opinions will be enforced as written; (n) no discretionary action (including a decision not to act) that is permitted in the Loan Documents will be taken by or on behalf of the Borrower Entities or the Guarantor in the future that might result in a violation of law or constitute a breach of or default under any other agreements or under any court order applicable to any of the Borrower Entities or Guarantor; (o) there are no agreements or understandings among the parties, written or oral, and there is no usage of trade or course of prior dealing among the parties that would, in either case, define, supplement, modify or qualify the terms of the Loan Documents or the rights of the parties thereunder; (p) the payment of all required documentary stamp taxes, intangible taxes and other taxes and fees imposed upon the execution, filing or recording of documents; and (q) with respect to the Loan and the Loan Documents, including the inducement of the parties to enter into and perform their respective obligations thereunder, there has been no mutual mistake of fact or undue influence and there exists no fraud or duress.

When used in this opinion letter, the phrases "to our knowledge," "known to us" or the like means the conscious awareness of the lawyers in the "primary lawyer group" of factual matters such lawyers recognize as being relevant to the opinion or confirmation so qualified. Such phrases do not imply that we have undertaken any independent investigation within our firm, with the Borrower Entities and/or the Guarantor or with any third party to determine the existence or absence of any facts or circumstances, and no inference should be drawn merely from our past or current representation of the Borrower Entities and/or the Guarantor. Where any opinion or confirmation is qualified by the phrase "to our knowledge," "known to us" or the like, it means that the lawyers in the "primary lawyer group" are without any actual knowledge or conscious awareness that the opinion or confirmation is untrue in any respect material to the opinion or confirmation. For purposes of this opinion letter, "primary lawyer group" means: (i) the lawyer who signs his or her name or the name of the firm to this opinion letter, (ii) the lawyers currently in the firm who are actively involved in preparing or negotiating this opinion letter, and (iii) the lawyers currently in the firm who are actively involved in negotiating or documenting the Loan or

the Loan Documents.

Based upon and subject to the foregoing, and subject to the assumptions, limitations and qualifications contained herein, we are of the opinion that:

1. Borrower is a limited liability company, organized and validly existing under Delaware law, and based upon Borrower's Delaware State Certificates, Borrower is in good standing under Delaware law and its limited liability company status is active.

2. Borrower has all requisite limited liability company power to own and operate the Property, to conduct its business and to execute and deliver the Loan Documents to which it is a party and to perform its obligations thereunder.

3. Borrower has authorized the execution, delivery and performance of the Loan Documents to which Borrower is a party by all necessary limited liability company action.

4. Based upon the Borrower's NY State Certificates, Borrower is duly qualified as a foreign limited liability company authorized to do business and is in good standing in the State of New York.

5. Each of the Loan Documents to which the Borrower is a party has been duly executed and delivered by the Borrower.

6. Each of the Loan Documents to which Borrower is a party is a legal, valid and binding obligation of the Borrower, enforceable against Borrower in accordance with its respective terms.

7. The execution, delivery and performance of the Loan Documents by the individual signing on behalf of Borrower in his capacity as the President of Borrower has been duly authorized by all necessary limited liability company actions of Borrower.

8. Sole Member is a limited liability company, organized and validly existing under Delaware law, and based upon Sole Member's Delaware State Certificates, Sole Member is in good standing under Delaware law and its limited liability company status is active.

9. Sole Member has all requisite limited liability company power to own and operate the Property, to conduct its business and to execute and deliver the Loan Documents to which it is a party and to perform its obligations thereunder.

10. Sole Member has authorized the execution, delivery and performance of the Loan Documents to which Sole Member is a party by all necessary limited

liability company action.

11. Each of the Loan Documents to which Guarantor is a party has been duly executed and delivered by the Guarantor.

12. Each of the Loan Documents to which Guarantor is a party is a legal, valid and binding obligation of Guarantor, enforceable against Guarantor in accordance with its respective terms.

13. The execution and delivery by the Borrower and the Guarantor of the Loan Documents and the performance by the Borrower and the Guarantor of their respective obligations under the Loan Documents to which each is a party do not:

   (a)    violate the Borrower's organizational documents;

   (b)    constitute a breach of or a default under, or result in the creation of a security interest or a lien on the assets of the Borrower or Guarantor under any of the Borrower's or the Guarantor's "material agreements" that are known to us;

   (c)    violate any judgment, decree or order of any court or administrative tribunal applicable to the Borrower or Guarantor that is known to us; or

   (d)    violate any of the Applicable Laws.

14. No consent, approval, authorization or other action by, or filing or registration with, any governmental authority of the United States or the State of Delaware is required by or on behalf of the Borrower or Guarantor to execute and deliver the Loan Documents and to close the Loan contemplated by the Loan Documents other than those consents, approvals, authorizations, actions, filings and registrations as to which the requisite consents, approvals or authorizations have been obtained, the requisite actions have been taken and the requisite filings and registrations have been accomplished.

15. To our knowledge, there is no action, outstanding judgment, suit, proceeding, arbitration, mediation or governmental investigation, at law or in equity, pending or threatened against or affecting Borrower, Guarantor or the Real Property which if determined adversely to Borrower or Guarantor would (i) have an adverse effect upon the priority or enforceability of Lender's rights under the Loan Documents, (ii) materially and adversely affect the ability of Borrower or Guarantor to perform its or their obligations under the Loan Documents, or (iii) materially and adversely affect Borrower or Guarantor.

16. The Mortgage is in proper form for the creation of a lien on Borrower's right,

title and interest in the Real Property. The Mortgage is in proper form for recording in the real property records in the Office of the Clerk of Onondaga County, New York and upon such recordation, the Mortgage will be effective to create a valid mortgage lien on the Real Property.

17. The Mortgage is effective to create in favor of the Lender a security interest in all of Borrower's right, title and interest in the UCC Collateral and Fixtures described therein.

18. Upon filing in the real property records in the Office of the Clerk of Onondaga County, New York, the Mortgage will be effective as a fixture filing and Lender's security interest in the Fixtures will be perfected without the need for filing a UCC Financing Statement.

19. The Assignment of Leases is in recordable form and is fully enforceable under the laws of the State of New York and creates a valid and perfected present, active assignment of and lien on Borrower's interest in the leases and the rents thereunder.

20. The Financing Statement, when filed with the Secretary of State of Delaware, shall perfect a security interest in the UCC Collateral described therein, assuming that (i) the Financing Statement has been properly filed, and accepted for filing, (ii) the filing fees in connection with such filing have been paid, (iii) the Borrower has rights in the collateral described therein, and (iv) the Financing Statement gives the correct names and mailing addresses of the Borrower and the Lender. In such event, the Lender will have a perfected security interest in the collateral described therein to the extent that a security interest may be perfected by the filing of a financing statement in Delaware under Article 9 of the Delaware Uniform Commercial Code. In addition, we call to your attention to the following: (a) the continued effectiveness of certain financing statements filed under the Uniform Commercial Code as adopted in the State of Delaware (the **"Delaware UCC"**) is dependent on the filing of a properly completed continuation statement prior to the fifth anniversary of the date of filing of the financing statement and thereafter prior to each additional fifth anniversary of the filing of the initial financing statement; and (b) the continued effectiveness of the financing statements are dependent on perfecting the security interest in accordance with the laws of the State of New York and such other jurisdiction, if applicable, and the perfection or non-perfection of the security interest therein may be governed by the law of another jurisdiction. For purposes of this opinion, we assume that the Fixtures constitute "fixtures" as defined in the Delaware UCC as of the date of this opinion letter. No opinion is rendered hereunder as to whether the Fixtures actually constitute "fixtures" under Delaware law. We caution you that, to the extent that the goods described in the UCC or the Mortgage are not "fixtures" under Delaware law, it may be necessary to file a financing statement under the UCC against the Borrower as

debtor in the appropriate jurisdiction.

21. No recording, filing, stamp, transfer, privilege, intangibles or other tax must be paid in connection with the execution, delivery, and recordation of the Mortgage except nominal recording and filing fees payable to the County Clerk.

22. The Loan, as made, will not violate any applicable usury laws of the State of New York, or other applicable laws of the State of New York regulating the interest rate and the interest, fees and other charges that may be charged and/or collected with respect to the Loan (this statement assumes that Lender has not and will not charge or receive, directly or indirectly, any fees, charges, benefits, or other compensation in connection with such obligations, except as expressly set forth in the Loan Documents

23. The Cash Management Agreement and the Loan Agreement together create in favor of Lender a security interest in the Cash Management Account (as defined in the Cash Management Agreement), and the Cash Management Agreement is effective to perfect the security interests in the Cash Management Account by control (as defined in Section 9-104(a)(2) of the Uniform Commercial Code of the State of New York the "**NYUCC**").

24. The Deposit Account Control Agreement is effective to perfect the security interest in the deposit account described therein by control (as defined in Section 9-104(a)(2) of the NYUCC).

To our knowledge, there is no action, suit or proceeding, at law or in equity, or by or before any governmental agency, now pending or overtly threatened in writing against any Borrower or Guarantor that challenges the validity or enforceability of, seeks to enjoin the performance of, or seeks damages with respect to, the Loan Documents or the Loan. For avoidance of doubt, please be advised that in rendering this confirmation we have made no independent investigation, including, without limitation, any search of court records, the files of our firm or the files of any Borrower or Guarantor.

When used in this opinion letter, the term "Applicable Laws" means the federal and New York State laws, rules and regulations that a New York counsel exercising customary professional diligence would reasonably be expected to recognize as being applicable to any Borrower, any Guarantor, the Loan Documents or the Loan, but excluding the laws, rules and regulations set forth below; such term also includes the laws, rules and regulations as pertains to the Limited Liability Company Act of the State of Delaware.

The following federal and New York State laws, rules and regulations are expressly excluded from the scope of this opinion letter: (a) securities laws, rules and regulations; (b) Federal Reserve Board margin regulations; (c) laws, rules and regulations regulating banks and other financial institutions, insurance companies and investment companies; (d) pension and employee benefit laws, rules and regulations, such as the Employee Retirement Income Security Act (ERISA); (e) labor laws, rules

and regulations, including laws on occupational safety and health (OSHA); (f) antitrust and unfair competition laws, rules and regulations; (g) laws, rules and regulations concerning compliance with fiduciary requirements; (h) laws, rules and regulations concerning the creation, attachment, perfection or priority of any lien or security interest, except to the extent expressly set forth in this opinion letter; (i) laws, rules and regulations relating to taxation; (j) bankruptcy, fraudulent conveyance, fraudulent transfer and other insolvency laws; (k) environmental laws, rules and regulations; (l) laws, rules and regulations relating to patents, copyrights, trademarks, trade secrets and other intellectual property; (m) local laws, administrative decisions, ordinances, rules or regulations, including any zoning, planning, building, occupancy or other similar approval or permit or any other ordinance or regulation of any county, municipality, township or other political subdivision of the State of New York; (n) criminal and state forfeiture laws and any racketeering laws, rules and regulations; (o) other statutes of general application to the extent that they provide for criminal prosecution; (p) laws relating to terrorism or money laundering; (q) laws, regulations and policies concerning national and local emergency and possible judicial deference to acts of sovereign states; (r) filing or consent requirements under any of the foregoing excluded laws; and (s) judicial and administrative decisions to the extent they deal with any of the foregoing excluded laws.

The foregoing opinions are subject to the following exceptions, qualifications and limitations:

We did not physically witness the execution and delivery of all of the Loan Documents, and our opinions herein regarding the execution and delivery of the Loan Documents by the Borrower and Guarantor are based, in part, on our review of the Certificate to Counsel and Guarantor Certificate to Counsel in which the Borrower and the Guarantor confirmed certain facts to us with respect to the execution and delivery of the Loan Documents.

We express no opinion regarding liens arising by operation of law or as to compliance or non-compliance with provisions in other agreements that require financial calculations or determinations to ascertain compliance or relating to any other aspect of the financial condition or results of operations of any Borrower or any of the Guarantor.

We express no opinion as to any consent, approval, authorization or other action or filing necessary for the ongoing operation of any Borrower's or Guarantor' respective businesses.

The opinions regarding enforceability of the Loan Documents that are contained in opinions [6 and 12] above are limited by: (i) bankruptcy, insolvency, reorganization, moratorium, fraudulent conveyance and transfer, and similar law affecting the rights and remedies of creditors generally (the "**Bankruptcy Exception**"); and (ii) general principles of equity, regardless of whether such enforceability is considered in a proceeding at law or in equity (the "**Equitable Principles Limitation**"). In addition, certain remedies, waivers and other provisions of the Loan Documents might not be enforceable; nevertheless, subject to the Bankruptcy Exception and the Equitable Principles Limitation, such unenforceability will not render the Loan Documents invalid as a whole or preclude: (i) the judicial enforcement of the obligation of Borrower to repay the principal, together with the interest thereon (to the extent not deemed a penalty), as provided in the Note, (ii) the acceleration of the obligation of the Borrower, to repay such principal, together with such

interest, upon a material default by the Borrower of the payment of such principal or interest or upon a material default by any Borrower in any other material provisions of the Loan Documents, or (iii) the foreclosure in accordance with Applicable Laws of the lien on and security interest in the Real Property created by the Mortgage upon maturity or upon acceleration pursuant to (ii) above.

We note also that in the absence of an enforceable waiver or consent, a Guarantor may be discharged if: (i) action by the Lender impairs the value of collateral securing guaranteed debt to the detriment of the Guarantor, (ii) the Lender elects remedies for default that impair the subrogation rights of the Guarantor against the Borrower, (iii) the guaranteed debt is materially modified, or (iv) the Lender otherwise takes action under the Loan Documents that materially prejudices the Guarantor.

No opinion is expressed herein with respect to any provision of the Loan Documents that: (a) purports to excuse a party from liability for the party's own acts; (b) purports to make void any act done in contravention thereof; (c) purports to authorize a party to act in the party's sole discretion or purports to provide that determination by a party is conclusive; (d) requires waivers or amendments to be made only in writing; (e) purports to effect waivers of: (i) constitutional, statutory or equitable rights, (ii) the effect of applicable laws, (iii) any statute of limitations, (iv) broadly or vaguely stated rights, (v) unknown future defenses, or (vi) rights to damages; (f) imposes or permits: (i) liquidated damages, (ii) the appointment of a receiver, (iii) penalties, (iv) indemnification for gross negligence, willful misconduct or other wrongdoing, (v) confessions of judgment, or (vi) rights of self-help or forfeiture; (g) purports to limit or alter laws requiring mitigation of damages; (h) concerns choice of forum, consent or submission to the personal or subject matter jurisdiction of courts, venue of actions, means of service of process, and agreements regarding arbitration; (i) purports to reconstitute the terms thereof as necessary to avoid a claim or defense of usury; (j) purports to require a party thereto to pay or reimburse attorneys' fees incurred by another party, or to indemnify another party therefor, which provisions may be limited by applicable statutes and decisions relating to the collection and award of attorneys' fees; (k) relates to the evidentiary standards or other standards by which the Loan Documents are to be construed, including, but not limited to, provisions that attempt to change or waive rules of evidence or fix the method or quantum of proof to be applied in litigation or similar proceedings; (l) prohibits or unreasonably restricts: (i) competition, (ii) the solicitation or acceptance of customers, business relationships or employees, (iii) the use or disclosure of information, or (iv) activities in restraint of trade; (m) enumerates that remedies are not exclusive or that a party has the right to pursue multiple remedies without regard to other remedies elected or that all remedies are cumulative; (n) constitutes severability provisions; (o) permits the exercise, under certain circumstances, of rights without notice or without providing opportunity to cure failures to perform; (p) purports to create rights to setoff otherwise than in accordance with applicable law; (q) contains a blanket prohibition on assignments or a specific prohibition on assignment of payments due or to come due; or (r) purports to entitle any party to specific performance of any provision thereof.

No opinions are expressed with respect to the status of title to the Real Property or with respect to the relative priority of any liens or security interests created by the Loan Documents. We have

assumed as to matters of title and priority that the Borrower has good title to the Real Property.

We assume that "value" has been given to the Borrower in connection with the Loan.

We are admitted to practice in the State of New York and our opinions do not address laws other than the laws of the State of New York, the laws of the United States of America and solely with respect to the opinions herein referring to the Delaware limited liability companies, the general Limited Liability Company law of the State of Delaware. While we are not licensed to practice law in the State of Delaware, we have reviewed applicable provisions of the Delaware Limited Liability Company Act as we have deemed appropriate in connection with the opinions expressed herein. Except as described, we have neither examined nor do we express any opinion with respect to Delaware law.

To the extent that the laws of any State other than the State of New York shall control any of the Loan Documents, for purposes of this Opinion, we have assumed that the laws of such State shall be the same as those of the State of New York.

Except as set forth below, this opinion is furnished solely for the benefit of Lender Parties (as defined below) and Lender Parties may rely upon it. This opinion may not be relied upon, nor copies delivered to any other person or entity, without our prior written consent, except that (a) copies of this letter may be delivered to and relied upon by Lender Parties (defined as "Lender or any successor or assign of Lender, including any participant or assignee of an interest in the Loan and any rating agency that is involved in the securitization of the Loan and/or that assigns a rating to any securities issued in connection with the Loan"); (b) copies of this letter may be delivered to regulatory agencies having supervisory authority over Lender Parties or any such participant or assignee or to the independent auditors of Lender Parties or any such participant or assignee for the purposes of confirming this letter's existence; (c) copies of this letter may be delivered to any rating agency that is involved in the securitization of the Loan and/or that assigns a rating to any securities issued in connection with the Loan and (d) copies of this letter may be delivered as necessary to comply with a court order which is binding upon Lender Parties.

This opinion letter speaks only as of the date hereof. We assume no obligation to update or supplement this opinion letter if any applicable laws change after the date of this opinion letter or if we become aware after the date of this opinion letter of any facts or other developments, whether existing before or first arising after the date hereof, that might change the opinions expressed above.

Very truly yours,

**BOOK LAW GROUP, LLC**

By: _____
     Mordechai Book, Esq.