# EXHIBIT 1

MONROE COUNTY CLERK'S OFFICE                    THIS IS NOT A BILL. THIS IS YOUR RECEIPT.

Receipt # 3346776

Book    Page    CIVIL

Return To:                                      No. Pages: 25
NATHANIEL JACOB KRITZER
1114 Avenue of the Americas                     Instrument: EFILING INDEX NUMBER
New York, NY 10036

Control #:        202302240115
Index #:          E2023001856

Date: 02/24/2023

Rothman, Moshe                                  Time: 9:01:32 AM
Aevri Upstate Manager LLC
Aevri Upstate Investors LLC
Apex Property Holdings LLC
400 West Avenue LLC

Puretz, Chaim

State Fee Index Number          $165.00
County Fee Index Number         $26.00
State Fee Cultural Education     $14.25
State Fee Records               $4.75      Employee: CW
Management

Total Fees Paid:                $210.00

State of New York

MONROE COUNTY CLERK'S OFFICE
WARNING – THIS SHEET CONSTITUTES THE CLERKS
ENDORSEMENT, REQUIRED BY SECTION 317-a(5) &
SECTION 319 OF THE REAL PROPERTY LAW OF THE
STATE OF NEW YORK. DO NOT DETACH OR REMOVE.

JAMIE ROMEO

MONROE COUNTY CLERK



STATE OF NEW YORK
SUPREME COURT        COUNTY OF MONROE

---

MOSHE ROTHMAN; AEVRI UPSTATE MANAGER
LLC; AEVRI UPSTATE INVESTORS LLC; APEX
PROPERTY HOLDINGS LLC; 400 WEST AVENUE
LLC; 441 SOUTH SALINA LLC; AEVRI SALINA
MANAGER LLC; AEVRI SALINA INVESTORS
LLC; AEVRI SALINA MEADOWS SPE LLC;
AEVRI SALINA MEADOWS LLC; AEVRI
ARLINGTON MANAGER LLC; AEVRI
ARLINGTON INVESTORS LLC; AEVRI
ARLINGTON GREEN SPE LLC; AEVRI
ARLINGTON GREEN LLC; AEVRI LONG LAKE
MANAGER LLC; AEVRI LONG LAKE              Index No. _____
INVESTORS LLC; AEVRI LONG LAKE
HOLDINGS LLC; AEVRI LONG LAKE SPE LLC;
AEVRI LONG LAKE LLC.

                                    Plaintiffs,

                —against—

CHAIM PURETZ, also known as ELI PURETZ,

                                    Defendant.

---

To:    CHAIM PURETZ, also known as ELI PURETZ

       **YOU ARE HEREBY SUMMONED** to answer the Complaint in this action and to serve

a copy of your answer on the Plaintiff's attorneys within 20 days after service of this Summons,

exclusive of the day of service (or within 30 days after service is complete if this Summons is not

personally delivered to you within the State of New York); and in the case of your failure to

appear or answer, judgment will be taken against you by default for the relief demanded in the

Complaint.

       The basis for venue is Plaintiff Rothman's residence in Monroe County (CPLR 503[a]).

Date:   New York, New York
        February 23, 2023

STEPTOE & JOHNSON LLP


By:   /s/ Nathaniel J. Kritzer
      Nathaniel J. Kritzer
      Joseph M. Sanderson
      1114 Avenue of the Americas
      New York, New York 10036
      (212) 506-3900
      nkritzer@steptoe.com
      josanderson@steptoe.com

*Counsel for Plaintiffs*

STATE OF NEW YORK
SUPREME COURT          COUNTY OF MONROE

---

MOSHE ROTHMAN; AEVRI UPSTATE MANAGER
LLC; AEVRI UPSTATE INVESTORS LLC; APEX
PROPERTY HOLDINGS LLC; 400 WEST AVENUE
LLC; 441 SOUTH SALINA LLC; AEVRI SALINA
MANAGER LLC; AEVRI SALINA INVESTORS
LLC; AEVRI SALINA MEADOWS SPE LLC;
AEVRI SALINA MEADOWS LLC; AEVRI
ARLINGTON MANAGER LLC; AEVRI
ARLINGTON INVESTORS LLC; AEVRI
ARLINGTON GREEN SPE LLC; AEVRI
ARLINGTON GREEN LLC; AEVRI LONG LAKE
MANAGER LLC; AEVRI LONG LAKE
INVESTORS LLC; AEVRI LONG LAKE
HOLDINGS LLC; AEVRI LONG LAKE SPE LLC;
AEVRI LONG LAKE LLC.

Index No. _____

Plaintiffs,

—*against*—

CHAIM PURETZ, also known as ELI PURETZ,

Defendant.

---

## VERIFIED COMPLAINT

Plaintiffs, by their attorneys, Steptoe & Johnson LLP, allege as follows, upon personal

knowledge as to their own conduct, records, and information received by them, and upon

information and belief as to the mental state of Defendant or where otherwise stated to be upon

information and belief:

## INTRODUCTION

1.      Plaintiffs are commercial real estate investment entities and their ultimate

manager, Moshe Rothman. This case arises from Plaintiffs' discovery of fraudulent and erratic

behavior by Defendant Puretz, a former business associate of Mr. Rothman's. Mr. Puretz's

fraudulent and illegal actions include, but are not limited to, purporting to sell interests in certain Plaintiff entities that he does not own and has no power to sell without consent, submitting unauthorized, false, and fictitious tax returns on behalf of at least one Plaintiff entity, seeking to defraud lenders and others by impersonating Mr. Rothman by using an email bearing his name, and misappropriating funds belonging to various Plaintiff entities.

2.      Plaintiffs bring this action on an emergent basis to enjoin Mr. Puretz from harming them and a wide range of third parties by continuing to sell interests he does not own and does not have authority to sell absent consent, to prohibit him from submitting tax returns purportedly on behalf of the Plaintiffs, and to prohibit him from impersonating Mr. Rothman or otherwise representing he has authority to act on behalf of Plaintiffs. Plaintiffs also seek an accounting and replevin of any corporate information or access credentials that Mr. Puretz may still possess, as well as other remedies for Mr. Puretz's known and yet-to-be-discovered misconduct. Plaintiffs further seek damages, disgorgement, and imposition of a constructive trust over more than $21.5 million that Mr. Puretz embezzled from certain Plaintiff entities. Plaintiffs anticipate seeking further relief as their investigation and discovery continue.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over Mr. Puretz under CPLR 302 because he transacted business in New York, including but not limited to contacting Mr. Rothman to form real estate investment entities and providing asset management services to entities headquartered in Rochester, New York, and he committed tortious acts causing injury to Mr. Rothman and the Plaintiff entities that are all managed from Rochester, New York.

4.      Venue is appropriate in this Court under CPLR § 503 because Mr. Rothman lives in Monroe County.

2

## PARTIES

### A.   Mr. Rothman

5.   Mr. Rothman is a successful real estate investor and the ultimate managing member of all of the plaintiff entities. He lives in Monroe County, New York.

### B.   The Hague Galleries Portfolio Entities

6.   Aevri Upstate Manager LLC is a Limited Liability Company organized under the laws of the State of Delaware with its principal office in Erie County, New York. Mr. Rothman is its sole member.

7.   Aevri Upstate Investors LLC is a Limited Liability Company organized under the laws of the State of Delaware with its principal office in Monroe County, New York. Its members are Aevri Upstate Manager LLC, which is also its Managing Member, and a number of individuals.

8.   Apex Property Holdings LLC is a Limited Liability Company organized under the laws of the State of New York with its principal office in Monroe County, New York. Its members are Aevri Upstate Manager LLC, which is also its Managing Member, and Aevri Upstate Investors LLC.

9.   400 West Avenue LLC is a Limited Liability Company organized under the laws of the State of Delaware with its principal office in Monroe County, New York. Its sole equity member is Apex Property Holdings LLC, and it is a member-managed LLC, subject to provisions creating a Special Member and Independent Manager for limited functions pursuant to certain debt agreements.

10.   441 South Salina LLC is a Limited Liability Company organized under the laws of the State of Delaware with its principal office in Onondaga County, New York. Its sole equity member is Apex Property Holdings LLC, and it is a member-managed LLC, subject to

3

provisions creating a Special Member and Independent Manager for limited functions pursuant to certain debt agreements.

### C.  The Salina Entities

11.  Aevri Salina Manager LLC is a Limited Liability Company organized under the laws of the State of Delaware with its principal office located in Erie County, New York. Mr. Rothman is its sole member.

12.  Aevri Salina Investors LLC is a Limited Liability Company organized under the laws of the State of Delaware with its principal office located in Erie County, New York. Its members are Aevri Salina Manager LLC, which is also its Managing Member, and a number of individuals.

13.  Aevri Salina Meadows SPE LLC is a Limited Liability Company organized under the laws of the State of Delaware with its principal office located in Erie County, New York. Its members are Aevri Salina Manager LLC, which is also its Managing Member, and Aevri Salina Investors LLC.

14.  Aevri Salina Meadows LLC is a Limited Liability Company organized under the laws of the State of Delaware with its principal office in Onondaga County, New York. Its sole equity member is Aevri Salina Meadows SPE LLC, and it is a member-managed LLC, subject to provisions creating a Special Member and Independent Manager for limited functions pursuant to certain debt agreements.

### D.  The Arlington Entities

15.  Aevri Arlington Manager LLC is a Limited Liability Company organized under the laws of the State of Delaware with its principal office located in Erie County, New York. Mr. Rothman is its sole member.

4

16.     Aevri Arlington Investors LLC is a Limited Liability Company organized under the laws of the State of Delaware with its principal office located in Erie County, New York. Its members are Aevri Arlington Manager LLC, which is also its Managing Member, and a number of individuals.

17.     Aevri Arlington Green SPE LLC is a Limited Liability Company organized under the laws of the State of Delaware with its principal office located in Erie County, New York. Its members are Aevri Arlington Manager LLC, which is also its Managing Member, and Aevri Arlington Investors LLC.

18.     Aevri Arlington Green LLC is a Limited Liability Company organized under the laws of the State of Delaware with its principal office in Lake County, Illinois. Its sole equity member is Aevri Arlington Green SPE LLC, and it is a member-managed LLC, subject to provisions creating a Special Member and Independent Manager for limited functions pursuant to certain debt agreements.

### E.     The Long Lake Entities

19.     Aevri Long Lake Manager LLC is a Limited Liability Company organized under the laws of the State of Delaware with its principal office located in Erie County, New York. Mr. Rothman is its sole member.

20.     Aevri Long Lake Investors LLC is a Limited Liability Company organized under the laws of the State of Delaware with its principal office located in Erie County, New York. Its members are Aevri Long Lake Manager LLC, which is also its Managing Member, and a number of individuals.

21.     Aevri Long Lake Holdings LLC is a Limited Liability Company organized under the laws of the State of Delaware with its principal office located in Erie County, New York. Its

5

members are Aevri Long Lake Manager LLC, which is also its Managing Member, and Aevri Long Lake Investors LLC.

22.     Aevri Long Lake SPE LLC is a Limited Liability Company organized under the laws of the State of Delaware with its principal office in Erie County, New York. Its sole member is Aevri Long Lake Holdings LLC, and it is a member-managed LLC, subject to provisions creating an Independent Manager for limited functions pursuant to certain debt agreements.

23.     Aevri Long Lake LLC is a Limited Liability Company organized under the laws of the State of Delaware with its principal office in Oakland County, Michigan. Its sole member is Aevri Long Lake SPE LLC, and it is a member-managed LLC, subject to provisions creating an Independent Manager for limited functions pursuant to certain debt agreements.

**F.      Defendant**

24.     Defendant Chaim Eli Puretz is an individual believed to reside in Jackson Township, Ocean County, New Jersey.

## GENERAL ALLEGATIONS

25.     Mr. Rothman is a real estate investor, investing in a mixture of residential and commercial property.

26.     Mr. Rothman met Mr. Puretz in 2018, and they started talking about various transactions that they might invest in together.

27.     In 2019, Mr. Puretz approached Mr. Rothman about an opportunity to make leveraged investments in undervalued commercial properties, including a property in Michigan.

6

28.     Mr. Puretz comes from a real estate investor family. He was[1] Head of

Acquisitions at Apex Equity Group, the family real estate organization, and has held senior roles

at a number of real estate investment businesses within the organization, including PF Holdings,

LLC, its affordable housing development branch.

29.     Broadly speaking, Mr. Puretz proposed that he would do much of the initial

legwork, including identifying properties to acquire and serving as asset manager for the

properties, while Mr. Rothman would serve as the sponsor and the ultimate managing member of

the LLCs. Mr. Rothman and Mr. Puretz agreed that they would share profits from these

investments. Mr. Puretz, however, wanted to keep his own name out of the LLC agreements and

took neither a managing member role nor a membership interest in any of the LLCs. The

agreement to share profits between him and Mr. Rothman was personal and informal.

30.     Mr. Rothman and Mr. Puretz ultimately worked together on the acquisition of

four sets of properties: the Hague Galleries portfolio in Rochester; Salina Meadows in Syracuse;

Long Lake Crossing in Troy, Michigan; and the Arlington Green Executive Center in Arlington

Heights, Illinois.

31.     Not long after, however, Mr. Rothman discovered that Mr. Puretz had distributed

to himself at least $21.5 million in funds that rightfully belonged to these entities.

32.     Mr. Rothman also began to hear from vendors that they were not being paid.

33.     Accordingly, Mr. Rothman acted quickly to remove Mr. Puretz as asset manager

and to hire a different asset manager for the properties.

34.     Mr. Puretz did not react well to his termination.

---

[1] Mr. Puretz's name appears to have been removed from Apex's website in recent months.

35.     First, Mr. Puretz apparently continued talking to property managers and holding himself out to still be the asset manager. Mr. Puretz even went so far as to ask tenants to send rent directly to him. Mr. Rothman had to explain to numerous property managers and tenants that they should take direction from the duly appointed asset manager, not from Mr. Puretz.

36.     Mr. Puretz continues to falsely hold himself out as having authority to act on behalf of the Aevri entities, including by sending emails to banks using an email address he controls called "mo@aevri.com," which appears to recipients to come from "Mo Rothman." This email address is not, and has not ever been, the email address of Mr. Rothman.

37.     Second, Mr. Puretz has forged a number of documents related to the investments, apparently in an effort to "sell" interests that he did not own in violation of provisions of the LLC Agreements that require Managing Member consent for transfers of interests.

38.     For example, Mr. Puretz did not acquire any interest in the investment entities for the properties he acquired with Mr. Rothman; instead, he had an informal, personal profit-sharing agreement with Mr. Rothman. Yet Mr. Rothman has obtained a copy of the LLC Agreement for Aevri Upstate Investors LLC used by Mr. Puretz to fraudulently sell membership interests, which has been digitally modified to show Mr. Puretz as 72% owner, to add a signature line for Mr. Puretz, and to add a forged signature from Mr. Rothman.

| Original LLC Agreement from Deal Counsel's Files | | Forged Version | |
|---|---|---|---|
| *2.06* **Members**. The names and Capital Percentages of the Members are: | | *2.06* **Members**. The names and Capital Percentages of the Members are: | |
| • Aevri Upstate Manager LLC | 28.00% | • Aevri Upstate Manager LLC | 28.00% |
| • Samuel Pels | 09.00% | • Chaim "Eli" Puretz | 72.00% |
| • Samuel Friedman | 09.00% | | |
| • David Berger | 09.00% | | |
| • Allen Azoulay | 09.00% | | |
| • David Kadoch | 09.00% | | |
| • Morris Gewirtz | 09.00% | | |
| • Kalman Rubenstien | 09.00% | | |
| • Moriya Jakabov | 09.00% | | |

8

ARTICLE VIII.

ASSIGNABILITY OF INTERESTS; NEW MEMBERS

8.01    *Assignability of Interests; Withdrawal.*

12

(a)    Without the prior written consent of the Manager, which consent shall be given or withheld in its sole and absolute discretion, Interests, in whole or in part, may not be assigned, transferred, pledged, or encumbered, except by operation of law pursuant to the death, bankruptcy or dissolution of a Member or pursuant to a corporate reorganization or merger.  Any attempt to assign, transfer, pledge or encumber the Interests without such consent shall be null and void and of no effect whatsoever.

(b)    No Member shall have the right, and each Member agrees that it shall not take any action, to withdraw from the Company, or to dissolve, terminate, liquidate or petition a court for the dissolution, termination or liquidation of the Company, except as provided in this Agreement. No Member shall take any action to subject any of the Company's assets to the authority of any court of bankruptcy, insolvency, receivership or similar proceeding, except as provided in this Agreement.

---

ARTICLE VIII.

ASSIGNABILITY OF INTERESTS; NEW MEMBERS

8.01    *Assignability of Interests; Withdrawal.*

(a)    Without either the prior written consent of the Manager, or the prior written consent of a majority of the Membership Interests, in either event which consent shall be given or withheld in its sole and absolute discretion, Interests, in whole or in part, may not be assigned, transferred, pledged, or encumbered, except by operation of law pursuant to the death, bankruptcy or dissolution of a Member or pursuant to a corporate reorganization or merger.  Any attempt to

12

assign, transfer, pledge or encumber the Interests without such consent shall be null and void and of no effect whatsoever.

(b)    No Member shall have the right, and each Member agrees that it shall not take any action, to withdraw from the Company, or to dissolve, terminate, liquidate or petition a court for the dissolution, termination or liquidation of the Company, except as provided in this Agreement. No Member shall take any action to subject any of the Company's assets to the authority of any court of bankruptcy, insolvency, receivership or similar proceeding, except as provided in this Agreement.

---

**IN WITNESS WHEREOF** the parties have duly executed this Limited Liability Company agreement as of the date set forth above.

MANAGING MEMBER
AEVRI UPSTATE MANAGER LLC,
a Delaware limited liability company

By: _____
Name: Moshe Rothman
Title:    Sole Member

---

**IN WITNESS WHEREOF** the parties have duly executed this Limited Liability Company agreement as of the date set forth above.

MANAGING MEMBER
AEVRI UPSTATE MANAGER LLC,
a Delaware limited liability company

By: _____
Name: Moshe Rothman
Title:    Sole Member

MEMBER

By: _____
Name: Chaim "Eli" Puretz

---

39.    In an attempt to make his forgery more convincing to his marks, forensic analyses show Mr. Puretz added an invisible DocuSign signature so that the forged version would appear more convincing.


Signed and all signatures are valid.

9

> Signature Details
>
> Last Checked: 2022.11.30 16:00:11 -05'00'
>
> Field: ENVELOPEID_68D1A19E7DDA45D39003360FF0AF9276 (invisible signature)

40.     But in fact, as forensic analyses show, the DocuSign reveals the forgery: it shows that an LLC Agreement that was supposedly signed in 2021 had the invisible DocuSign field added on October 4, 2022, at 3:45:09 p.m., UTC-5:00.

Signature is VALID, signed by DocuSign, Inc. <enterprisesupport@docusign.com>.

Signing Time: 2022/10/04 15:45:09 -05'00'

Source of Trust obtained from Adobe Approved Trust List (AATL).

Reason: Digitally verifiable PDF exported from www.docusign.com

Validity Summary

    The document has not been modified since this signature was applied.

    The certifier has specified that Form Fill-in, Signing and Commenting are allowed for this document. No other changes are permitted.

    The signer's identity is valid.

    Signing time is from the clock on the signer's computer.

    Signature was validated as of the signing time: 2022/10/04 15:45:09 -05'00'

41.     By contrast, the authentic version from Deal Counsel's records reflects that it was last modified on June 11, 2021, at 12:23:09, UTC-4:00 (i.e., EDT).

10



42.     The June 11, 2021 creation date of the authentic operating agreement follows shortly after the May 20, 2021 formation of Aevri Upstate Investors. By contrast, the date of the October 2022 forgery falls well over a year after the formation of the entity.

43.     There are other indications of forgery visible on a forensic examination of the PDF file, including that Mr. Rothman's signature page for the original agreement is scanned and his ink signature crosses the signature line, while the forged version uses an electronic image of Mr. Rothman's signature that has been pasted above the signature line. Indeed, because the forged PDF was not flattened, Adobe Acrobat still recognizes the pasted image as a pasted image:



44.     Compounding this fraud, in the fall of 2022, Mr. Puretz fraudulently executed purported "assignments" of interests from the individuals identified as members in the operating agreement of Aevri Upstate Investors LLC. To each of these fraudulently executed assignments, Mr. Puretz fraudulently appended a signature of Mr. Rothman from *June 2021*. Mr. Rothman did not sign any of these purported assignments, and his consent to any such assignments was required.

11

45. Third, Mr. Puretz has engaged in bizarre behavior that appears to be intended to extort money from Mr. Rothman.

46. On October 3, 2022, Mr. Rothman received two emails forwarded to him from the property managers for the Arlington Green and Salina Meadows Properties. The emails were sent from "mo@aevri.com" to the property managers as well as various personnel at Key Bank (the loan servicer for Arlington Green) and PNC (the loan servicer for Salina Meadows), and they falsely asserted that "Debbie Mills as well as Mike Barney from Barney Management sent [ ] letters to circumvent rents going to the lockbox and instead straight to the operating accounts. They sent these letters knowing they were circumventing the lockbox at signature bank."

47. On January 6, 2023, Mr. Rothman received an email forwarded to him by the property manager at the Long Lake property. The email was sent from "mo@aevri.com" to various personnel at Wells Fargo (the loan servicer for the property) and the property manager, and it asserted falsely that "funds are being skimmed off the top" of the "lockbox" account created to repay the mortgage on the property.

48. Mr. Rothman also learned that Mr. Puretz has also filed false and fictitious tax returns with the IRS and to New York State Department of Taxation and Finance, purportedly on behalf of 400 West Avenue LLC and 441 South Salina LLC, neither of which he has authority to sign or file returns for.

49. Mr. Rothman and the Plaintiff entities thus bring this action to prevent Mr. Puretz from continuing his fraudulent and bizarre behavior, to order the return of funds embezzled by Mr. Puretz, to impose a constructive trust over those funds, to obtain an equitable accounting to address any proceeds Mr. Puretz may have misappropriated or any profits he may have acquired through sales of forged interests in the properties, and to order replevin of any property of the

12

entities that Mr. Puretz may have retained, including passwords or similar credentials for filing tax returns.

**COUNT I**
**DECLARATORY AND INJUNCTIVE RELIEF**
**ACTING ON BEHALF OF PLAINTIFF ENTITIES**

50.     Plaintiffs incorporate by reference Paragraphs 1-49 as if set out at length herein.

51.     Under the applicable LLC Agreements, Mr. Rothman, or entities of which Mr. Rothman is the ultimate Managing Member, manages each of the Plaintiff entities, and in that capacity, has terminated Mr. Puretz as asset manager, and Mr. Puretz has no other management rights or powers over the Plaintiff entities and is not their authorized agent.

52.     Mr. Puretz has falsely held himself out to third parties as being authorized to act on behalf of the entity plaintiffs.

53.     Because of Mr. Puretz's erratic behavior, the imminent impact of his fraud on third parties, and the risk that the entity plaintiffs may be liable to third parties for unauthorized transactions, Plaintiffs have no adequate remedy at law.

54.     Accordingly, Plaintiffs seek a preliminary and permanent injunction that Mr. Puretz (i) cease holding himself out as authorized to act on behalf of the Plaintiff entities or as having any continuing role at the Plaintiff entities; (ii) provide Plaintiffs with the contact information for each person to whom he has held himself as authorized to act on behalf of the Plainiff entities; and (iii) turn over all property or access credentials of Plaintiffs, including but not limited to any credentials used for bank accounts, IRS or NYS DTF e-filing credentials, usernames, and passwords.

55.     Plaintiffs also seek a declaration that Mr. Puretz has no authority whatsoever to act on behalf of Plaintiffs.

13

## COUNT II
## DECLARATORY AND INJUNCTIVE RELIEF
## INVALIDITY OF FORGED LLC AGREEMENTS AND INTERESTS THEREUNDER

56.     Plaintiffs incorporate by reference Paragraphs 1-55 as if set out at length herein.

57.     The authentic LLC Agreements are contained within the closing files maintained by transactional counsel.

58.     Mr. Puretz has provided to third parties a purported LLC Agreement that, upon information and belief, he forged in approximately October 2022 that purports to vest Mr. Puretz with interests that he does not own and authorize him to assign his forged interests to third parties.

59.     Upon information and belief, Mr. Puretz may have attempted similar forgeries for other Plaintiff entities.

60.     Because there is an imminent risk that Plaintiffs and third parties will be prejudiced if Mr. Puretz continues to market forged interests, Plaintiffs have no adequate remedy at law.

61.     Accordingly, Plaintiffs seek a preliminary and permanent injunction that Mr. Puretz (i) cease purporting to sell or assign interests in the Plaintiff entities, (ii) provide Plaintiffs with the contact information for each person to whom he has purported to sell or assign interests in the Plaintiff entities, and (iii) cease using purported LLC Agreements not identical to the copy in Deal Counsel's files for any purpose other than defense of this litigation.

62.     Plaintiffs also seek a declaration that the copies of the LLC Agreements in Deal Counsel's files are the authentic ones and that purported LLC Agreements not identical to the copy in Deal Counsel's files are forgeries.

14

## COUNT III
## DECLARATORY AND INJUNCTIVE RELIEF
## INVALIDITY OF ASSIGNMENTS WITHOUT MANAGING MEMBER CONSENT

63. Plaintiffs incorporate by reference Paragraphs 1-62 as if set out at length herein.

64. The authentic LLC Agreements are contained within the closing files maintained by the Deal Counsel and expressly render void transfers of interests in the Plaintiff entities without the consent of the Managing Member, which is ultimately in each case controlled by Mr. Rothman.

65. Mr. Puretz has provided to third parties a purported LLC Agreement that, upon information and belief, he forged in approximately October 2022 that purports to award Mr. Puretz interests that he does not own and authorize him to assign his forged interests to third parties.

66. Upon information and belief, Mr. Puretz may have attempted similar forgeries for other Plaintiff entities.

67. Because there is an imminent risk that Plaintiffs and third parties will be prejudiced if Mr. Puretz continues to market forged interests, Plaintiffs have no adequate remedy at law.

68. Accordingly, Plaintiffs seek a preliminary and permanent injunction that Mr. Puretz (i) cease purporting to sell or assign interests in the Plaintiff entities, (ii) provide Plaintiffs with the contact information for each person to whom he has purported to sell or assign interests in the Plaintiff entities, and (iii) cease using purported LLC Agreements not identical to the copy in Deal Counsel's files for any purpose other than defense of this litigation.

69. Plaintiffs also seek a declaration that any transfer without the consent of the relevant Managing Member is void.

15

## COUNT IV
## REPLEVIN

70.     Plaintiffs incorporate by reference Paragraphs 1-69 as if set out at length herein.

71.     Upon information and belief, Mr. Puretz possesses personal property belonging to the Plaintiff entities, including but not limited to access credentials for IRS and/or NYS DTF e-filing accounts.

72.     Plaintiffs have demanded the return of this property but Mr. Puretz continues to withhold it and has instead used it to Plaintiffs' detriment and in violation of Plaintiffs' rights as owners.

73.     Accordingly, Plaintiffs are entitled to an order directing Mr. Puretz to return all property of Plaintiffs remaining in his possession, and to a preliminary injunction enjoining Mr. Puretz from using the property until it is returned.

## COUNT V
## BREACH OF FIDUCIARY DUTY/ACCOUNTING

74.     Plaintiffs incorporate by reference Paragraphs 1-73 as if set out at length herein.

75.     As Mr. Rothman's partner, Mr. Puretz owes Mr. Rothman fiduciary duties, including duties of loyalty, care, full disclosure, and to account for partnership property that came into his possession.

76.     As the asset manager and an agent of the Plaintiff entities prior to his termination, Mr. Puretz owed them fiduciary duties, including duties of loyalty, care, full disclosure, and to account for Plaintiffs' property that came into his possession.

77.     As a person falsely holding himself out as an agent of the Plaintiff entities after his termination, Mr. Puretz is a trustee de son tort or otherwise estopped from denying that he owes the Plaintiff entities fiduciary duties, including duties of loyalty, care, full disclosure, and to account for property that came into his possession as a trustee de son tort.

16

78.     Mr. Puretz violated those duties by wrongfully diverting to himself funds that should have been paid to Mr. Rothman or the Plaintiff entities.

79.     Mr. Puretz also violated these duties by holding himself out to be authorized to act on behalf of Plaintiffs when he was not.

80.     Mr. Puretz also violated these duties by forging documents and purporting to sell or assign unauthorized interests in the Plaintiff entities or to sell or assign interests without the approval of the Managing Member.

81.     Because of Mr. Puretz's erratic behavior, the imminent impact of his fraud on third parties, and the risk that the entity plaintiffs may be liable to third parties for unauthorized transactions, Plaintiffs have no adequate remedy at law.

82.     As a result of Mr. Puretz's breach of his fiduciary duties, Plaintiffs have suffered damages.

83.     As a result of Mr. Puretz's breach of his fiduciary duties, Mr. Puretz has made unauthorized profits that he must account for and that must be disgorged to Plaintiffs.

84.     As a result of Mr. Puretz's breach of his fiduciary duties, the amounts due to Plaintiffs are unascertained and cannot be ascertained without an equitable accounting.

85.     Mr. Puretz's conduct was wanton, willful, and oppressive, and in conscious and malicious disregard of Plaintiffs' rights. Plaintiffs are thus entitled to punitive damages.

**COUNT VI**
**CONVERSION**

86.     Plaintiffs incorporate by reference Paragraphs 1-85 as if set out at length herein.

87.     As Plaintiffs' asset manager, Mr. Puretz wrongfully diverted to himself funds that belonged to Plaintiffs.

17

88.     Mr. Puretz's conduct was wanton, willful, and oppressive, and in conscious and malicious disregard of Plaintiffs' rights. Plaintiffs are thus entitled to punitive damages.

## COUNT VII
## CIVIL THEFT AND DEALING IN STOLEN PROPERTY (N.J.S.A. § 2C:20-20)

89.     Plaintiffs incorporate by reference Paragraphs 1-88 as if set out at length herein.

90.     As Plaintiffs' asset manager, Mr. Puretz wrongfully diverted to himself funds and other property that belonged to Plaintiffs and brought those funds into New Jersey, where he resides.

91.     Mr. Puretz knew those funds to be stolen when he received them and when he brought them into New Jersey.

92.     Mr. Puretz also forged purported interests in the Plaintiff entities and purported to sell them while knowing them to be stolen while in New Jersey.

93.     Mr. Puretz also wrongfully appropriated access credentials and wrongfully brought them into New Jersey.

94.     Accordingly, Mr. Puretz is liable for treble damages under N.J.S.A. § 2C:20-20.

## COUNT VIII
## CONSTRUCTIVE TRUST

95.     Plaintiffs incorporate by reference Paragraphs 1-94 as if set out at length herein.

96.     Upon information and belief based on reliable information received by Plaintiffs, Defendant misdirected $5 million from the trust account of the law firm Nussbaum Lowinger, which properly belonged to one or more of the Plaintiff entities, to purchase membership interests in Jefferson Hills Acquisition, LLC.

97.     Upon information and belief based on reliable information received by Plaintiffs, Defendant misdirected an additional $1 million from the trust account of the law firm Nussbaum

Lowinger, which properly belonged to one or more of the Plaintiff entities, to make a loan to Yeshayahu and Mordechai Zidele on or about December 14, 2022.

98.     Upon information and belief based on reliable information received by Plaintiffs, Defendant used $500,000 in funds misappropriated from Plaintiffs to invest in a hedge fund known as Staybridge Financial LLC.

99.     Upon information and belief based on reliable information received by Plaintiffs, Defendant used approximately $1.8 million in misappropriated funds to invest in a gold mining venture known as QLM Partners LLC and QLM Nevada, LLC.

100.    Upon information and belief based on reliable information received by Plaintiffs, Defendant used approximately $1 million in misappropriated funds to make an additional loan to 13 Old Farm ABC LLC, which was guaranteed by Abe Richard Cohen and Barbara Cohen.

101.    Upon information and belief based on reliable information received by Plaintiffs, Defendant used approximately $1 million in misappropriated funds to make an additional loan to Avrohom Waxman.

102.    Upon information and belief based on reliable information received by Plaintiffs, Defendant misdirected and/or misappropriated millions of dollars of additional funds, the disposition of which is currently unknown and will be ascertained through discovery.

103.    Defendant stood in a confidential or fiduciary relationship to Plaintiffs, because, inter alia, he had power to direct funds from the accounts of the Plaintiff entities.

104.    Defendant had expressly and/or impliedly promised to manage the assets of the Plaintiff entities for their own benefit and not to misappropriate funds from them for his personal benefit.

19

105.    In reliance on these express and/or implied promises, Plaintiffs allowed Defendant to have authority to make transfers on behalf of the Plaintiff entities.

106.    Defendant abused this power by transferring assets to investments held by him personally, to the exclusion of the Plaintiff entities to which he owed duties.

107.    The investment interests and debts held by Defendant described above are traceable directly to his misconduct in misappropriating funds.

108.    Defendant cannot in equity and good conscience be allowed to enjoy continued ownership of these assets, and thus he is converted to a mere trustee acting for the benefit of the Plaintiff entities.

WHEREFORE, Plaintiffs respectfully demand a judgment awarding:

A.    Preliminary and permanent injunctive relief in the forms specified above;

B.    Declarations in the forms specified above;

C.    An order that Mr. Puretz return all property of Plaintiffs in his possession, including any access credentials, and preliminarily enjoining Mr. Puretz from using the property in the interim;

D.    Compensatory, punitive, and treble damages in an amount to be proven at trial, in an amount presently believed to exceed $21,500,000, before trebling and/or punitive damages;

E.    An order to account for and disgorge illicit profits;

F.    Imposition of a constructive trust over the assets traceable to Mr. Puretz's misconduct;

G.    An equitable accounting;

H.    The costs, disbursements, and reasonable attorneys' fees; and

20

     I.      Such other and further relief as the Court deems just and proper.

Date:  New York, New York        STEPTOE & JOHNSON LLP
       February  23, 2023

                              By:  /s/ Nathaniel J. Kritzer
                                 Nathaniel J. Kritzer
                               Joseph M. Sanderson
                               1114 Avenue of the Americas
                               New York, New York 10036
                               (212) 506-3900
                               nkritzer@steptoe.com
                               josanderson@steptoe.com

                               *Counsel for Plaintiffs*

## VERIFICATION

**STATE OF NEW YORK** )
                        )    **ss:**
**COUNTY OF MONROE** )

MOSHE ROTHMAN, being duly affirmed, deposes, and states:

I am a plaintiff in this action and an authorized person on behalf of all other plaintiffs in

this action. I have read the complaint, and its factual contents are true to my personal

knowledge, except as to the matters alleged on information and belief, and as to those matters, I

believe them to be true.

MOSHE ROTHMAN

Subscribed and affirmed under penalty of perjury before me this 23 day of February 2023.

_____
Notary Public

KALI PESTLE
NOTARY PUBLIC STATE OF NEW YORK
ONTARIO COUNTY
LIC. #01PE6426872
COMM. EXP. 12/20/20__

22