## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WILMINGTON TRUST, NATIONAL ASSOCIATION, as Trustee for the benefit of Registered Holders of BBCMS Mortgage Trust 2022-C15 Commercial Mortgage Pass-Through Certificates, Series 2022-C15, acting by and through its special servicer, Rialto Capital Advisors, LLC, | Civil Action No. 1:23-cv-08824-JPC-JLC<br><br>**Oral Argument Requested** |
| Plaintiff, | |
| v. | |
| AEVRI SALINA MEADOWS LLC; HAWTHORNE PROPERTY SERVICES, LLC; and MOSHE ROTHMAN, | |
| Defendants. | |

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

**STEPTOE LLP**
Nathaniel J. Kritzer
Joseph M. Sanderson
STEPTOE LLP
1114 Avenue of the Americas
New York, New York 10036
Telephone: (212) 378-7535
nkritzer@steptoe.com
josanderson@steptoe.com

*Attorneys for Defendants Aevri Salina*
*Meadows LLC and Moshe Rothman*

## <u>TABLE OF CONTENTS</u>

Page

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ....................................................................................................................... 4

    A.    PLAINTIFF OFFERS A BUSINESS RECORDS DECLARANT WITH NO KNOWLEDGE OF BMO RECORDS TO LAY ITS *PRIMA FACIE* CASE. ........................................................................................................... 4

    B.    PLAINTIFF TWICE UNSUCCESSFULLY SEEKS A DISCOVERY STAY AND, HAVING BEEN DENIED, FAILS TO TIMELY PRODUCE DOCUMENTS AND NO-SHOWS FOR ITS KEY DECLARANT'S DEPOSITION. ........................................................................... 7

    C.    DEFENDANTS INTEND TO SEEK ADDITIONAL DISCOVERY. ................. 8

LEGAL STANDARD................................................................................................................ 8

ARGUMENT .......................................................................................................................... 10

I.     BECAUSE MR. STRICKLAND NO-SHOWED FOR HIS DULY NOTICED DEPOSITION, HIS DECLARATION IS INADMISSIBLE AND THE MOTION SHOULD BE DENIED IN ITS ENTIRETY.................................................................... 10

II.    MR. STRICKLAND IN ANY EVENT CANNOT AUTHENTICATE OR LAY PROPER BUSINESS RECORDS FOUNDATION FOR DOCUMENTS CREATED AND MAINTAINED BY OTHER COMPANIES BEFORE HIS INVOLVEMENT. ................................................................................................ 11

III.   MR. ROTHMAN'S TESTIMONY THAT HE HAD NO KNOWLEDGE OF ANY GUARANTY BEFORE PLAINTIFF CLAIMED ONE EXISTED CREATES A GENUINE ISSUE OF MATERIAL FACT ON THE GUARANTY CLAIM................................................................................................................ 13

IV.   RULE 56(D) MANDATES DENIAL OF THIS PRE-DISCOVERY SUMMARY JUDGMENT MOTION ON ALL THREE COUNTS.................................................... 14

    A.    MR. STRICKLAND OFFERS DISCOVERY, AND THIS COURT SHOULD HOLD PLAINTIFF TO THAT. .......................................................... 15

    B.    DISCOVERY IS NECESSARY TO DETERMINE IF SIGNED-IN-BLANK SIGNATURE PAGES WITH DIFFERENT FOOTERS WERE APPLIED TO THE CORRECT VERSION OF THE LOAN DOCUMENTS................................................................................................ 16

    C.    BECAUSE THE RECEIVER NOW HAS AEVRI'S BOOKS AND RECORDS, CHALLENGING PLAINTIFF'S DEFAULT AND EQUITABLE ACCOUNTING ALLEGATIONS REQUIRES DISCOVERY................................................................................................ 18

    D.    BECAUSE MR. PURETZ'S MISDEEDS CREATED GAPS IN ITS RECORDS, AEVRI NEEDS TO SUBPOENA RECORDS REGARDING CLAIMED DEFAULTS........................................................................... 18

V.    SUMMARY JUDGMENT DISMISSING AFFIRMATIVE DEFENSES IS ALSO
      PREMATURE. ................................................................................................... 19

CONCLUSION ............................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adickes v. S. H. Kress & Co.*,
  398 U.S. 144 (1970)..............................................................................................9

*Barrows v. Brinker Rest. Corp.*,
  36 F.4th 45 (2d Cir. 2022) ..........................................................................13, 14

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986)..........................................................................................8, 9

*Congregation Ohavei Shalom, Inc. v. Comyns Bros.*,
  123 A.D.2d 656, 507 N.Y.S.2d 28 (App. Div. 1986) ..................................3, 17, 20

*Emigrant Residential LLC v. Pinti*,
  37 F.4th 717 (1st Cir. 2022)...............................................................................16

*Gillum v. Baxton*,
  No. 12-CV-626-JPG-PMF, 2016 WL 628796 (S.D. Ill. Feb. 17, 2016)................11

*Greystone Bank v. Skyline Woods Realty, LLC*,
  817 F. Supp. 2d 57 (N.D.N.Y. 2011)..............................................................12, 16

*J. Howard Smith, Inc. v. S.S. Maranon*,
  501 F.2d 1275 (2d Cir. 1974).............................................................................12

*Miller v. Wolpoff & Abramson, L.L.P.*,
  321 F.3d 292 (2d Cir. 2003).............................................................................9, 14

*Mitchell v. Washingtonville Cent. Sch. Dist.*,
  190 F.3d 1 (2d Cir. 1999).....................................................................................9

*New World Sols., Inc. v. NameMedia Inc.*,
  150 F. Supp. 3d 287 (S.D.N.Y. 2015)................................................................1, 10

*Nora Beverages, Inc. v. Perrier Group of Am., Inc.*,
  164 F.3d 736 (2d Cir. 1998).................................................................................9

*Phillips v. United States*,
  356 F.2d 297 (9th Cir. 1965) ..............................................................................12

*S.E.C. v. Smart*,
  678 F.3d 850 (10th Cir. 2012) ............................................................................10

*Schwapp v. Town of Avon*,
    118 F.3d 106 (2d Cir. 1997)....................................................................................9

*Scotto v. Almenas*,
    143 F.3d 105 (2d Cir. 1998)....................................................................................9

*Snyder v. Whittaker Corp.*,
    839 F.2d 1085 (5th Cir. 1988) ...............................................................................12

*U.S. Bank Tr., N.A. as Tr. for LSF9 Master Participation Tr. v. Moomey-Stevens*,
    168 A.D.3d 1169, 91 N.Y.S.3d 788 (2019) ..........................................................16

*United States v. M/Y Amadea*,
    No. 23 CIV. 9304 (DEH), 2025 WL 754685 (S.D.N.Y. Mar. 10, 2025) ..................1

*United States v. Rosenstein*,
    474 F.2d 705 (2d Cir. 1973).................................................................................12

*Vilella v. Pup Culture LLC*,
    No. 23-CV-2291 (LJL), 2023 WL 7986562 (S.D.N.Y. Nov. 17, 2023)...................10

**Statutes**

28 U.S.C. § 1746.................................................................................................................9

N.Y. Gen. Oblig. Law § 5-701(2)................................................................................14, 17

**Other Authorities**

Fed. R. Civ. P. 16.................................................................................................................7

Fed. R. Civ. P. 26(f)............................................................................................................4

Fed. R. Civ. P. 30............................................................................................................7, 8

Fed. R. Civ. P. 32........................................................................................................6, 7, 11

Fed. R. Civ. P. 56(d) ...................................................................................................*passim*

Fed. R. Evid. 1003(1).........................................................................................................12

11 James Wm. Moore et al., *Moore's Federal Practice* ¶ 56.13[1] (3d ed. 2005)........................11

S.D.N.Y. L.R. Civ. 56.1.....................................................................................................4

## PRELIMINARY STATEMENT

Plaintiff asks that summary judgment before it has provided any discovery in this case, even after a discovery stay was twice denied and Plaintiff failed to comply with duly-served discovery requests. That outcome would violate the Federal Rules of Civil Procedure, the Federal Rules of Evidence, and would reward sharp, sanctionable conduct by the Plaintiff in ignoring multiple court orders that discovery is not stayed pending its motion.

To start, Plaintiff has no admissible evidence in support of its *prima facie* case. Its principal declarant on the supposed loan documents, their putative assignment to Plaintiff, and the alleged defaults, Mr. Strickland, failed to appear for his duly-noticed deposition.[1] The declarations of "witnesses who have not been made available for cross-examination" are "inadmissible hearsay" at summary judgment and Mr. Strickland's refusal to attend a duly noticed deposition or offer alternate dates that would allow him to be deposed before Defendants' response to this motion was due—indeed, to offer any date before *June*—is sanctionable. *United States v. M/Y Amadea*, No. 23 CIV. 9304 (DEH), 2025 WL 754685, at *5 (S.D.N.Y. Mar. 10, 2025); *see also New World Sols., Inc. v. NameMedia Inc.*, 150 F. Supp. 3d 287, 308 (S.D.N.Y. 2015) (striking declaration of witness who defied deposition notice). Plaintiff twice sought a discovery stay and both times it was denied. Yet it chose to help itself to that relief anyway, failing to appear for its deposition or

---

[1] As shown below, Defendants asked Plaintiff's counsel for dates for Mr. Strickland's deposition the day after his declaration was filed in support of their motion. After a follow-up phone call where Plaintiff failed to offer dates and after Plaintiff made a second, procedurally improper request to stay discovery (which was subsequently denied), Defendants noticed Mr. Strickland's deposition. Specifically, on March 29, 2024, Defendant noticed Mr. Strickland's deposition for April 10 at the office of Defendants' counsel. Then, after Defendants warned Plaintiff they would take a non-appearance and seek sanctions if Mr. Strickland failed to appear (or failed to offer an alternative, workable date), Mr. Strickland failed to appear for his duly-noticed deposition.

to produce any documents before Defendants' summary judgment opposition was due. Kritzer Decl. ¶¶ 3-13.

Mr. Strickland's declaration testimony, in any event, presents no evidence in admissible form. Mr. Strickland acknowledges that much of his testimony is just regurgitating the contents of alleged business records of BMO and Wilmington that Rialto now has in its possession. Yet he lacks any knowledge of the recordkeeping and record creation practices of BMO or Wilmington or of the authenticity of their records. Nor did he have involvement in drafting or executing these documents. He thus cannot authenticate or lay business records foundation for the crucial documents necessary for a *prima facie* case.

Even if Plaintiff had produced *admissible* evidence to make out its prima facie case, summary judgment before discovery is inappropriate under Rule 56(d) because Plaintiff or third parties possess essential facts that could create a genuine issue of material fact. Plaintiff's case relies on numerous documents in Plaintiff's possession whose authenticity and accuracy Defendants have contested, or which are entirely unavailable to Defendants, and this Court simply cannot take on faith that records are genuine and accurate without discovery.

Most obviously, Mr. Strickland **concedes that Defendants are entitled to discovery**: before no-showing for his deposition, he testified in his declaration that the "Business Records" upon which his testimony was based would be made available for review. Doc. 63 ¶ 1. Plaintiff should be held to that concession; it cannot simultaneously reassure the Court that it is fair to grant summary judgment because documents are available for review and then tell Defendants that they cannot inspect the documents in time to use them in opposition to summary judgment. Likewise, Plaintiff's failure to produce the documents it claims that Mr. Strickland reviewed just weeks ago together with its responses and objections to Defendants' requests for production is further

gamesmanship. Plaintiff has these documents; it is refusing to turn them over to Defendants in order to prevent Defendants from being able to oppose this motion on a full factual record. Basic fairness dictates that Defendants get a chance to take discovery into whether what Mr. Strickland says is true rather than being forced to take his word for it.

At any rate, the messy, highly unorthodox manner in which the key documents here were purportedly executed means there is a real doubt as to which, if any, agreements reflect a true meeting of the minds and comply with the statute of frauds. The footers of the documents that Plaintiff claims are the authentic agreements show different names for most of the agreement compared with the signature page—so it is far from clear that the signatures were attached to the correct versions. While that is material to all causes of action, it is crucial to liability on a guaranty, because "any alteration of the contract to which his guarantee applies, whether material or not, will serve to discharge the surety's obligation." *Congregation Ohavei Shalom, Inc. v. Comyns Bros.*, 123 A.D.2d 656, 656, 507 N.Y.S.2d 28, 29 (App. Div. 1986). Plaintiff seeks to put the onus on Defendants to bear the risk that BMO's sloppy policies and failure to supply a fully-executed closing binder subject Defendants to obligations beyond what they intended. That is improper, and Defendants are entitled to cross examine Plaintiff's witnesses and take discovery before responding to a summary judgment motion.

Moreover, because Mr. Rothman originally made the regrettable decision to trust Mr. Puretz with management of this property before the latter engaged in a number of bizarre acts and pleaded guilty to an unrelated fraud scheme, he also lacks a complete set of Aevri's own records and needs to subpoena information from third parties to fill the gaps to respond to the allegations of defaults.

3

Thus, on critical issues such as the authenticity of the Loan Documents, jurisdiction, and the existence of the alleged defaults, facts essential to Defendants' opposition are outside of Defendants' control. Either Plaintiff or third parties such as BMO, Mr. Puretz, or tenants have the documents, and summary judgment is inappropriate until Defendants have had the opportunity to obtain them.

## BACKGROUND

The facts at issue on this motion are addressed at length in Defendants' Local Rule 56.1 Statement. Briefly, Aevri approached the Bank of Montreal in early 2022 to discuss obtaining a mortgage loan, after having previously negotiated with Citi. Negotiations took place partly through Aevri's outside counsel, Mordechai Book, and BMO's outside counsel at Katten. (Rothman Decl. ¶ 3.) Mr. Rothman never, to his knowledge, received a full closing binder of executed documents and has no recollection of reviewing or signing the personal guaranty on which Plaintiff seeks to hold him liable. (*Id.*) Defendants' counsel raised these authenticity issues with Plaintiff's counsel in October 2023 and again through discovery requests after the Rule 26(f) conference, but Plaintiff has never provided anything to substantiate its claim that the signature page was appended with appropriate authorization to guaranty and other loan documents. (Kritzer Decl. ¶ 2 & Ex. 1 (Oct. 3, 2023 Email))

### A.    Plaintiff Offers A Business Records Declarant With No Knowledge of BMO Records To Lay Its *Prima Facie* Case.

Plaintiff—the alleged assignee of the mortgage and note—now presents the testimony of one Michael Strickland, a Senior Vice President of Asset Management at Rialto Capital Advisors LLC, to attempt to lay a *prima facie* case for foreclosure. (Doc. 63 ¶ 1.) He testifies based on having "gained knowledge" from unspecified "Business Records" of Wilmington Trust and Rialto. (*Id.*) He claims that these documents were "maintained in the ordinary course of the Trust's or

Rialto's business at or near the time of the acts, conditions or events to which they relate," despite the fact that the key documents were records of BMO that were created *before* the Trust or Rialto ever was involved. (*Id.*) He does not claim any knowledge whatsoever of BMO's recordkeeping practices, including how BMO compiled the purported versions of the agreements attached to his declaration. Plaintiff has not offered any business records declaration from any person at BMO or Wilmington Trust to authenticate any of their business records.

Mr. Strickland concedes that neither Defendants nor this Court should have to take his claim to have reviewed unspecified records on faith alone, stating that "[t]he Business Records are available for inspection and copies can be submitted to the Court if required." (*Id.*) Apparently Plaintiff has had second thoughts, since Defendants requested to inspect the records and Plaintiff declined to make them available prior to the due date for this opposition. (Kritzer Decl. ¶¶ 3-4 & Exs. 2-3.) Defendants thus have no way to determine if the actual records would undermine Mr. Strickland's claims about their contents or authenticity. (Kritzer Decl. ¶¶ 2-3.)

Mr. Strickland attaches what he claims are the authentic versions of the Loan Documents, including the Note, Mortgage, and Guaranty. Aside from Mr. Strickland's failure to establish that he knows how BMO maintained its records or whether the version attached is actually the version to which there was a meeting of the minds, there are facial reasons to doubt the authenticity of the documents. For example, most of the pages have a law firm document management system number as the footer, while the signature pages have a different footer. (*Compare* Doc. 63-2 at 2-4, *with id.* at 5; *compare* Doc. 63-3 at 2-16, 20-24, *with id.* at 19; *compare* Doc. 63-4 at 3-11, *with id.* at 12; *compare* Doc. 63-5 at 2-121, 129-140, *with id.* at 128; *compare* Doc. 63-6 at 2-13, *with id.* at 14.) Curiously, Mr. Strickland does not attach any correspondence, let alone correspondence

subscribed by Defendants consistent with the statute of frauds, that might authorize the attachment of the blank signature pages to a specific version of the Loan Documents.

Instead, Plaintiff relies heavily on an opinion letter from Mr. Book opining that documents not attached to it were duly executed. (Doc. 63-14.) But that letter cannot be used to authenticate any agreement with BMO: it refers to agreements with ***Citi Real Estate Lending, Inc.***, not BMO.[2] (Doc. 63-14 at 2 of 12 (defining "Citi Real Estate Lending, Inc." as "Lender").)

Defendants' undersigned counsel has repeatedly sought the full deal file from Defendants' transactional counsel, Mr. Book, who repeatedly confirmed that his deal file did not include any personal guaranty signed by Mr. Rothman. (Kritzer Decl. ¶ 2.) Undersigned counsel has also served Rule 32 requests to examine the original copy of the alleged personal guaranty, correspondence relating to it, and, even before discovery began, asked Plaintiff for emails or other evidence authenticating the document. (*Id.* ¶¶ 2-3 & Exs. 1-2.) Plaintiff has rebuffed all of these requests. (*Id.* ¶ 4.)

Mr. Strickland also offers internal Rialto records that he claims show certain defaults, both in payment and in compliance with certain covenants, and mailing of notices of default. He does not clarify whether these records rely on information transmitted by third parties such as BMO and Defendants have not had the opportunity to test their accuracy through discovery. (Kritzer Decl. ¶¶ 2-12.)

_____

[2] The letter itself has facial indicia of lack of authenticity. The second page of the letter, which refers to a Guaranty (albeit with Citi, not BMO), has a notably different appearance from the other pages and appears to have been inserted in the document as a "printed" PDF page while the rest of the document was scanned.

**B.    Plaintiff Twice Unsuccessfully Seeks A Discovery Stay and, Having Been Denied, Fails to Timely Produce Documents and No-Shows for Its Key Declarant's Deposition.**

Seeking to deny Defendants any opportunity to take discovery, Plaintiff has repeatedly sought a discovery stay. That request was explicitly denied by the Magistrate Judge at the Rule 16 conference on March 6, 2025 and then by written order on the same date. (Doc. 67.) Given the deadlines on Plaintiff's pre-discovery summary judgment motion, Defendants expeditiously served discovery regarding, among other things, the authenticity of the purported versions of the Loan Documents Plaintiff relies upon, as well as the alleged defaults. (Kritzer Decl. ¶¶ 2-3 & Exs. 2-3.) Plaintiff then a second, procedurally improper request to stay discovery, which was again denied. (Doc. 70.) No documents have yet been produced or made available for inspection in response to that request. (Kritzer Decl. ¶ 4.) Even the "Business Records" that Mr. Strickland supposedly reviewed a few weeks ago were not produced when Plaintiff served responses and objections to Defendants' requests. (Kritzer Decl. ¶ 4.)

Defendants also requested deposition dates for Plaintiff's declarants, Messrs. Strickland and Colucci. (Kritzer Decl. ¶ 5 & Ex. 4.) Plaintiff refused to provide any deposition dates prior to the due date for this opposition. (*Id.* at ¶ 6.) Defendants then noticed Mr. Strickland's deposition for a location within this District, where Plaintiff chose to file this action. (Kritzer Decl. ¶ 6 & Ex. 5.) While Rule 30 does not provide for a specific number of days' notice for depositions, Defendants provided more than the 14 days' notice specified in Rule 32(a)(5)(A). More than a week later, Plaintiff told Defendants that it would not produce Mr. Strickland and did not provide any alternate date. (Kritzer Decl. ¶ 7 & Ex. 6.) Defendants responded less than an hour after that, explicitly informing Plaintiff that, if Mr. Strickland failed to appear for his noticed deposition, Defendants would seek sanctions. (*Id.* ¶ 8 and Ex. 7.)

Plaintiff never offered any workable alternative dates and never moved for a protective order. (Kritzer Decl. ¶¶ 9-10.) Rather, the day before the deposition, Plaintiff simply informed Defendants' counsel that Mr. Strickland did not plan to attend and did not offer any specific alternate date other than that Mr. Strickland might be produced for deposition in June, long after Defendants' opposition is due. (Kritzer Decl. Ex. 8.) The next morning, Mr. Strickland missed his deposition. (Kritzer Decl. ¶ 11 & Ex. 9.) In other words, having been twice denied a stay precisely so Defendants could have the benefit of discovery in opposing summary judgment, and having been warned that Defendants would seek sanctions, Plaintiff in effect granted itself a discovery stay and forced Defendants to respond to this motion with zero discovery to contest Mr. Strickland's hearsay assertions.

Plaintiff took a similar approach with Mr. Colucci, contending that—even though he had voluntarily provided them with a declaration in support of summary judgment and is a court-appointed receiver—he was not subject to deposition on notice and demanding that Defendants subpoena him. (Kritzer Decl. ¶¶ 7, 13 & Ex. 6.)

### C.    Defendants Intend to Seek Additional Discovery.

In addition to taking Messrs. Strickland and Colucci's depositions, Defendants have also requested corporate representative dates for Rule 30(b)(6) representatives of the Trust and Rialto, and Defendants intend to subpoena BMO if Plaintiff is unable to procure its documents and witnesses voluntarily. (Kritzer Decl. ¶ 12.) Defendants also may need to subpoena tenants or others to reconstruct records regarding the non-payment default claims, particularly those related to allegations of directing payments into other accounts. (Kritzer Decl. ¶ 14.)

### <u>LEGAL STANDARD</u>

Summary judgment is available only if "there is no genuine issue of material fact and . . . the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S.

317, 323 n. 4 (1986). "[G]enuineness runs to whether disputed factual issues can reasonably be resolved in favor of either party, [while] materiality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law." *Mitchell v. Washingtonville Cent. Sch. Dist.,* 190 F.3d 1, 5 (2d Cir. 1999) (internal quotations and citations omitted). Courts resolve all ambiguities and draw all reasonable factual inferences in favor of the non-moving party. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998).

The moving party bears the initial burden of demonstrating an absence of genuine issues of material fact, and where the moving party bears the burden of proof, it must introduce admissible evidence to establish each element of its *prima facie* case. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 160 (1970); *Celotex*, 477 U.S. at 325; *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997). If this burden is not met, summary judgment must be denied. Only if the initial burden is met must the non-moving party "produce specific facts indicating that a genuine issue of fact exists." *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998).

However, under Rule 56(d), it is improper to grant summary judgment before the close of discovery where the non-moving party needs discovery to obtain material evidence. A "party resisting summary judgment on the ground that it needs discovery in order to defeat the motion must submit an affidavit showing '(1) what facts are sought [to resist the motion] and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts." *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 303 (2d Cir. 2003); *see also* 28 U.S.C. § 1746 (authorizing use of declarations in lieu of affidavits).

<u>**ARGUMENT**</u>

I.    **Because Mr. Strickland No-Showed for His Duly Noticed Deposition, His
Declaration Is Inadmissible and the Motion Should Be Denied In Its Entirety.**

To be blunt, a declaration offered to prove ultimate liability cannot be an *ex parte*,
unchallengeable statement that nobody can test through cross-examination. And a party who has
twice been denied a discovery stay cannot simply grant itself one by ignoring a timely-served
deposition notice, not seeking a protective order, and refusing to provide alternate dates that
accommodate a summary judgment opposition deadline. Mr. Strickland's no-show for his
deposition renders his declaration inadmissible hearsay and warrants striking his declaration in its
entirety. With Plaintiff having twice sought and twice been denied a stay of discovery precisely
because Defendants sought discovery to oppose this motion, no-showing for a deposition warrants
denying this motion outright. Defendants intend to seek additional sanctions for Plaintiff's flatly
improper conduct.

It is settled that the declarations of "witnesses who have not been made available for cross-
examination" are "inadmissible hearsay" at summary judgment. *M/Y Amadea*, 2025 WL 754685,
at *5; *see also Vilella v. Pup Culture LLC*, No. 23-CV-2291 (LJL), 2023 WL 7986562, at *3 n.4
(S.D.N.Y. Nov. 17, 2023) ("Defendants declined to make these declarants available for deposition.
. . . Accordingly, the Court does not consider the declarations for their truth at this stage of the
proceedings."). Where a witness seeks to offer testimony by declaration while evading cross-
examination, courts consistently strike those declarations because it would violate basic fairness
to allow a witness to testify unchallenged. *See also New World Sols., Inc. v. NameMedia Inc.*, 150
F. Supp. 3d 287, 308 (S.D.N.Y. 2015) (striking declaration of witness who defied deposition
notice); *S.E.C. v. Smart*, 678 F.3d 850, 856 (10th Cir. 2012) (affirming striking of declaration of

witness); *Gillum v. Baxton*, No. 12-CV-626-JPG-PMF, 2016 WL 628796, at *2 (S.D. Ill. Feb. 17, 2016).

Here, Mr. Strickland is the most crucial witness on this motion—he provides the sole testimony in support of Plaintiff's *prima facie* case. It would be inconsistent with basic fairness, as well as the Federal Rules of Evidence, to grant summary judgment where the entire *prima facie* case is based on a hearsay declaration that has never been tested through deposition or cross-examination.

Nor is there any excuse for refusing to produce Mr. Strickland for deposition. Defendants repeatedly requested deposition dates and, when Plaintiff stonewalled, provided ample notice and scheduled the deposition in the District where Plaintiff chose to file this action. There is no minimum notice period under the Federal Rules, but a short-notice deposition under Rule 32(a)(5)(A) is one on less than 14 days' notice with a motion for protective order pending. Here, not only did Defendants provide 14 days' notice, but Plaintiff also never sought a protective order, nor did they ever offer alternative dates before Defendants' opposition was due. Instead, they unilaterally announced the day before that they planned to no-show, saying they would not produce Mr. Strickland until long after this motion will be fully briefed.

## II.  Mr. Strickland In Any Event Cannot Authenticate or Lay Proper Business Records Foundation for Documents Created and Maintained by Other Companies Before His Involvement.

Even if Mr. Strickland's declaration were to be considered, it fails to present *admissible* testimony in support of Plaintiff's *prima facie* case. *See, e.g.*, 11 James Wm. Moore et al., *Moore's Federal Practice* ¶ 56.13[1] (3d ed. 2005) (discussing moving party's burden on issues on which it bears the burden of proof at trial).

As a preliminary matter, the authenticity of the loan documents is disputed. *See supra* Background § A. In such circumstances, a party may not simply offer a purported copy of the

11

document accompanied by a generalized declaration claiming it is authentic. *See* Fed. R. Evid. 1003(1); *Greystone Bank v. Skyline Woods Realty, LLC*, 817 F. Supp. 2d 57, 63–64 (N.D.N.Y. 2011). Instead, a "defendant must be provided with an opportunity to examine the original document and to have the document reviewed by an expert, if defendant so chooses." *Id.* A plaintiff's failure to make such a document available for examination warrants denial of summary judgment. *Id.*

Nor does Plaintiff offer sufficient foundational testimony to place the evidence it relies on within the "business records" exception to the hearsay rule. Foundational testimony for business records must be from someone familiar with the authoring business's recordkeeping practices. That means "someone who is sufficiently familiar with the business practice must testify that these records were made as part of that practice." *United States v. Rosenstein*, 474 F.2d 705, 710 (2d Cir. 1973). Keeping a file of documents received from non-parties does *not* satisfy that test. *Id.* It is the "*author's* business," not the custodian's, that matters. *Snyder v. Whittaker Corp.*, 839 F.2d 1085, 1090 (5th Cir. 1988); *see also Phillips v. United States*, 356 F.2d 297, 307 (9th Cir. 1965). So it is "insufficient to rely on one who had no direct knowledge of the business practice of the company which kept the records." *J. Howard Smith, Inc. v. S.S. Maranon*, 501 F.2d 1275, 1278 (2d Cir. 1974) (finding insufficient foundation where witness was not associated with the firm that authored and kept the records).

Mr. Strickland works for Rialto, and even if he were familiar with both Rialto's and the Trust's recordkeeping practices, he is not competent to testify about *BMO's* recordkeeping, which is crucial to determining the authenticity of the versions of the Loan Documents attached to Mr. Strickland's declaration. That is presumably why he can only say "[u]pon information and belief" the documents were prepared in the ordinary course by someone with personal knowledge—he

has no actual knowledge of how BMO prepares documents, so he supposes instead. Doc. 63 ¶ 1. Moreover, the evidence of default also appears to depend on records that may have been transmitted by BMO at the time of the alleged assignment.

To that end, Mr. Strickland has no way of knowing what the actual author of these documents—BMO—did before the documents or the information contained within them was transmitted to the Trust and thence to Rialto. BMO alone would know of its recordkeeping practices to determine, for example, what precautions are made against a signature page being applied to an incorrect document. That is particularly problematic where, as here, authenticity is genuinely contested. Likewise, it is unclear the extent to which Rialto's business records that form the purported evidence of defaults rely on information gathered by prior servicers or by BMO, whose recordkeeping practices Mr. Strickland does not know. Perhaps some witness exists who can fill the gaps—but none is offered on this motion, which means that the evidence is not in admissible form and Plaintiff fails to prove its *prima facie* case on any of the three counts.

### III.    Mr. Rothman's Testimony That He Had No Knowledge of Any Guaranty Before Plaintiff Claimed One Existed Creates a Genuine Issue of Material Fact on the Guaranty Claim.

Even if Plaintiff had met its *prima facie* case, Mr. Rothman's testimony that he does not believe that he signed a Guaranty for this mortgage creates a genuine question of material fact. When a purported signatory denies signing a document, rather than merely denying recollection, that alone is sufficient to create a genuine issue of material fact as to execution of the document. *Barrows v. Brinker Rest. Corp.*, 36 F.4th 45, 50 (2d Cir. 2022). Indeed, the signature appended to a document does not show that he actually signed that document, and Plaintiff provides no evidence indicating that Mr. Rothman ever authorized the application of his signature. That is particularly important because guaranty contracts are subject to the statute of frauds, so the Guaranty itself must have been subscribed by Mr. Rothman; if Mr. Rothman did not actually

13

consent to application of his signature to this particular version, then there is no signed writing and

no enforceable guaranty. N.Y. Gen. Oblig. Law § 5-701(2).

IV.    **Rule 56(d) Mandates Denial of This Pre-Discovery Summary Judgment Motion on All Three Counts.**

Even if Plaintiff had met its prima facie case, it is far too early for summary judgment

because Plaintiff and third parties such as BMO and Mr. Puretz possess information necessary to

challenge Plaintiff's allegations and establish affirmative defenses. Most obviously, the signature

pages for each of the Loan Documents has a different footer to the rest of the document, which

facially calls into question their authenticity. (*Compare* Doc. 63-2 at 2-4, *with id.* at 5; *compare*

Doc. 63-3 at 2-16, 20-24, *with id.* at 19; *compare* Doc. 63-4 at 3-11, *with id.* at 12; *compare* Doc.

63-5 at 2-121, 129-140, *with id.* at 128; *compare* Doc. 63-6 at 2-13, *with id.* at 14.). BMO asked

Mr. Rothman to sign blank signature pages (and get them notarized) *before* negotiating all the

terms of the Loan Documents, through outside counsel. (Rothman Decl. ¶ 4.) No conventional

closing binder was ever created. (*Id.* ¶ 3.) Defendants thus need discovery to determine whether

the documents attached to Mr. Strickland's declaration are actually documents to which they

agreed, and whether the terms of those agreements are the correct terms. (*Id.* ¶¶ 3-4; Kritzer Decl.

¶¶ 2-3.) A number of other issues requiring discovery also exist, including testing Plaintiff's claims

of default, and subpoenaing third parties to reconstruct business records that Defendants do not

have because of the misdeeds of Mr. Rothman's former business partner.

A "party resisting summary judgment on the ground that it needs discovery in order to

defeat the motion must submit an affidavit showing '(1) what facts are sought [to resist the motion]

and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine

issue of material fact, (3) what effort affiant has made to obtain them, and (4) why the affiant was

unsuccessful in those efforts." *Miller*, 321 F.3d at 303. Here, Defendants have done each of these

things: they have identified the issues upon which they have sought and continue to seek discovery and why they create issues of material fact—among others, the authenticity of the versions of the agreements Mr. Strickland presents and testing the accuracy of the records he claims show both payment and non-payment defaults, determining what payments tenants purportedly made, and determining whether Aevri's members (whom Mr. Rothman does not know personally because they were picked by his former business partner) are either Delaware citizens or U.S. citizens resident overseas—one of them lists his location on LinkedIn as Canada. (Kritzer Decl. ¶¶ 2-3, 5, 12-15 & Exs. 1-2, 5, 9, 10.) They have shown their efforts to seek discovery, including serving requests for production, serving deposition notices (and taking Mr. Strickland's non-appearance), seeking to schedule additional depositions, and seeking documents from Defendants' closing attorney. (Kritzer Decl. ¶¶ 2-14 & Exs. 1-9.) And they have explained why they have not received the information so far—Plaintiff's stonewalling of discovery after being twice denied a stay, to the point that its key witness refused to appear for his deposition or offer alternative dates prior to Defendants' opposition due date. (Kritzer Decl. ¶ 4 & Exs. 6-9.)

In short, discovery is necessary for Defendants to challenge Plaintiff's *prima facie* case on foreclosure, liability under the Guaranty, and equitable accounting and restitution for funds purportedly held in trust. It is also necessary for numerous defenses, including regarding proper execution of the Loan Documents and whether there was a meeting of the minds, and whether changes to the obligation guaranteed discharged the Guaranty.

### A.    Mr. Strickland Offers Discovery, And This Court Should Hold Plaintiff to That.

To start, this Court need do no more than hold Plaintiff to what its witness says to deny summary judgment in order to allow discovery. Mr. Strickland outright says that the "Business Records" he bases his declaration upon "are available for inspection." Doc. 63 ¶ 1. In other words,

Plaintiff's key witness himself concedes that Defendants are entitled to an opportunity to inspect and test the accuracy of the records that Plaintiff relies upon to establish its *prima facie* case. He concedes this because it is obvious: entering judgment based on evidence no-one can test violates basic principles of due process, which is why Rule 56(d) exists.

### B.    Discovery Is Necessary to Determine If Signed-in-Blank Signature Pages with Different Footers Were Applied to the Correct Version of the Loan Documents.

To state the obvious, in a mortgage foreclosure case, the authenticity of the copies of the Note and Mortgage that Plaintiff bases its claims upon is a central issue upon which Plaintiff bears the burden of proof. Given the lack of evidence on this point, there is a genuine issue of material fact regarding the Loan Documents' validity and terms, which requires discovery. Discovery, including inspection of originals, is necessary when a defendant proffers a good-faith basis to believe that the proffered agreements may not be the authentic ones. *See, e.g.*, *Emigrant Residential LLC v. Pinti*, 37 F.4th 717, 727 (1st Cir. 2022) ("significant and repeated missteps" warranted further discovery); *Greystone Bank*, 817 F. Supp. 2d at 63–64; *U.S. Bank Tr., N.A. as Tr. for LSF9 Master Participation Tr. v. Moomey-Stevens*, 168 A.D.3d 1169, 1173, 91 N.Y.S.3d 788, 793 (2019) (finding sufficient authenticity issues to require production of original).

The documents show facial indications of questionable authenticity. Each of the Loan Documents has a law firm document management system footer for most of its pages and then a different footer on the signature page. (*Compare* Doc. 63-2 at 2-4, *with id.* at 5; *compare* Doc. 63-3 at 2-16, 20-24, *with id.* at 19; *compare* Doc. 63-4 at 3-11, *with id.* at 12; *compare* Doc. 63-5 at 2-121, 129-140, *with id.* at 128; *compare* Doc. 63-6 at 2-13, *with id.* at 14.). Combined with Mr. Rothman's belief that he did not sign a guaranty for this property (Rothman Decl. ¶ 4), that creates a real basis to believe that the proffered version of the Guaranty might not be one that Mr. Rothman signed.

16

These issues of authenticity, meeting of the minds, and the authority to apply blank signature pages apply with special force to the Guaranty given the strict rules that govern guaranties under New York law. To start, if Mr. Rothman's signature was applied without authority, then the Guaranty would violate the statute of frauds. N.Y. Gen. Oblig. Law § 5-701(2). Moreover, guaranties are subject to a number of special rules, including the rule that a material change in the obligation secured will discharge a guarantor absent the guarantor's agreement or a *valid* advance consent. "[A]ny alteration of the contract to which his guarantee applies, whether material or not, will serve to discharge the surety's obligation." *Congregation Ohavei Shalom*, 123 A.D.2d at 656. Whether and when application of Mr. Rothman's signature to *this* version was authorized thus affects whether he may have been discharged by later changes to other Loan Documents, whether any advance consent was valid, and what grounds for guarantor liability he may have agreed to. Discovery is thus necessary to resolve these questions.

Plaintiff's principal response—both on its *prima facie* case and on Defendants' affirmative defenses regarding execution of the agreements and whether the Guaranty was discharged by modifications—is to argue that an opinion letter from Mordechai Book obviates any need to determine which agreements are genuine. But that letter cannot authenticate any of these documents. To start, the body of the letter identifies the borrower as "Aevri Salina Meadows SPE LLC," not Aevri Salina Meadows LLC, and Lender as "Citi Real Estate Funding, Inc.," not BMO. Doc. 63-14 at 1. Mr. Book claims to have reviewed 12 documents between these two parties (which are not present in this case), *id.* at 1-2, but *those documents are not attached*. Further, the opinion letter claims that the documents were executed on February 16, 2022, *id.* at 1, while the notarization on the Mortgage Mr. Strickland attaches is dated February 10, 2022, Doc. 63-3 at 19,

and the notarization on the ALR is dated February 14, 2022, Doc. 63-4 at 12. This evidence is simply insufficient to warrant summary judgment before any discovery takes place.

Nor does Plaintiff present any communications between BMO and Mr. Book that might shed light on whether he was looking at the same documents as Mr. Strickland or some other versions. Mr. Book also states that he assumes that the unspecified versions he reviewed had not been subject to "undisclosed modifications," Doc. 63-14 at 3, which is precisely one of the questions at issue here. If BMO had pursued more normal closing procedures—a clear and obvious set of final documents, including the opinion letter, put into a closing binder distributed to all parties—then perhaps it would be clear which draft of the agreement was actually agreed to. That did not happen here, and Plaintiff cannot simply cut off inquiry into these material questions.

### C.    Because the Receiver Now Has Aevri's Books and Records, Challenging Plaintiff's Default and Equitable Accounting Allegations Requires Discovery.

Plaintiff's motion facially relies on information in third parties' control. Plaintiff alleges that tenants paid rents into an improper account and the receiver claims that certain payments were improper. (Doc. 61 at 6-7.) But the receiver now has Aevri's books and records instead of Aevri, so Defendants cannot determine the accuracy of these claims without discovery from the receiver to determine if the records are accurate or if other records explain the payments. Similarly, challenging the allegation of diverted tenant payments requires discovery from the tenants to determine what, if any, payments they actually made.

### D.    Because Mr. Puretz's Misdeeds Created Gaps in Its Records, Aevri Needs to Subpoena Records Regarding Claimed Defaults.

Further, as Plaintiff itself notes, Mr. Rothman's former business partner was involved in the management of the property. There ongoing litigation between Mr. Rothman (and Aevri) and Mr. Puretz involving bizarre actions by the latter that included altering books and records, suspected misappropriations of funds, filing unauthorized tax returns, and attempting to sell

membership interests that he did not own. (Rothman Decl. ¶ 2 & Doc. 64-1.). Mr. Puretz was also recently convicted of fraud related to a scheme that he and his father were running on an unrelated investment. Defendants thus suspect that Aevri's records are incomplete and that subpoenas are necessary to reconstruct information that Mr. Puretz may have altered or manipulated. (Rothman Decl. ¶ 2.)

## V.    Summary Judgment Dismissing Affirmative Defenses Is Also Premature.

Plaintiff also seeks summary judgment dismissing affirmative defenses. Many of its arguments are simply that a defense was inadequately pleaded, but it did not move to strike the defenses, so Defendants should receive discovery to determine whether any facts exist in Plaintiff's possession that might support the affirmative defenses.

Regardless, as addressed above, Plaintiff's arguments fail under Rule 56(d). On ***due execution, meeting of the minds, and mistake***, discovery of Plaintiff and BMO is necessary to determine whether signature pages (and, for the Mortgage and ALR, the notarizations) that were signed in blank were actually attached, with authority, to an agreement as to which there was a meeting of the minds. If discovery reveals evidence that the Loan Documents are invalid or the wrong versions, then a trial would be necessary to resolve which version, if any, reflects the parties' actual agreement and whether it complies with statutory requirements such as the statute of frauds. And, as also addressed above, Mr. Book's opinion letter does not specify which versions of the documents he was opining on, contains facial errors as to the identity of the borrower and lender, references incorrect dates of execution, and contains facial indicia of lack of authenticity, so it cannot remove any genuine issue of material fact as to which agreements are the correct ones. And the ***guarantee validity*** affirmative defenses are viable because, as discussed above, there is a possibility that the guaranteed obligations were modified after the guarantee was signed, if it was

19

even signed in the first place, which would discharge the guaranty absent consent. *Congregation Ohavei Shalom*, 123 A.D.2d at 656.

## CONCLUSION

For the foregoing reasons, Defendants requests the Court deny summary judgment or, in the alternative, hold the motion in abeyance so that Defendants can take discovery of Plaintiff and third parties pursuant to Rule 56(d).

Dated: New York, New York            /s/ *Nathaniel J. Kritzer*
      April 16, 2025            Nathaniel J. Kritzer
                                    STEPTOE LLP
                                    1114 Avenue of the Americas
                                    New York, New York 10036
                                    Telephone: (212) 378-7535
                                    Email: nkritzer@steptoe.com

                                    *Attorney for Defendants Aevri Salina Meadows LLC and Moshe Rothman*

20