UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WILMINGTON TRUST, NATIONAL ASSOCIATION, as Trustee for the benefit of Registered Holders of BBCMS Mortgage Trust 2022-C15 Commercial Mortgage Pass-Through Certificates, Series 2022-C15, acting by and through its special servicer, Rialto Capital Advisors, LLC,<br><br>   Plaintiff,<br><br>   v.<br><br>AEVRI SALINA MEADOWS LLC; HAWTHORNE PROPERTY SERVICES, LLC; and MOSHE ROTHMAN,<br><br>   Defendants. | Civil Action No. 1:23-cv-08824-JPC-JLC<br><br>**Oral Argument Requested** |

### DECLARATION OF NATHANIEL KRITZER IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

NATHANIEL KRITZER declares as follows under penalty of perjury, pursuant to 28 U.S.C. § 1746:

1. I am counsel to Defendants Aevri Salina Meadows LLC ("Aevri") and Moshe Rothman. I make this declaration in opposition to Plaintiff's motion for summary judgment and in support of Defendants' request, pursuant to Federal Rule of Civil Procedure 56(d), for discovery of facts in Plaintiff's, BMO's, and third parties' possession to oppose summary judgment.

2. In August 2023, I reached out to Defendants' transactional counsel to inquire whether he had an executed guaranty from Mo Rothman guaranteeing a debt for Aevri.

1

Defendants' transactional counsel informed me that he did not have such a document in his files (nor did Defendants). On October 3, 2023, I contacted Plaintiff's counsel regarding a purported guaranty he had sent to me, pointing out that page 7 of the document, which purported to be Mr. Rothman's signature page, did not match the rest of the agreement, as it has no document number and no other identifier to match it to the agreement. I also pointed out that I had been unable to locate any executed copy of this document from my client or his closing attorney. I asked that Plaintiff's counsel provide a transmittal email or similar evidence showing the authenticity of the document. I received nothing in response to this request. This issue is material because the authenticity of the Loan Documents is a crucial aspect of Plaintiff's prima facie case for foreclosure and on the Guaranty. A true and correct copy of my October 3, 2023 email is attached hereto as **Exhibit 1**.

       3.       Shortly after the Rule 16 scheduling conference before the Magistrate Judge in this action, at which Plaintiff requested a stay of discovery that was denied, Defendants served Requests for Production seeking documents regarding, among other things, the authenticity of the Loan Documents. including an inspection of the original copies of the documents. The Requests for Production were served in time for the responses to be due before the opposition date for this motion. In each instance, the requests addressed material issues to opposing this motion. The issue of whether the Loan Documents attached to Mr. Strickland's declaration are authentic is a crucial aspect of Plaintiff's prima facie case for foreclosure and on the Guaranty. The remaining requests seek to determine if facts exist that could challenge Plaintiff's claims of payment and non-payment defaults, including the records that Plaintiff claims shows defaults and their accuracy, which is again a central aspect of Plaintiff's prima facie case on each of its claims. Moreover, the records that Plaintiff claims shows funds being diverted must be tested to determine whether there is

liability under Count III. A true and correct copy of those Requests for Production is attached hereto as **Exhibit 2**.

4. After making a second, procedurally improper and untimely request to stay discovery, which was denied, Plaintiff served responses and objections to those Requests for Production two days ago, on the last possible day, and did not make any production prior to the opposition due date. Not even the "Business Records" that Mr. Strickland promised in his declaration were available for inspection were produced. A true and correct copy of those Responses and Objections is attached hereto as **Exhibit 3**.

5. Meanwhile, I had repeatedly reached out to Plaintiff's counsel for deposition dates for Plaintiff's declarants, Messrs. Strickland and Colucci, as well as Rule 30(b)(6) depositions of Plaintiff and Rialto. I sought these depositions, among other reasons, to (1) establish Mr. Strickland's lack of qualification to authenticate and lay foundation for the Business Records he purports to authenticate, including his lack of knowledge of BMO's recordkeeping practices and the negotiation and execution of any relevant loan documents; and (2) determine whether he could demonstrate that the Loan Documents and records he claims show defaults and standing are in fact authentic. These are central issues for whether Plaintiff can establish its prima facie case or whether Defendants can show genuine issues of material fact regarding the authenticity of the Loan Documents and records purporting to show defaults. A true and correct copy of my March 25, 2025, email to Plaintiff's counsel is attached hereto as **Exhibit 4**.

6. Having received no response, I served deposition notices for Messrs. Strickland and Colucci on counsel for Plaintiff on March 27, 2025, so that there would be sufficient notice for the depositions, which were scheduled in this District where Plaintiff chose to file suit. Mr. Strickland's deposition was noticed for April 10 and Mr. Colucci's deposition was noticed for

April 9. A true and correct copy of the transmittal email together with both notices of deposition is attached hereto as **Exhibit 5**. At my direction, the notices were served by mail upon counsel of record for Plaintiff on the same date that I sent them by email.

7. More than a week later on April 4, 2025, counsel for Plaintiff responded that—despite having procured a declaration from Mr. Colucci—he did not represent him and Mr. Colucci would not appear for deposition on notice. He also stated that April 10 would not work for Mr. Strickland but did not offer any alternate date other than to say that it would be at some point after documents had been produced. A true and correct copy of that email is attached hereto as **Exhibit 6**.

8. Less than an hour later, I responded to caution Plaintiff's counsel that if no alternative workable dates were provided, Defendants would take Mr. Strickland's non-appearance on April 10 and seek sanctions. A true and correct copy of that email is attached hereto as **Exhibit 7**.

9. The day before the deposition, April 9, 2025, counsel for Plaintiff sent a letter asserting that a deposition date prior to the summary judgment opposition deadline was "unreasonable" and reiterating that Mr. Strickland would not appear. A true and correct copy of that letter is attached hereto as **Exhibit 8**.

10. Plaintiff did not at any time seek a protective order regarding the deposition.

11. Accordingly, I appeared for the deposition and took a non-appearance. The non-appearance transcript has not yet been received from the Court Reporter, but when it is received, a true and correct copy will be filed with the Court as **Exhibit 9**.

12. I have yet to receive an answer from Plaintiff as to whether, pursuant to the terms of its purported assignments, it takes the position that records held by BMO regarding this loan,

such as emails or secure messaging portal messages, are outside its custody or control, or whether it has the power under any cooperation provisions to make any BMO witness appear for deposition voluntarily. Given that Plaintiff has not yet voluntarily produced any BMO records or offered any BMO witness for deposition, Defendants intend to issue subpoenas in short order to BMO and to the BMO signatories on the Loan Documents requesting their records regarding the loan, including but not limited to any paper trail to establish whether or not the signature pages were appended to the proper versions with proper authorization. Given that BMO is a Canadian bank, it is possible that certain discovery from BMO may require letters of request to Canada if witnesses are determined to be located in Canada. This discovery is material to a number of issues in the case, including the purported assignments, the authenticity of the alleged loan documents, and any terms actually agreed to among BMO and Defendants.

13.     I also intend to subpoena Mr. Colucci given his declaration testimony on this motion. While I believe that he is subject to deposition on notice as a court-appointed fiduciary and as a witness who voluntarily provided a declaration to Plaintiff, Plaintiff's counsel's position that they cannot accept a deposition notice for him requires resort to a subpoena. Mr. Colucci claims to have seen evidence of non-payment defaults and I intend to take his deposition to determine if grounds exist to challenge that testimony, creating a genuine issue of material fact as to default and guarantor liability triggers.

14.     Further, testimony from tenants is necessary to determine whether tenants in fact made any payments to bank accounts other than the one that Plaintiff claims they should have paid into. If this testimony cannot be arranged voluntarily, I intend to issue subpoenas.

15.     A true and correct copy of Mr. Azoulay's LinkedIn page, showing a Canada location, is attached hereto as **Exhibit 10.**

16. Further, I have been speaking to Mordechai Book, Defendants' closing attorney, since August 2023, in an effort to obtain his file related to the transaction. Mr. Book has told me that he cannot find the Guaranty—or final, executed versions of any of the Loan Documents—in his files. All he had in his possession were unsigned versions with Citi, not BMO. Given that Plaintiff relies heavily on an opinion letter from Mr. Book referencing a loan with Citi and various documents that are not attached to the letter to claim that the documents attached to Mr. Strickland's declaration were properly executed, I intend to take testimony from Mr. Book to determine which documents he actually reviewed before signing the opinion letter and why his opinion letter refers to Citi as the Lender.

16. Finally, in light of Mr. Puretz's history of falsifying or manipulating records and impersonating Mr. Rothman, Defendants do not have confidence that their own files are complete and accurate, and thus may need to subpoena third parties such as tenants, vendors, and property managers to reconstruct their records.

17. In each case, I have not yet been able to obtain the discovery discussed above. Discovery in this matter has many months to go, yet Plaintiff has insisted on an early summary judgment motion that created an extremely compressed timeframe prior to Defendants' opposition due date. I prioritized discovery from Plaintiff and the declarants on this motion, but—despite having been twice denied a stay of discovery—Plaintiff in effect granted itself a stay by failing to produce any documents, even those its declarant promised to may available for inspection, and no-showing for a duly noticed deposition. I intend to act promptly to seek the remainder of the discovery discussed above.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

|  |  |
|---|---|
| April 16, 2025 | /s/ Nathaniel J. Kritzer<br>NATHANIEL J. KRITZER |