**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

WILMINGTON TRUST, NATIONAL
ASSOCIATION, as Trustee for the
benefit of Registered Holders of BBCMS
Mortgage Trust 2022-C15 Commercial
Mortgage Pass-Through Certificates,
Series 2022-C15, acting by and through
its special servicer, Rialto Capital
Advisors, LLC,

      Plaintiff,

         v.

AEVRI SALINA MEADOWS LLC;
HAWTHORNE PROPERTY
SERVICES, LLC; and MOSHE
ROTHMAN,

      Defendants.

Civil Action No. 1:23-cv-08824-JPC-JLC

**Oral Argument Requested**

**SURREPLY MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT**

                        **STEPTOE LLP**
                        Nathaniel J. Kritzer
                        Joseph M. Sanderson
                        STEPTOE LLP
                        1114 Avenue of the Americas
                        New York, New York 10036
                        Telephone: (212) 378-7535
                        nkritzer@steptoe.com
                        josanderson@steptoe.com

                        *Attorneys for Defendants Aevri Salina
                        Meadows LLC and Moshe Rothman*

## <u>TABLE OF CONTENTS</u>

Page

PRELIMINARY STATEMENT ................................................................................ 1

BACKGROUND ..................................................................................................... 3

    A.    MR. STRICKLAND'S DEPOSITION REVEALS NUMEROUS FALSE
    STATEMENTS IN HIS DECLARATION, INCLUDING FALSE
    CLAIMS THAT HE REVIEWED DOCUMENTS HE HAS NEVER
    SEEN.............................................................................................................. 3

    1.    MR. STRICKLAND LACKS ANY KNOWLEDGE OF THE LOAN
    PRE-DATING APRIL 2024. ................................................................ 4

    2.    MR. STRICKLAND'S DECLARATION TESTIMONY ABOUT THE
    PHYSICAL AFFIXATION OF THE ALLONGE AND PHYSICAL
    POSSESSION OF THE NOTE WAS FALSE. ...................................... 6

    3.    MR. STRICKLAND'S TESTIMONY ABOUT PURPORTED
    DEFAULTS SIMILARLY PARROTS UNVERIFIED WORK BY
    OTHERS. .............................................................................................. 7

    B.    THE CONFLICTING RECORDS OF ASSIGNMENTS .................... 8

ARGUMENT ......................................................................................................... 9

I.    PLAINTIFF FAILS TO PRODUCE ADMISSIBLE EVIDENCE TO SUPPORT
    ITS INITIAL BURDEN ON STANDING. ...................................................... 9

    A.    BECAUSE MR. STRICKLAND HAS NO KNOWLEDGE OF
    WHETHER THE ALLONGE WAS ACTUALLY AFFIXED TO THE
    NOTE BEFORE COMMENCEMENT OF THIS ACTION, PLAINTIFF
    PRESENTS NO ADMISSIBLE EVIDENCE THAT IT WAS THE
    "HOLDER" OF THE NOTE. ............................................................... 10

    B.    BECAUSE PLAINTIFF PRESENTS NO ADMISSIBLE EVIDENCE OF
    EITHER PHYSICAL POSSESSION AT COMMENCEMENT OR A
    CHAIN OF DOCUMENTED ASSIGNMENTS, IT FAILS TO
    ESTABLISH THAT IT IS AN ASSIGNEE. ........................................ 12

II.    BECAUSE MR. STRICKLAND HAS NO DIRECT KNOWLEDGE OF BMO'S,
    WELLS FARGO'S, OR COMPUTERSHARE'S RECORDKEEPING
    PRACTICES—OR THE TRUST'S OR RIALTO'S BEFORE 2024—HE
    CANNOT AUTHENTICATE ANY OF THE LOAN DOCUMENTS OR
    DEFAULT RECORDS. .................................................................................. 14

    A.    MR. STRICKLAND KNOWS NOTHING OF THE AUTHENTICITY OF
    THE LOAN DOCUMENTS. ............................................................... 14

    B.    MR. STRICKLAND'S CLAIMS OF DEFAULT ARE UNVERIFIED
    HEARSAY. .......................................................................................... 15

CONCLUSION ...................................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Avail 1 LLC v. Adovasio,*
No. 18 CIV. 11209 (PED), 2020 WL 4475271 (S.D.N.Y. Aug. 3, 2020) ..........................9, 10

*Bank of N.Y. Mellon v. Gordon,*
171 A.D.3d 197 (2d Dep't 2019) .............................................................................................13

*E. Sav. Bank, FSB v. Thompson,*
631 F. App'x 13 (2d Cir. 2015) ..............................................................................9, 10, 12, 13

*Fed. Nat'l Mortg. Ass'n v. Hollien,*
198 A.D.3d 615 (2d Dep't 2021) .............................................................................................11

*HSBC Bank USA, Nat. Ass'n v. Roumiantseva,*
130 A.D.3d 983 (2d Dep't 2015) .............................................................................................11

*J. Howard Smith, Inc. v. S.S. Maranon,*
501 F.2d 1275 (2d Cir. 1974) ............................................................................................14, 15

*LNV Corp. v. Almberg,*
194 A.D.3d 703 (2d Dep't 2021) ...............................................................................................9

*Phillips v. United States,*
356 F.2d 297 (9th Cir. 1965) ...................................................................................................14

*Playboy Enters., Inc. v. Dumas,*
960 F. Supp. 710 (S.D.N.Y. 1997), *aff'd,* 159 F.3d 1347 (2d Cir. 1998) ...............................10

*U.S. Bank Nat'l Ass'n v. Moulton,*
179 A.D.3d 734 (2d Dep't 2020) .............................................................................................10

*United States v. Rosenstein,*
474 F.2d 705 (2d Cir. 1973) .....................................................................................................14

*US Bank Nat'l Ass'n v. Okoye-Oyibo,*
213 A.D.3d 718 (2d Dep't 2023) .............................................................................................11

*Wells Fargo Bank, N.A. v. Mitselmakher,*
216 A.D.3d 1056 (2d Dep't 2023) ...........................................................................................11

**Statutes**

N.Y. U.C.C. § 3-202(2) ...............................................................................................................10

**Other Authorities**

Fed. R. Evid. 1002 ....................................................................................................................13

## <u>PRELIMINARY STATEMENT</u>

Mr. Strickland's deposition and documents produced by Plaintiff firmly demonstrate that its summary judgment motion must be denied.

***First***, Plaintiff has failed to present prima facie evidence of standing to foreclose. Contrary to his declaration, Mr. Strickland admitted at deposition that he has never seen the original Note and his prior claim, under penalty of perjury, that the Note was validly endorsed to Plaintiff by physically attaching an allonge was based on what he "imagine[d]" had happened, not on reviewing the Note or Allonge. The U.C.C. requires this type of physical attachment to prevent precisely what, it turns out, happened here: BMO signed an assignment of the Note to a different bank, Barclays, the same day it purportedly endorsed it to Plaintiff, and Plaintiff has not produced any records—and Mr. Strickland is aware of none—showing that that Barclays assigned the Note to Plaintiff. Nor was Mr. Strickland's claim that the Note was "physically delivered" supported by any personal knowledge or review of business records.

On these points, there is a striking contrast between Mr. Strickland's declarations and testimony at his deposition, which Plaintiff sought to deny Defendants first by seeking a stay of discovery and then by failing to appear. On paper, Mr. Strickland claimed: "[b]ased upon my personal knowledge and my review of the records maintained in connection with this Loan, the Plaintiff has been in physical possession of the Note with the Allonge firmly affixed to it by staple at all times during this case." ECF No. 84 ¶ 8. Yet at his deposition, Mr. Strickland testified that he had "never seen a stapled copy of the promissory note with the allonge," Ex.[1] A at 44:5-7, that he had never reviewed the original promissory note or allonge, *id*. at 78:2-4, and that neither

---

[1] Unless otherwise specified, "Ex." denotes exhibits to the Surreply Declaration of Nathaniel J. Kritzer.

Plaintiff Wilmington Trust nor Rialto is in possession of the original promissory note, *id*. at 77:9-14 . Nor did Mr. Strickland have any basis to make any claim regarding the state of the loan documents "at all times during this case" because he was not even aware of the loan until April of 2024, roughly six months after the case was filed. *Id*. at 15:23-16:4.

Likewise, though Mr. Strickland claimed that the borrower physically delivered a copy of the promissory note to the original lender, BMO, he admitted under cross examination that he had no basis to make that statement. *Id*. 41:14-17. Asked how the note was purportedly delivered by the borrower to BMO, Mr. Strickland had no idea. *Id*. at 42:4-7. Nor could he identify any evidence showing the chain of custody of a physical, original promissory note from the borrower to the Plaintiff. *Id*. at 77:4-8.

*Second*, Mr. Strickland's testimony confirms that he had no foundation to testify as to the actual contents of any agreed Loan Documents. All he knows is that Rialto has electronic scans of what purport to be the Loan Documents, which he assumes are genuine. He has no idea what happened at BMO, where the Loan Documents were created. He never asked BMO or BMO's deal counsel. He has never reviewed any original documents. He admitted at deposition that a multitude of statements in his declaration are not things he actually knows but merely assumptions. Mr. Strickland simply does not know that the purported Loan Documents are what they purport to be, so Plaintiff cannot establish its prima facie case.

*Third*, Plaintiff's motion is not supported by any document assigning Mr. Rothman's purported Guaranty to the trust. While the purported Guaranty states that it *can* be assigned, there is no proof that it actually *was* assigned, let alone assigned to Plaintiff and not Barclays.

In short, Mr. Strickland's contradiction under oath of his own prior statements, along with unexplained gaps in the chain of title of the rights Plaintiff purports to assert, plainly show that summary judgment must be denied.

## BACKGROUND

Plaintiff moved for summary judgment in this action prior to any discovery. ECF No. 60. Its prima facie case relied almost entirely on the declaration of Michael Strickland, a Senior Vice President at Rialto. ECF No. 63. Yet when Defendants timely noticed Mr. Strickland's deposition prior to their opposition due date, Plaintiff refused to produce him for deposition on any date before Defendants' opposition was due, refused to agree to any extension of briefing deadlines, and no-showed for a duly noticed deposition date without seeking a protective order or even explaining their purported unavailability on that date. ECF Nos. 73 ¶¶ 4-11, 73-4, 73-5, 73-6, 73-7, 73-8. And Plaintiff produced no documents prior to Defendants' response deadline, even the unspecified "business records" that Mr. Strickland claimed to have relied upon. ECF No. 73 ¶ 4.

Since then, it has become abundantly clear why Plaintiff sought to avoid discovery: at Mr. Strickland's deposition, he repeatedly contradicted statements he had declared under penalty of perjury were true, or admitted that they were mere guesses or assumptions on his part. Moreover, Mr. Strickland's testimony revealed evidence of a simultaneous, double-assignment of the Note, raising fundamental questions about Plaintiff's standing to foreclose or assert claims under the putative Guaranty.

### A.    Mr. Strickland's Deposition Reveals Numerous False Statements in His Declaration, Including False Claims that He Reviewed Documents He Has Never Seen.

Defendants' examination of Mr. Strickland at his belated appearance for deposition revealed that there are numerous untrue statements in his declarations. Comparing the lawyer-drafted declarations with Mr. Strickland's deposition testimony makes it readily apparent that he

either intentionally overstated what he knew or, despite being himself a licensed attorney, signed his declarations without reading them to ensure that they were truthful.

### 1.    Mr. Strickland Lacks Any Knowledge of the Loan Pre-Dating April 2024.

To start, Mr. Strickland's descriptions of his involvement with the loan were misleading at best. In his *declaration*, he said that "I have personally worked on and reviewed the books, records, and files," ECF No. 63 ¶ 1, presumably to imply that he has enough knowledge to be able to tell whether or not they are what they purport to be. In fact, the only documents he recalls that he "personally worked on" were "The declaration. The motion for summary judgment[, and t]he tabulation of deposits into the restricted account." Ex. A at 28:10-21, 30:14-25. That is because he only learned of the loan in "April of 2024" when it was first assigned to him. Ex. A at 15:23-24. At that time, he assumes that he followed his normal practice of "review[ing] the file." *Id.* at 17:15-18:3, 21:10-21. By the file, he means electronic copies that "were shared with me on the electronic database" or he could look at "the master servicer website." *Id.* at 21:22-22:7. He did not see "[h]ard copies of loan documents." *Id.* at 22:12-15. And even though he stated in his declaration that "[u]pon information and belief, all such documents were prepared in the ordinary course of business by a person who had personal knowledge of the event being recorded and who had a business duty to accurately record such event," ECF No. 63 ¶ 1, when asked at deposition how he knew that statement to be true, he responded "I don't know that," Ex. A at 36:12-14.

Concerningly, despite repeatedly testifying that documents attached to his declaration were "true and complete," it became readily apparent at deposition that Mr. Strickland took no steps to verify that the documents in the electronic loan file were "complete and accurate." *Id.* at 22:19-25:14. While he "didn't notice it was missing any documents," *id.* at 23:7-9, he is "sure I didn't" "ask anyone at BMO about that," *id.* at 23:10-11. Nor did he speak to BMO's transactional counsel,

whose name he could not recall. *Id.* at 23:16-24:10. Nor does he recall reviewing any emails from Mr. Rothman, Borrower's counsel Mr. Book, or BMO's counsel. *Id.* at 59:22-60:12. The sum total of his inquiries to verify that he was telling the truth when he declared that the documents in Rialto's files were "true and complete" was a conversation with litigation counsel, which he refused to describe because he claimed that it was privileged despite forming the sole factual basis for his declaration testimony. *Id.* at 24:11-25:3.

His purported authentication of the Loan Documents was, he admitted, entirely based on "belie[f]" rather than any particular knowledge or record substantiating their accuracy, and the only thing he could say about how he formed that "belie[f]" was that he had "review[ed] the files" and "had communications with my counsel." Ex. A at 39:8-16. He has no idea who prepared any of the Loan Documents. Ex. A at 37:4-6, 39:8-16, 37:7-9, 37:11-13, 37:14-16, 37:17-19.

Despite having testified that "I am one of the custodians of the books, records, and files of the Trust . . . and Rialto that pertain to the Loan," ECF No. 63 ¶ 1, Mr. Strickland denied at his deposition that he was the custodian of records and seemed unsure of who was. Ex. A at 72:11-17 ("Q. What do you mean custodian file? A. The custodian of records. Q. Who is the custodian of records? A. May I refer back to Exhibit 2? Q. Sure. A. Because in my head I want to say Wells Fargo, but I also want to say Computershare."). Rialto "would have requested the custodian to send certain of the documents or all the documents," *id.* at 73:2-8, but is not the custodian itself. Of course, Plaintiff has supplied no declaration or affidavit from Wells Fargo or Computershare, and Mr. Strickland has no idea what Wells Fargo or Computershare's respective recordkeeping procedures are or whether they were holding the "custodian file" for the Trust or some other client at the time this action was filed.

In short, Mr. Strickland's deposition revealed he lacks any proper foundation for the testimony in his declaration.

### 2.    Mr. Strickland's Declaration Testimony About the Physical Affixation of the Allonge and Physical Possession of the Note Was False.

Mr. Strickland, as an attorney and an experienced loan servicer, Ex. A at 5:17-8:7, 9:6-10:10, 13:12-14:14, surely knows the significance to a Lender's standing of either physical affixation of an allonge endorsing the note or else consistent physical possession of the Note as evidence of a completed assignment. He testified that based on his "personal knowledge and [his] review of the records maintained in connection with this Loan" he *knew* that "the Plaintiff has been in physical possession of the Note with the Allonge firmly affixed to it by staple at all times during this case." ECF No. 84 ¶ 8; *see also* ECF No. 63 ¶ 11 ("A true and correct copy of the Allonge is affixed to the Note.").

***That was false.*** Mr. Strickland's testimony was, by his own admission, based on what he "imagine[s]" happened based on "usually how it's done." Ex. A at 43:16-17. He has not "reviewed the original allonge in the promissory note." *Id.* at 43:19-21. He "ha[s] never seen a stapled copy of the promissory note with the allonge. *Id.* at 44:5-7. He admits that he "see[s]" no "staple marks" on the PDF copy attached to his declaration. *Id.* at 43:22-44:4.

Likewise, he admits that he does not know that Plaintiff has the original Note, let alone that it had it at the time of commencement: he "ha[s] never examined a physical copy of the promissory note." *Id.* at 78:2-4. He knows that *currently* neither Rialto nor the Trust has a copy; he believes that Computershare mailed it to litigation counsel on some unspecified date. *Id.* at 77:9-24.[2] When

---

[2] Whether to avoid advocate-witness rule issues or because doing so would admit that the Note came into Plaintiff's agents' possession after commencement of the suit, Mr. Procida's declaration curiously does not mention having the original Note and Allonge in his possession. ECF No. 64.

asked if there were any actual records supporting his supposition that the Note was physically delivered—either to BMO or Plaintiff—such as "a Federal Express label or any other similar evidence of chain of custody for a physical copy of the promissory note evidencing the loan," Mr. Strickland could only say "[m]aybe. I don't know." *Id.* at 76:23-77:8; *see also id.* at 76:17-22 ("Q. Do you know whether Mr. Book sent a physical copy of a promissory note to Katten? A. I don't know. I don't know. I am assuming we didn't. Q. But you don't know, correct? A. Correct.").

In short, Mr. Strickland conceded at deposition that he has no personal knowledge that the Note was properly endorsed before this lawsuit was filed, which requires physical affixation, or came into Plaintiff's possession before this lawsuit was filed. Nor could he; he had no idea this loan existed when this lawsuit was filed. Neither has he reviewed, let alone attached to his declarations, any records indicating that anyone else at Plaintiff or Rialto ever checked that the allonge was properly affixed by BMO or that any physical Note was in Plaintiff's possession before it filed suit.

### 3. Mr. Strickland's Testimony About Purported Defaults Similarly Parrots Unverified Work by Others.

Mr. Strickland similarly lacks knowledge of the defaults he asserts. He was not yet aware of the loan when the purported defaults occurred and thus had no personal involvement. Ex. A at 44:17-47:13. He parrots calculations made by "the master servicer," which he "believe[s] it was Midlands. Midlands and P&C Bank owns I believe unless I am confusing it with another file." *Id.* at 47:23-48:5; *see also id.* at 52:3-11, 55:12-24, 59:12-21. He "do[es]n't really know who would have made the calculation." *Id.* at 48:6-9. He "do[es]n't know" if he saw "any of the underlying documents" for calculations. *Id.* at 55:21-56:2; *see also id.* at 58:11-22 (unaware of breakdown of fees calculation). He believes he "would have glanced over" the calculation before he copied it into his declaration but "do[es]n't know of any other things I would have done" to check that it

was right. *Id.* at 48:10-16. Similarly, for prepayment premiums, all he knows is that he emails a request for a calculation and someone—he does not recall who—sends one back to him by email. *Id.* at 52:9-55:7.

### B.    The Conflicting Records of Assignments

Discovery has additionally revealed information calling into question whether Plaintiff received a valid assignment of the Note—records that appear to suggest a substantial possibility of a double assignment of the loan to two different entities. To start, neither of Mr. Strickland's declarations includes a copy of any assignment of the Note, only the Mortgage and Assignment of Leases and Rents. Although his reply declaration claims that a copy of a Mortgage Loan Purchase Agreement and Pooling and Servicing Agreement exists online, he does not attach either or purport to be able to authenticate them, so they are outside the summary judgment record. ECF No. 84 ¶ 2.[3]

Importantly, the allonge and the Mortgage Loan Purchase Agreement conflict with each other. On April 13, 2022, BMO executed *both* the purported allonge to the Trustee *and* a contract assigning the very same loan to Barclays Commercial Mortgage Securities. Ex. B. Mr. Strickland agreed that the loan for "Salina Meadows Office Park" that BMO assigned to Barclays "certainly [] appears to be" the "same loan we have been discussing today involved with this case." Ex. A at 65:2-5. Plaintiff's motion was unaccompanied by any evidence of a further assignment from Barclays to the Trust. Plaintiff thus has not shown a complete chain of assignments to it.

---

[3] Mr. Strickland notes that BMO would be contractually obliged to repurchase the loan if BMO supplied an inaccurate loan file; that is, of course, a matter between BMO and Plaintiff, and, as *res inter alios acta*, is irrelevant here. Notably, unlike for some loan assignments, Plaintiff does not claim that BMO supplied any sort of affidavit or declaration in admissible form attesting to the accuracy of its records.

## <u>ARGUMENT</u>

In addition to the grounds identified in Defendants' opposition brief, discovery has shown three additional flaws that require denial of summary judgment. ***First***, standing is squarely in issue and Plaintiff fails to meet its initial burden of showing a prima facie case that it actually owns the loan: Mr. Strickland has not seen an endorsement affixed the Note prior to commencement of this action (or at all); he has not seen the physical Note in Plaintiff's possession; and he has not seen any agreement assigning the Note to Plaintiff. ***Second***, the assignment to Barclays without a corresponding assignment from Barclays to the Trust at any rate creates a genuine dispute of material fact as to whether *Plaintiff* (and not someone else) owns the Note. ***Third***, it is now abundantly clear that Mr. Strickland lacked foundation for the remaining testimony in his declarations.

## I.    Plaintiff Fails to Produce Admissible Evidence to Support Its Initial Burden on Standing.

New York law is clear: "Where, as here, the plaintiff's standing has been placed in issue by the defendants' answer, the plaintiff must prove its standing as part of its prima facie showing." *LNV Corp. v. Almberg*, 194 A.D.3d 703, 704 (2d Dep't 2021); *accord Avail 1 LLC v. Adovasio*, No. 18 CIV. 11209 (PED), 2020 WL 4475271, at *3 (S.D.N.Y. Aug. 3, 2020). In other words, foreclosure plaintiffs need to show that they actually own the loan, so that some third party does not later show up and demand repayment of the same money.

"Standing," in this context, means that, "when the action was commenced, [plaintiff] was either the holder or assignee of the underlying note." *Avail 1 LLC*, 2020 WL 4475271, at *3 (quoting *E. Sav. Bank, FSB v. Thompson*, 631 F. App'x 13, 15-16 (2d Cir. 2015)). In its opening brief, Plaintiff relied exclusively on holder status, ECF No. 61 at 4, so its belated effort in its reply brief to sneak in an alternative argument that it is an assignee, ECF No. 84 at 4, is improper.

"Arguments made for the first time in a reply brief need not be considered by a court." *Playboy Enters., Inc. v. Dumas*, 960 F. Supp. 710, 720 n.7 (S.D.N.Y. 1997), *aff'd*, 159 F.3d 1347 (2d Cir. 1998). While Plaintiff has mentioned the assignment of the mortgage securing the note, under New York law, a transfer of a mortgage without the note it secures is void, so an assignment of the mortgage is irrelevant if Plaintiff cannot establish that it holds or was assigned the note. *Id.* (quoting *E. Sav. Bank*, 631 F. App'x at 15-16).

### A. Because Mr. Strickland Has No Knowledge of Whether the Allonge Was Actually Affixed to the Note Before Commencement of this Action, Plaintiff Presents No Admissible Evidence That It Was The "Holder" of the Note.

"A 'holder' is 'the person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession.'" *Avail 1 LLC*, 2020 WL4475271, at \*4 (quoting *U.S. Bank Nat'l Ass'n v. Moulton*, 179 A.D.3d 734, 736 (2d Dep't 2020)). A note, like a check, is a negotiable instrument, and like a check it can be "endorsed, or signed over, to a new owner." *Moulton*, 179 A.D.3d at 736. To balance the benefits of negotiability with the risks of fraud or double liability—say, someone purporting to endorse a check to two different people—Article 3 of the Uniform Commercial Code requires that "[a]n indorsement must be written by or on behalf of the holder and *on the instrument or on a paper so firmly affixed thereto as to become a part thereof*." N.Y. U.C.C. § 3-202(2) (emphasis added). So, "[i]f the endorsement is not on the note itself, it must be on an allonge," which is "an additional piece of paper firmly attached to a note to provide room to write endorsements." *Moulton*, 179 A.D.3d at 737. A valid endorsement, either "in blank or specially endorsed to the plaintiff," is essential for holder status; "mere physical possession of a note at the commencement of a foreclosure action" does not "make a plaintiff the lawful holder of a negotiable instrument for the purposes of enforcing the note." *Id.*

New York courts have interpreted the U.C.C's "firmly affixed" requirement strictly. It is not enough that the allonge is on the next page after the note. *Id.* Nor is an allonge "attached by a

paperclip" sufficiently "firmly affixed to the note as to become a part thereof." *HSBC Bank USA, Nat. Ass'n v. Roumiantseva*, 130 A.D.3d 983, 985 (2d Dep't 2015). But here, Plaintiff has no actual evidence that the allonge was actually stapled to the Note at any time. Mr. Strickland admitted at deposition that his claims that the allonge was stapled in his declaration were merely what he "imagine[s]" happened based on "usually how it's done." Ex. A at 43:16-18. He has not "reviewed the original allonge in the promissory note." *Id.* at 43:19-21. He "ha[s] never seen a stapled copy of the promissory note with the allonge." *Id.* at 44:5-7. Indeed, he "ha[s] never examined a physical copy of the promissory note." *Id.* at 78:2-4. And the electronic copies provide no proof of affixation either; he admittedly "see[s]" no "staple marks" on the PDF copy. *Id.* at 43:22-44:4; *see US Bank Nat'l Ass'n v. Okoye-Oyibo*, 213 A.D.3d 718, 720 (2d Dep't 2023) ("None of the pieces of paper in the record comprising the note or the allonges bore any markings of having ever been attached to one another.").

Nor does Plaintiff have any evidence that the allonge was stapled "at the time of the commencement of the action." *Fed. Nat'l Mortg. Ass'n v. Hollien*, 198 A.D.3d 615, 617 (2d Dep't 2021). New York courts have held that an affidavit averring that an allonge was "attached" to a note is insufficient when the "affidavit was sworn . . . subsequent to the commencement of the action, and the affiant did not state *when* she reviewed the" note and allonge. *Wells Fargo Bank, N.A. v. Mitselmakher*, 216 A.D.3d 1056, 1058 (2d Dep't 2023). To satisfy its *prima facie* case, a plaintiff must instead show with either testimony of a witness with knowledge or properly authenticated business records that the affixation predates the lawsuit. *Id.* ("Thus, her affidavit was insufficient to establish, prima facie, that the allonge was 'so firmly affixed . . . as to become a part thereof . . . at the time of commencement"). Here, Plaintiff offers no testimony from anyone who saw the Note before this suit was filed; it offers no scan of an inbound FedEx with the Note and

Allonge with a stable visible; it offers no checklist completed when the physical Note and Allonge were received by Plaintiff saying that someone checked the affixation of the allonge. Instead, Plaintiff has offered only the assumptions of a witness who has never seen the original note or allonge, who became involved after commencement of this case, who took no steps to verify the accuracy of even the electronic files beyond glancing at them. Under settled New York law, that is not enough to meet Plaintiff's *prima facie* case, and Mr. Strickland's contradictory testimony creates a genuine issue of material fact.

> **B.    Because Plaintiff Presents No Admissible Evidence of Either Physical Possession at Commencement or A Chain of Documented Assignments, It Fails to Establish That It Is an Assignee.**

As discussed above, Plaintiff presented no evidence of assignment of the Note (as opposed the legally-irrelevant assignment of the Mortgage) in its opening brief, relying exclusively on holder status. Thus, the fallback argument that, even if Plaintiff is not a holder, it might still be a assignee, comes too late to be considered on summary judgment. But at any rate, Plaintiff does not present admissible prima facie evidence of a valid assignment of the Note, or the conflicting chain of written assignments creates a genuine issue of material fact. Two ways exist to show prima facie evidence of an assignment—either "a written assignment of the underlying note" or "the physical delivery of the note prior to the commencement of the foreclosure action." *E. Sav. Bank.*, 631 F. App'x at 15 (citation omitted).

Here, Plaintiff presents zero evidence that it physically possessed the Note prior to commencement. Mr. Strickland admitted at his deposition that he does not know that Plaintiff has the original Note, let alone that it had it at the time of commencement: He "ha[s] never examined a physical copy of the promissory note." *Id.* at 78:2-4. In fact, he knows that neither Rialto nor the Trust has the original wet-ink Note (if there is one); he believes that Computershare or Wells Fargo, which he believes served as custodian of records for the trust (as well as for many other

mortgage owners[4]) mailed it to litigation counsel at some point, but curiously Mr. Procida's declaration says nothing of this or whether he received it before filing suit. *Id.* at 77:9-25. Mr. Strickland had no idea that this loan even existed as of the date of commencement, *id.* at 15:23-24, so he cannot say *anything* about where the original Note was as of commencement.

Nor does Plaintiff attach any properly authenticated business records that might reveal when the original Note came into Plaintiff's possession, if any such records even exist. He admitted at deposition that he "do[es]n't know" if there is "a Federal Express label or any other similar evidence of chain of custody for a physical copy of the promissory note evidencing the loan." *Id.* at 76:23-77:8. And at any rate, a plaintiff must actually *attach* the business records. "[I]t is the business record itself, not the foundational affidavit, that serves as proof of the matter asserted." *Bank of N.Y. Mellon v. Gordon*, 171 A.D.3d 197, 205 (2d Dep't 2019). "Accordingly, evidence of the contents of business records is admissible only where the records themselves are introduced." *Id.* "Without their introduction, a witness's testimony as to the contents of the records is inadmissible hearsay." *Id.*; *see also* Fed. R. Evid. 1002 (prohibiting testimony to prove the contents of a document without admitting the document).

Nor has Plaintiff shown a complete chain of assignments into its hands. There is supposedly a Mortgage Loan Purchase Agreement and Pooling and Servicing Agreement that collectively assign the Loan to the Trust, but neither is in the record. ECF No. 84 ¶ 2. His testimony about the contents of a document not in the record is hearsay and violates the best evidence rule. But even if he had done so, there is evidence of conflicting assignments: separate from the allonge to the Trust, BMO also signed an assignment of the Note to Barclays. Ex. B; Ex. A at 65:2-5 ("same loan").

---

[4] Indeed, even if there were proof that Computershare or Wells Fargo held the Note in the record (and there is none), there are no records substantiating that it held it *for Plaintiff* and not for some other client.

Plaintiff has not introduced any evidence of an assignment from Barclays to the Trust, so for all the record shows, it is possible that Barclays still owns the Note, sold it, or assigned it to a different CMBS trust.

**II.    Because Mr. Strickland Has No Direct Knowledge of BMO's, Wells Fargo's, or Computershare's Recordkeeping Practices—Or the Trust's or Rialto's Before 2024—He Cannot Authenticate Any of the Loan Documents or Default Records.**

In any event, Plaintiff's prima facie case fundamentally fails because Mr. Strickland's admissions show that he does not have the necessary knowledge to authenticate business records. It is "insufficient to rely on one who had no direct knowledge of the business practice of the company which kept the records." *J. Howard Smith, Inc. v. S.S. Maranon*, 501 F.2d 1275, 1278 (2d Cir. 1974) (finding insufficient foundation where witness was not associated with the firm that authored and kept the records). *J. Howard Smith* quoted approvingly from *Phillips v. United States*, which found insufficient foundation when records "were not made in the regular course of the business of *the company in whose files they were found*" but rather were written by outsiders *to* the company. 356 F.2d 297, 307 (9th Cir. 1965) (emphasis added);*accord United States v. Rosenstein*, 474 F.2d 705, 710 (2d Cir. 1973) ("The requirements of the Business Records Rule are not fulfilled by a showing that the addressee routinely kept a file of such correspondence. It must appear that the letter was written in the regular course of its author's business.").

**A.    Mr. Strickland Knows Nothing of the Authenticity of the Loan Documents.**

Here, Mr. Strickland's testimony at deposition confirmed what Defendants suspected when they filed their opposition: that he knows nothing about the recordkeeping practices of the actual authors of the Loan Documents or the various parties through whose hands the electronic copies passed before they landed on his desk. Rather, he *assumes* that the electronic copies he received from someone in 2024 were accurate, without having verified that. Ex. A at 15:23-24. He does not testify as to any knowledge of the recordkeeping system; he purports to authenticate the documents

merely based on glancing at electronic copies. *Id.* 17:15-18:3, 21:10-21. He has never seen the originals. *Id.* at 22:12-15. His testimony that business records foundation exists is admittedly based on "information and belief," ECF No. 63 ¶ 1, which turns out to mean a brief "review" of the "documents" themselves and "file in general," Ex. A at 36:20-37:3. A witness who responds "I don't know that," *id.* at 36:12-14, when asked about his foundation for authenticating business record simply cannot satisfy the requirement of "direct knowledge of the business practice of the company which kept the records." *J. Howard Smith*, 501 F.2d at 1278.

To the contrary, Mr. Strickland admits that he took no steps to verify that the documents he purports to authenticate were "complete and accurate." *Id.* at 22:19-25:14. He made no inquiries whatsoever of the actual authors of the documents: he is "sure I didn't" "ask anyone at BMO about that," *id.* at 23:10-11, nor did he speak to BMO's transactional counsel, whom he could not name, *id.* at 23:16-24:10. Rather, the basis of his testimony that the documents were "true and complete" appears to have been a conversation with litigation counsel, as to which Plaintiff made an improper privilege objection. *Id.* at 24:11-25:3. Beyond that, all he has is "belie[f]" that the Loan Documents are accurate, and the only thing he could say about how he formed that "belie[f]" was that he had "review[ed] the files" and "had communications with my counsel." Ex. A at 39:8-16. He does not know who authored the Loan Documents. Ex. A at 37:4-6, 39:8-16, 37:7-9, 37:11-13, 37:14-16, 37:17-19. Again, this plainly shows that Mr. Strickland has no foundation for the testimony offered in support of Plaintiff's motion.

### B.    Mr. Strickland's Claims of Default Are Unverified Hearsay.

Mr. Strickland's testimony about the purported defaults are similarly unverified parroting of others' information. He has no personal knowledge of the defaults, since he was not assigned to the loan at the time. Ex. A at 44:17-47:13. Rather, his testimony that defaults exist recite information and calculations conveyed to him by "the master servicer," which he "believe[s] . . .

15

was Midlands. Midlands and P&C Bank owns I believe unless I am confusing it with another file." *Id.* at 47:23-48:5; *see also id.* at 52:3-11, 55:12-24, 59:12-21. He never testifies as to any direct knowledge of Midlands or P&C Bank's recordkeeping practices, so he cannot lay business records foundation for this information.

Mr. Strickland instead serves as a mere conduit for hearsay. He has no idea whose calculations he is reciting. *Id.* at 48:6-9. He "do[es]n't know" if he saw "any of the underlying documents" for calculations. *Id.* at 55:21-56:2; *see also id.* at 58:11-22. And he did not verify the information he received from Midlands or P&C Bank: at most he "would have glanced over" the calculation before he parroted it but "do[es]n't know of any other things I would have done" to check that the calculations were accurate. *Id.* at 48:10-16. He thus has no foundation for the claims of default he makes in his declaration, and no-one with knowledge of these figures or of the master servicer's recordkeeping practices has supplied a declaration or properly authenticated underlying business records. Plaintiff thus also fails to offer admissible evidence of its prima facie case on default.

## CONCLUSION

For the foregoing reasons, this Court should deny Plaintiff's motion for summary judgment.

Dated: New York, New York        /s/ *Nathaniel J. Kritzer*
         August 15, 2025            Nathaniel J. Kritzer
                                       STEPTOE LLP
                                       1114 Avenue of the Americas
                                       New York, New York 10036
                                       Telephone: (212) 378-7535
                                       Email: nkritzer@steptoe.com

                                       *Attorney for Defendants Aevri Salina Meadows LLC and Moshe Rothman*

17