**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| WILMINGTON TRUST, NATIONAL ASSOCIATION, as Trustee for the benefit of the Registered Holders of BBCMS Mortgage Trust 2022-C15 Commercial Mortgage Pass-Through Certificates, Series 2022-C15, acting by and through its special servicer, Rialto Capital Advisors, LLC,<br><br>Plaintiff,<br><br>v.<br><br>AEVRI SALINA MEADOWS LLC; HAWTHORNE PROPERTY SERVICES, LLC; and MOSHE ROTHMAN,<br><br>Defendants. | Case No.: 1:23-cv-08824<br><br>Hon. John P. Cronan |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR VOLUNTARY DISMISSAL WITHOUT PREJUDICE PURSUANT TO FED. R. CIV. P. 41(a)(2)**

VENABLE LLP

Adam G. Possidente
151 W. 42nd Street, 49th Floor
New York, New York 10036
Tel.: (212) 307-5500
Fax: (212) 307-5598
apossidente@venable.com

*Counsel for Plaintiff*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................ 1
FACTUAL BACKGROUND ........................................ 2
A. The Loan and the Payment Default ........................................ 2
B. Relevant Procedural History ........................................ 3
ARGUMENT ........................................ 6
I. The Governing Standard ........................................ 6
II. Each Zagano Factor Favors Dismissal Without Prejudice ........................................ 7
A. Plaintiff Moved Diligently ........................................ 7
B. There Is No Vexatiousness on Plaintiff's Part ........................................ 7
C. The Suit Has Not Progressed Toward Trial, and Defendants Have Incurred No Trial-Preparation Expense ........................................ 8
D. Moving this Action to State Court Will Impose Little Duplicative Expense, and Defendants' Work Product Will Carry Over ........................................ 8
E. Plaintiff's Explanation for Dismissal Is Compelling ........................................ 9
CONCLUSION ........................................ 9



100035792

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Ascentive, LLC v. Op. Corp.*,
2012 U.S. Dist. LEXIS 62432 (E.D.N.Y. May 3, 2012) ....................7

*D'Alto v. Dahon California, Inc.*,
100 F.3d 281 (2d Cir. 1996)....................6

*Edith & Carl Marks Jewish Cmty. House of Bensonhurst, Inc. v. Berkshire Hathaway Direct Ins. Co.*,
2026 U.S. Dist. LEXIS 126195 (S.D.N.Y. June 8, 2026) (Cronan, J.)....................6, 8

*Jaskot v. Brown*,
167 F.R.D. 372 (S.D.N.Y. 1996) ....................6

*Jones v. SEC*,
298 U.S. 1 (1936)....................6

*Zagano v. Fordham Univ.*,
900 F.2d 12 (2d Cir. 1990)....................6, 7, 8

## Statutes

New York Real Property Actions and Proceedings Law § 1301 ....................5

## Court Rules

Federal Rule of Civil Procedure 41(a)(2) ....................1, 6

Plaintiff Wilmington Trust, National Association, as Trustee for the benefit of the Registered Holders of BBCMS Mortgage Trust 2022-C15 Commercial Mortgage Pass-Through Certificates, Series 2022-C15 ("Plaintiff"), acting by and through its special servicer, Rialto Capital Advisors, LLC, respectfully submits this memorandum of law pursuant to the Court's October 13, 2026 Order (ECF No. 156), in support of Plaintiff's motion under Federal Rule of Civil Procedure 41(a)(2) to dismiss this action without prejudice.

## PRELIMINARY STATEMENT[1]

This is a straightforward commercial mortgage foreclosure action concerning a defaulted $25 million loan secured by the Salina Meadows Office Park in Syracuse, New York (the "Property"). Defendants Aevri Salina Meadows LLC (the "Borrower") and Moshe Rothman (the "Guarantor" or "Mr. Rothman," and together with the Borrower, "Defendants") admit they stopped making any payments under the loan at issue more than three years ago.

Since Defendants lack any legitimate defense on the merits, they have relied on litigation tactics and delay to forestall foreclosure. For instance, Defendants did not challenge Plaintiff's allegations concerning the citizenship of the Borrower and its owner entities' members (information surely in their own possession) for two years, and failed to provide discovery on this issue. Then, six days before Mr. Rothman's twice-rescheduled deposition and months after summary judgment was fully briefed, they moved to stay Mr. Rothman's deposition on the basis of a declaration from a supposedly newly-discovered individual named "Shmuel Friedman." According to Defendants, the declarant is a member of Borrower's ultimate owner, and his claimed status as a U.S. citizen domiciled in Israel would supposedly destroy diversity. Defendants' stay

[1] Capitalized terms used but not defined in this Preliminary Statement are defined elsewhere in this memorandum of law.

motion was denied, and at Mr. Rothman's deposition, he invoked his Fifth Amendment right in response to every substantive question, including whether Mr. Friedman's declaration was genuine, how it was obtained, and whether the information in the declaration had been withheld for two years as a litigation tactic.

Plaintiff remains confident that this Court has diversity jurisdiction and that Plaintiff has established its prima facie case for foreclosure on the mortgage. However, rather than continue to litigate the myriad issues posed by Mr. Friedman's questionable declaration solely to overcome Defendants' belated challenge to diversity jurisdiction, Plaintiff seeks to preserve the Court's and the parties' resources by moving this litigation to state court where Plaintiff can expeditiously proceed with summary judgment and foreclosure.

As set forth below, the relevant factors weigh heavily in favor of permitting voluntary dismissal without prejudice. Plaintiff moved promptly once settlement talks collapsed; it has not been vexatious; there has been no merits ruling on summary judgment, and no trial date has been set; the merits work product—the loan documents, the default evidence, deposition transcripts, and the summary judgment record—will carry directly into the state foreclosure action; and Plaintiff seeks to conserve the Court's and the parties' resources by ending Defendants' manufactured jurisdictional dispute.

## FACTUAL BACKGROUND

### A. The Loan and the Payment Default

On February 16, 2022, Borrower obtained a $25,000,000 loan (the "Loan") evidenced, governed, and secured by a Promissory Note, a Mortgage and Security Agreement, an Assignment of Leases and Rents, and a Guaranty (collectively, together with all other documents and

agreements referred to, created, or contemplated thereunder, the "Loan Documents"). *See* ECF No. 43 (Second Amended Complaint), ¶¶ 25-44, Exhibits thereto.

Beginning in April 2023, and every month thereafter, the Borrower stopped paying its regular monthly payment of interest and escrows due under the Loan, among other defaults under the Loan Documents. *See* ECF No. 43 (Second Amended Complaint), ¶¶ 52-56. Defendants have admitted that "[t]he Borrower has not made any [Loan] payment since July 3, 2023." ECF No. 74, ¶ 26. As of November 1, 2024, the amount due under the Loan was at least $37,746,144.77, and the debt remains outstanding. *See* ECF No. 62 (Plaintiff's Statement of Undisputed Material Facts) at pp. 11-12.

**B. Relevant Procedural History**

Plaintiff commenced this commercial mortgage foreclosure action on October 6, 2023 (the "Action"). Rather than answer the Complaint, Defendants filed a pre-motion letter on November 27, 2023, arguing that Plaintiff failed to adequately plead diversity jurisdiction because the Complaint does not specify the citizenship of: (i) each of the beneficiaries of the CMBS trust for which Plaintiff serves as trustee, (ii) each of Borrower's "ultimate members", and (iii) the Loan's special servicer. *See* ECF No. 28.

Plaintiff responded by letter dated November 30, 2023, explaining that under well-settled law, the citizenship of the trust's beneficiaries and of the Loan's special servicer are irrelevant for purposes of diversity jurisdiction in this Action. *See* ECF No. 29. Plaintiff further noted that the citizenship of the Borrower's ultimate members was "undoubtedly known to Defendants," and Defendants failed to state in their letter that any such member is domiciled in Delaware. *Id.* at p. 2. Nevertheless, Plaintiff requested limited jurisdictional discovery on this issue, and the Court granted that request by Order entered December 6, 2023. *See* ECF No. 32.

Defendants failed to substantively respond to Plaintiff's jurisdictional discovery requests, and served no jurisdictional discovery of their own. Plaintiff, meanwhile, identified Borrower's members through a diligent review of its own records and public records and twice amended its complaint to bolster its jurisdictional allegations. *See* ECF No. 91. Ultimately, Defendants did not challenge Plaintiff's allegations concerning any of Borrower's members' citizenship. Instead, Defendants moved to dismiss solely on the ground that Plaintiff did not plead the citizenships of the CMBS trust's beneficiaries and of the special servicer. *See* ECF Nos. 44–46, 51. The Court denied Defendants' motion, holding that only the citizenship of the trustee, Wilmington Trust, National Association, was relevant for purposes of determining Plaintiff's citizenship. *See* ECF No. 54.

Then, on December 3, 2025—more than two years into the case and six days before Mr. Rothman's twice-postponed deposition—Defendants filed a declaration from an individual named Shmuel Friedman stating that he is a member of Borrower entity Aevri Salina Investors, LLC, a U.S. citizen, and an 18-year resident of Israel. *See* ECF No. 116-1. On the basis of Mr. Friedman's declaration, Defendants moved for a protective order trying to stay Mr. Rothman's deposition, which Magistrate Judge Ricardo denied. *See* ECF Nos. 117, 119.

At his December 9, 2025 deposition, Mr. Rothman invoked the Fifth Amendment in response to every substantive question, including whether Mr. Friedman's declaration was genuine, how it was obtained, and whether the information in Mr. Friedman's declaration had been withheld as a litigation tactic. *See* Possidente Decl., Ex. 1 (Tr. of M. Rothman Dep.) at 101:7 - 106:11; *see also* ECF No. 129 (Status Update Regarding Jurisdiction Issues); ECF No. 124 (Dec. 12, 2025 Joint Letter). Further, in the January 26, 2026 joint status report, Defendants stated that they had spoken with Mr. Friedman by telephone that day, did not intend to submit a second

declaration from him to address open issues raised by his initial declaration, and lacked authority to accept a subpoena on his behalf. *See* ECF No. 129.

Following Mr. Rothman's deposition, the parties conducted limited additional jurisdictional discovery. During that renewed discovery period, Plaintiff's counsel made repeated calls to Mr. Friedman at the Jerusalem number Defendants supplied, spoke several times with an individual who said Mr. Friedman was not home, and left repeated messages. Mr. Friedman never responded. *See* ECF No. 133. On April 14, 2026, the parties notified the Court of a settlement in principle, subject to executing a mutually agreeable written settlement agreement. ECF No. 140.

On September 3, 2026, the parties advised the Court that settlement negotiations had ultimately failed. *See* ECF No. 150. As a result of the breakdown in settlement negotiations, Plaintiff stated its intention to discontinue this action without prejudice, re-file in New York Supreme Court, and maintain the Receiver in place without interruption to protect the Property and its tenants during the transition. *See* ECF No. 152. Plaintiff proposed that the parties enter into a stipulation to that effect, but Defendants refused. *Id.* Instead, Defendants announced that they would seek legal fees as a "condition of dismissal" and asked the Court to terminate the receivership immediately upon discontinuance of this Action—which would leave a large office park and its tenants without ***any*** management or supervision. *Id.*

In light of Defendants' refusal to cooperate in an orderly transition of this Action to state court, Plaintiff has been forced to proceed with voluntary discontinuance without prejudice by motion, intends to oppose any fee application by Defendants, and is contemporaneously moving by separate letter-motion for relief under Section 1301 of the New York Real Property Actions and Proceedings Law ("RPAPL") so that this matter can be transitioned without jeopardizing the Property and its tenants.

## ARGUMENT

### I. The Governing Standard

Because Defendants have answered, dismissal requires a court order "on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). Dismissal without prejudice is generally appropriate unless the defendant would suffer "some plain legal prejudice . . . other than the mere prospect of a second litigation upon the subject matter." *D'Alto v. Dahon California, Inc.*, 100 F.3d 281, 283 (2d Cir. 1996) (quoting *Jones v. SEC*, 298 U.S. 1, 19 (1936)). "The mere prospect of a second lawsuit or some tactical disadvantage is not sufficient legal prejudice to prevent a Rule 41(a)(2) dismissal." *Jaskot v. Brown*, 167 F.R.D. 372, 373 (S.D.N.Y. 1996); *see also D'Alto*, 100 F.3d at 283; *Zagano v. Fordham Univ.*, 900 F.2d 12, 14 (2d Cir. 1990).

Defendants will suffer no plain legal prejudice from dismissal. Indeed, Defendants themselves sought leave to dismiss this Action solely on the grounds of purported lack of subject matter jurisdiction—which would result in dismissal without prejudice—and stated that this Action "belongs in state court." ECF No. 116, at p. 3.

Absent plain legal prejudice, courts in this Circuit, including this Court, weigh five factors in determining whether to grant a plaintiff's motion to discontinue without prejudice: "(1) the plaintiff's diligence in bringing the motion; (2) any 'undue vexatiousness' on plaintiff's part; (3) the extent to which the suit has progressed, including the defendant's effort and expense in preparation for trial; (4) the duplicative expense of relitigation; and (5) the adequacy of plaintiff's explanation for the need to dismiss." *Zagano*, 900 F.2d at 14; *see also Edith & Carl Marks Jewish Cmty. House of Bensonhurst, Inc. v. Berkshire Hathaway Direct Ins. Co.,* 2026 U.S. Dist. LEXIS 126195 at *12-13 (S.D.N.Y. June 8, 2026) (Cronan, J.) (hereinafter, "*Edith & Carl Marks*"). No single factor is dispositive. *See D'Alto*, 100 F.3d at 283.

## II. <u>Each Zagano Factor Favors Dismissal Without Prejudice</u>

### A. Plaintiff Moved Diligently

Diligence is measured from when the plaintiff's reason for dismissal crystallized. *See Ascentive, LLC v. Op. Corp.,* 2012 U.S. Dist. LEXIS 62432 at *4 (E.D.N.Y. May 3, 2012). Here, that moment came when settlement negotiations collapsed. The parties reported the end of negotiations on September 3, 2026. *See* ECF No. 150. Eight days later, Plaintiff announced its intent to dismiss. *See* ECF No. 152. Within weeks, the Court adopted the parties' proposed briefing schedule. *See* ECF Nos. 155, 156. Plaintiff acted diligently at every step.

### B. There Is No Vexatiousness on Plaintiff's Part

The second factor asks whether the plaintiff has used the litigation as an "instrument of vexation" or acted with ill motive. *See Zagano*, 900 F.2d at 14–15. "In cases where there is no evidence to suggest that the case was brought to harass the defendant, or that a plaintiff had ill motive, the second *Zagano* factor weighs in favor of granting dismissal." *Ascentive,* 2012 U.S. Dist. LEXIS 62432, at *4. Plaintiff is a secured lender seeking to enforce a Loan that Defendants admit they ceased making any payments under since July 2023. There is no vexatiousness here.

The record shows that Plaintiff properly filed the Action in this Court, diligently investigated and pled diversity, and defeated Defendants' motion to dismiss on jurisdictional grounds. Defendants, by contrast, failed to produce any information about the identities and addresses of Borrower's own members in discovery and did not challenge Plaintiff's allegations regarding those members' citizenship for two years. Then, just six days before Mr. Rothman's twice-delayed deposition, Defendants conveniently unearthed the alleged Mr. Friedman and moved to stay Mr. Rothman's deposition on the basis of Mr. Friedman's declaration—which motion was denied. *See* ECF Nos. 116-119. When Plaintiff deposed Mr. Rothman about the newly-

discovered Mr. Friedman and his declaration, Mr. Rothman invoked the Fifth Amendment in response to every substantive question.

Thus, any vexatiousness in this Action was on the part of Defendants, not Plaintiff, and the second factor weighs heavily in favor of dismissal.

### C. The Suit Has Not Progressed Toward Trial, and Defendants Have Incurred No Trial-Preparation Expense

The third factor asks how far the suit has progressed, "including the defendant's effort and expense in preparation for trial." *Zagano*, 900 F.2d at 14. In *Zagano*, the plaintiff sought dismissal on the eve of trial, after the defendant had prepared for it. *Id.* at 14–15. Here, nothing comparable has occurred. No trial date has been set, and no pretrial order, motions in limine, witness lists, or exhibit lists have been prepared. Courts in this District have granted motions for voluntary dismissal without prejudice at similar stages of litigation, and even later. *See Edith & Carl Marks*, 2026 U.S. Dist. LEXIS 126195 at *16-17 (collecting cases).

### D. Moving this Action to State Court Will Impose Little Duplicative Expense, and Defendants' Work Product Will Carry Over

The fourth factor considers the potentially duplicative expenses of litigation. Here, the state foreclosure action will involve the same claims, the same Loan Documents, and the same largely ***admitted*** defaults by Defendants. Accordingly, the core merits work product from this Action—including Defendants' answer and affirmative defenses, the document productions, depositions, and the parties' summary judgment briefing on the Loan Documents and Defendants' defaults thereunder—will be directly usable in state court. Indeed, Magistrate Judge Ricardo already found as much when he denied Defendants' motion to stay Mr. Rothman's deposition, stating that the discovery in this Action should be reusable in any subsequent state court action. *See* ECF No. 119 at 2.

Plaintiff, moreover, has repeatedly offered to proceed on the existing record in the state court action, which would eliminate any duplication; however, Defendants have refused. *See* ECF No. 130 at 3. If Defendants "decide to subject themselves to [] an enormous waste of time and money" by refusing to proceed on the existing record, they cannot complain of duplicative expense. ECF No. 119 at 2.

**E. Plaintiff's Explanation for Dismissal Is Compelling**

The final factor is the adequacy of the plaintiff's explanation for dismissal. Plaintiff's reason for voluntary dismissal is straightforward and legitimate: to avoid continuing to litigate a costly factual and legal dispute over a purely jurisdictional issue that was belatedly raised by Defendants, and to obtain prompt merits adjudication, after prolonged settlement discussions with the Defendants broke down. Dismissing this Action without prejudice so that it can be completed expeditiously in state court serves judicial economy and every party's interests, including those of Defendants, who have said that "this case belongs in state court." ECF No. 134.

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court dismiss this action without prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2), in conjunction with the relief requested in Plaintiff's contemporaneous RPAPL § 1301(3) application, and grant such other and further relief as the Court deems just and proper.

[*remainder of page intentionally left blank; signature block follows*]

Dated: New York, New York
October 23, 2026

Respectfully submitted,

VENABLE LLP

By: /s/ Adam G. Possidente_____
Adam Possidente
151 W. 42nd Street, 49th Floor
New York, New York 10036
Tel.: (212) 370-6282
agpossidente@venable.com

*Attorneys for Plaintiff*